IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARILYN GAYE PIETY FOLEY,<br>*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| DREXEL UNIVERSITY et al.,<br>*Defendant* | : | NO. 22-1777 |

## MEMORANDUM

PRATTER, J.                      MAY 23, 2023

Drexel University and Dr. Roger Kurtz seek to disqualify attorney Brian Foley from representing his wife Marilyn Gaye Piety Foley, the plaintiff in this case. After permitting the parties to submit supplemental briefing, and following oral argument and a deposition of Mr. Foley, the Court denies the motion to disqualify, without prejudice in the event circumstances change, for the reasons set forth below.

### BACKGROUND

Dr. Marilyn Gaye Piety Foley, represented by her husband Brian Foley, filed this suit against her employer, Drexel University, and the head of her department, Dr. Roger Kurtz, in 2022, alleging a hostile work environment and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2 (Count I), the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 (Count II), and Title IX, 20 U.S.C. § 1681 (Count III); violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count IV), and breach of contract (Count V). Dr. Piety Foley claims that she "has suffered damages including monetary loss, wage loss, loss of opportunities for advancement, medical expenses, loss of self-esteem, loss of enjoyment of life, embarrassment, humiliation, frustration, and emotional distress" as a result of Drexel and Dr. Kurtz's unlawful discriminatory conduct toward her. Am. Compl. ¶ 358.

Dr. Piety Foley and Mr. Foley were married in 2001. They lived together on and off, from 2001 to 2014 in various locations dependent upon their work schedules. They have lived together continuously in Philadelphia since 2014, currently with no other members of their household. Mr. Foley and Dr. Piety Foley have shared finances, and Mr. Foley receives his health insurance benefits through Dr. Piety Foley's employment at Drexel. After working at Drexel in a short-term position lasting one year, Mr. Foley was disappointed not to be hired by Drexel for a long-term position in 2008.

Mr. Foley attended approximately three meetings with Dr. Piety Foley and Drexel's Office of Equality and Diversity ("OED")—meetings that factor into Dr. Piety Foley's allegations in this case. Mr. Foley represented Dr. Piety Foley before the EEOC and PHRC, with which she has filed at least four complaints. He has also attended four to five mental health sessions with Dr. Piety Foley.

Drexel and Dr. Kurtz move to disqualify Mr. Foley from representing Dr. Piety Foley under Pennsylvania Rule of Professional Conduct 3.7 because, they argue, he will be a necessary and critical witness in the case, particularly as to Dr. Piety Foley's emotional distress and related claims.

## LEGAL STANDARD

A court has inherent authority to supervise the conduct of attorneys appearing before it. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 236 (3d Cir. 2001); *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). That authority includes the ability to disqualify an attorney when necessary, but "disqualification never is automatic." *Miller*, 624 F.2d at 1201. Although disqualification is a matter in the district court's discretion, "the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate

2

means of enforcing the applicable disciplinary rule." *Id.* Moreover, courts should consider "the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of [her] choice and enabling attorneys to practice without excessive restrictions." *Id.* "The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible." *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994). Disqualification is an extreme measure, so generally, motions such as this one "are disfavored . . . not only because disqualification robs one's adversary of her counsel of choice, but also because of the risk . . . that one could subvert the ethical rules in an attempt to use them as a procedural weapon." *Wolf, Block, Schorr, & Solis-Cohen LLP v. Navon*, No. 05-cv-6038, 2006 WL 680915, at *1 (E.D. Pa. Mar. 9, 2006).

## DISCUSSION

The Local Rules of Civil Procedure in this district incorporate the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania. E.D. Pa. Civ. R. 83.6(IV)(B). Drexel and Dr Kurtz move for disqualification under Rule 3.7(a) of the Pennsylvania Rules of Professional Conduct, which states:

> [a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Pa. R. Prof. Conduct 3.7(a). The rationale for this rule stems from the following distinction: "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others." Pa. R. Prof. Conduct 3.7(a) cmt. 2. Jurors must be shielded from any confusion relating to whether an attorney–witness is testifying versus

3

whether he is performing an analysis of such testimony. *Id.* "Even if there is risk of . . . prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client." Pa. R. Prof. Conduct 3.7(a) cmt. 4. "It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." *Id.*

### I. Drexel and Dr. Kurtz Have Not Yet Shown That Mr. Foley Is Likely a Necessary Witness

A witness is "necessary" if he "has crucial information in his possession which must be divulged." *Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 538 n.21 (3d Cir. 1976), *cert. denied*, 430 U.S. 984 (1977). Counsel is not necessary as a witness under Rule 3.7(a) if the evidence in his possession is either "cumulative or obtainable elsewhere." *Aamco Transmissions, Inc. v. Baker*, No. 06-cv-5252, 2008 WL 509220, at *3 (E.D. Pa. Feb. 25, 2008). Dr. Piety Foley's claims of emotional distress are the most relevant to consideration of the instant motion. Drexel and Dr. Kurtz posit that because Dr. Piety Foley and Mr. Foley live together without any other members of their household, "no other witness [can] attest to [Dr. Piety Foley's] daily state of mind and the alleged impact of [Drexel's and Dr. Kurtz's] conduct on [her]." Mot. to Disqualify at 4–5. However true those circumstances may seem to be on the surface, Drexel and Dr. Kurtz fail to meet the significant burden to show that Mr. Foley is a necessary witness—at least at this stage of the case when it is still possible that the alleged emotional distress–related claims may recede from importance.

The onus of determining who holds "crucial" information sufficient to establish the emotional distress of a plaintiff and the extent of damages potentially owed to her is on the shoulders of *Dr. Piety Foley*, not on Drexel or Dr. Kurtz—indeed, the absence of a spouse's testimony as to an emotional distress claim may ultimately inure to the benefit of Drexel and Dr. Kurtz. The protestations by the defendants as to how their opponent's case would be hampered

4

without her spouse's testimony on her emotional distress allegations could, ungenerously read, raise a concern of the subversion of "ethical rules in an attempt to use them as a procedural weapon." *Wolf, Block, Schorr, & Solis-Cohen*, 2006 WL 680915, at *1. Moreover, Mr. Foley has seemingly not wavered from his position that he will not testify at trial and intends to invoke both attorney–client and spousal communications privilege—to the extent they apply—to actually avoid testifying. *Cf. Thomas v. Duvall*, No. 16-cv-451, 2020 WL 6747436, at *5 (M.D. Pa. Nov. 17, 2020) (considering attorney's inconsistent assertions as to her intentions to testify at trial in granting a motion to disqualify). And even if testimony from someone other than Dr. Piety Foley as to the degree of her emotional distress proves, in fact, to be crucial to the case, Drexel and Dr. Kurtz have failed to establish that Mr. Foley "is the only available source of such information." *United States v. Phila. Vision Ctr.*, No. 20-cv-2027, 2023 WL 2562980, at *3 (E.D. Pa. Mar. 17, 2023); *cf. Thomas*, 2020 WL 6747436, at *3 (disqualifying counsel because she had *sole* possession of information crucial to her client's underlying claims). Instead, the defendants offer no satisfactory response to Dr. Piety Foley's contention that other witnesses—for example, Dr. Piety Foley's treating mental health professionals or other family members—could testify on the emotional distress issue.[1]

---

[1] Drexel and Dr. Kurtz also allege that Mr. Foley has "injected himself into many of the underlying facts in this case," but, accurate as that characterization may indeed be, that allegation does not necessitate disqualification at this time. Tr. Dec. 20, 2022, at 4:12–14. The defendants aver that Dr. Piety Foley has, in emailed communications, invoked her lawyer's name multiple times in declaring her willingness to sue her employer, been accompanied by him to OED meetings to discuss her claims of discrimination, and used his services to file complaints with the EEOC and PHRA. But if those circumstances were sufficient to call a lawyer as a witness, courts would arguably be awash in motions to disqualify employment attorneys for every action filed against an employer. In any event, while it is difficult not to perceive Mr. Foley's emotional ardor for his wife's position as well as sharing her antipathy for the defendants, Drexel and Dr. Kurtz have not yet met their burden to show that Mr. Foley "is likely the only available source of . . . information" as to the OED meetings or other factual information underlying Dr. Piety Foley's claims. *Phila. Vision Ctr.*, 2023 WL 2562980, at *3.

However, the Court reiterates that "Pennsylvania Rule of Professional Conduct 3.7 does not require that an attorney will *certainly* be a necessary witness, only that []he is *likely* to be a necessary witness." *Thomas,* 2020 WL 6747436, at *5 (internal quotation marks omitted). It is not inconceivable that changed circumstances, including developments of what remains in discovery or changes to Dr. Piety Foley's trial strategy, could alter the calculus as to the probability of Mr. Foley taking the stand. Therefore, Drexel and Dr. Kurtz are not prohibited from renewing their motion should those changed circumstances so require.[2]

## II. Even if the Court Applied Rule 3.7 Prophylactically, Mr. Foley Would Only Be Disqualified as an Advocate at Trial

Drexel and Dr. Kurtz, admitting that their motion for disqualification was filed earlier in the litigation than is typical, argue that disqualification should occur now, so that Dr. Piety Foley may find a substitute lawyer to carry out the remainder of the litigation without suffering undue hardship. "[A] court may restrain conduct which it feels may develop into a breach of ethics [and] 'is not bound to sit back and wait for a probability to ripen into a certainty.'" *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 602 A.2d 1277, 1284 (Pa. 1992) (quoting *United States v. RMI Co.,* 467 F. Supp. 915, 923 (W.D. Pa. 1979)). Of course, given the aim of the rule to avoid juror confusion resulting from seeing a lawyer acting as both advocate and witness, along with the language of the rule itself, couched as it is in terms of likelihoods rather than certainties, Rule 3.7 may be applied prophylactically to disqualify an attorney as an advocate at trial before he ever utters a word before the jury. *See Thomas,* 2020 WL 6747436, at *6 & *6 n.63 ("[A]cting only

---

[2] To the extent circumstances do in fact change and the likelihood of Mr. Foley's necessity as a witness increases, the Court will consider at that time whether "one or both parties could reasonably foresee that the lawyer would probably be a witness," and the amount of ink spilled on the instant motion would certainly factor into the degree of foreseeability. Pa. R. Prof. Conduct 3.7(a) cmt. 4. In that scenario, the Court would eye askance any suggestions of substantial hardship or surprise on a client who was not prepared to proceed promptly to trial with replacement counsel.

after Rule 3.7 has been violated would not further the Rule's goals of eliminating confusion amongst the jury regarding what is testimony and what is argument, and eliminating an unseemly appearance at trial.") (internal quotation marks omitted).

However, Rule 3.7 does not contemplate the disqualification of an attorney as an advocate *before or after* trial. "Several courts and at least one Pennsylvania Bar Association committee have observed that Rule 3.7 regulates only *trial* conduct, and have uniformly found pre-trial practice to be beyond the rule's scope." *Thompson v. Commonwealth of Pa. State Police*, No. 13-cv-2301, 2014 WL 6982634, at *2 (M.D. Pa. Dec. 10, 2014); *see also Robinson v. Hicks,* No. 07–cv–1751, 2009 WL 1140093, at *2 (M.D. Pa. Apr. 28, 2009) (collecting cases); Pa. Bar Ass'n Comm. on Legal Ethics & Pro. Resp., Informal Op. No. 96–15, 1996 WL 928125, at *1. Therefore, even if Drexel and Dr. Kurtz had met their burden to show that Mr. Foley would likely be a necessary witness, the Court could not, under Rule 3.7, prohibit Mr. Foley from representing Dr. Piety Foley during pre-trial and post-trial proceedings.[3]

### III. Any Self-Interest Concern Is Not So Severe as to Require Disqualification

Although the issue of the disqualification of a self-interested lawyer would not intrude into the Rule 3.7 bailiwick, Drexel and Dr. Kurtz seemingly allude to a potential conflict of interest because of the financial relationships and a purportedly antagonistic history amongst Dr. Piety Foley, Mr. Foley, and Drexel.

Conflicts between a lawyer's self-interest and his duty to his client "fall along a wide spectrum of ethical sensitivity from merely potential danger to outright criminal misdeeds." *Essex Cnty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 431 (D.N.J. 1998). Even along the

---

[3] Of course, this analysis presupposes a use of the term "trial" in its most conventional and temporal sense without recognizing that from start to finish the parties engaged in current day litigation are always "on trial."

7

acceptable span of that spectrum, "a lawyer's self-interest is, in theory, inherent in every case in which he participates" because any attorney hoping to earn larger fees at least raises the specter of a conflict with his client's interest in quickly and inexpensively resolving her case. *Id.* at 431–32.

Drexel and Dr. Kurtz imply that more than a specter of a conflict appears in this case because Mr. Foley receives his health insurance benefits through Dr. Piety Foley's benefits at Drexel; Mr. Foley was personally disappointed not to be hired by Drexel himself; and because Mr. Foley and Dr. Piety Foley have shared finances, Mr. Foley will share in any damages recovered as a result of this case, above and beyond the verbal contingency fee agreement in place amongst the spouses. While these entanglements certainly cause the present circumstances to fall short of a professional Platonic ideal, it is not up to either the defendants or the Court to decide for the plaintiff whether her preference in counsel is a good, bad, or awkward one. The Court does not find that the circumstances extend impermissibly far beyond the usual "tension between a lawyer's desire to maximize the fees earned and a client's interest in expedient resolution[, which] is a temptation every attorney is expected to resist, not a conflict of interest in the eyes of the law." *Phila. Vision Ctr.*, 2023 WL 2562980, at *2 (citing *Essex Cnty.*, 18 F. Supp. 2d at 432). To the extent Dr. Piety Foley and Mr. Foley have similar personal and financial incentives to "maximize any monetary award in this case," then the attorney and the client are aligned, and there is no impermissible conflict apparent. *Id.*

\* \* \*

CONCLUSION

For the foregoing reasons, Drexel's and Dr. Kurtz's Motion to Disqualify is denied without prejudice. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE