IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARILYN GAYE PIETY FOLEY, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DREXEL UNIVERSITY et al., | : | NO. 22-1777 |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                    MAY     , 2023

Marilyn Gaye Piety Foley brings this suit against her employer, Drexel University, and

fellow Drexel professor Roger Kurtz, the head of the Department of English and Philosophy, for

a hostile work environment and retaliation claim under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000(e), *et seq.*, as amended, the Pennsylvania Human Relations Act, 43 Pa. Cons.

Stat. § 951, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*; for

violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1); and for breach of contract. Drexel

and Dr. Kurtz filed a partial motion to dismiss, which Dr. Piety Foley opposes. For the reasons set

forth below, the Court grants Drexel's and Dr. Kurtz's motion in part and denies their motion in

part.

## BACKGROUND

Marilyn Gaye Piety Foley is a full professor in the Philosophy Program at Drexel

University, specifically recognized as a Kierkegaard expert. She has been employed by Drexel

since September 1, 1998. Drexel has a Department of English and Philosophy, headed by

defendant Dr. Roger Kurtz, a fully tenured Professor of English.

In 2001, Dr. Piety Foley was promoted from visiting professor to Assistant Professor on

tenure track, and in 2007, Drexel awarded Dr. Piety Foley tenure and promoted her to Associate

1

Professor. In 2016, Drexel promoted Dr. Piety Foley to full Professor. Dr. Piety Foley "is one of the few full Professors in the Department of English and Philosophy, and is the only full Professor in Drexel's Philosophy Program." Am. Compl. ¶ 15. Before she was promoted in 2016, there had not been any full Professors of Philosophy for about two decades. Dr. Piety Foley earns positive teaching evaluations and provides writing assignments for her students. Dr. Piety Foley has served on and chaired various faculty committees at Drexel.

Dr. Piety Foley alleges a plethora of acts that she contends show discrimination based on sex and retaliation for the majority of her time at Drexel, between 2009 and 2022.[1] In mid-2020, Dr. Piety Foley filed a complaint with Drexel's Office of Equality and Diversity (OED), alleging discrimination and harassment by Drexel and Dr. Kurtz, along with certain other individuals. Drexel launched an investigation into Dr. Piety Foley's allegations and found no discrimination.

---

[1]    The transgressions alleged include, *inter alia*, the defendants' provision of course releases that favor male professors; hostility toward Dr. Piety Foley by the Philosophy Program director, Dr. Pete Amato, who is lower-ranking than Dr. Piety Foley; bullying of Dr. Piety Foley by her male colleagues; Drexel officials' refusal to accommodate Dr. Piety Foley's requests to move to a different department when male professors have been permitted to move departments; efforts to block Dr. Piety Foley's ultimately successful promotion to full professor based on broken links in the table of contents of her submission materials; a "cover up" by the OED of the hostile work environment, chalking the issues up to incivility rather than sexism; harassment of Dr. Piety Foley while she chaired two tenure and promotion committees in 2017; Drexel's hire of Dr. Kurtz over another woman candidate in 2017 and his replacement of women who served in leadership positions with men; the department's failure to ever hire a female director of the Philosophy Program; Dr. Kurtz's refusal to change a rating of Dr. Piety Foley's teaching in 2018, despite his misunderstanding of her curriculum; Dr. Kurtz's and Dr. Amato's efforts to prevent Dr. Piety Foley from bringing a famous philosophy scholar to speak at Drexel; Drexel's actions requiring Dr. Piety Foley to use her married name; the Philosophy Program's subjection of female faculty to disproportionate teaching assignments and requirements that women teach more introductory courses; Dr. Kurtz's and Dr. Amato's assignment of a non-tenured professor to teach a course on Kierkegaard despite Dr. Piety Foley's expert credentials; Drexel's permitting a lower-ranking male professor opportunities to teach in his area of expertise; Dr. Kurtz's refusal to acknowledge Dr. Piety Foley's requests to address the effects of the pandemic on women in higher education; Dr. Kurtz's refusal to provide Dr. Piety Foley with matching funds from the Department of English and Philosophy after asking her to develop a research project for a student, in retaliation for her filing of a report; Dr. Kurtz's and Dr. Amato's cancellation of Dr. Piety's teaching course before Drexel's 2022 spring term; the OED's failure to use best practices in investigating Dr. Piety Foley's complaints and failure to provide her statistics regarding complaints based on sex discrimination; and the unequal pay of Dr. Piety Foley related to lower-ranking male professors.

Around August 24, 2020, Dr. Piety Foley filed another complaint with the OED alleging retaliation, which again ended with Drexel finding no evidence of discrimination or retaliation. Around August 16, 2021, Dr. Piety Foley filed a third complaint with OED, alleging discrimination and harassment by curriculum committee members.

Dr. Piety Foley also filed Charge No. 530-2020-05623 ("Charge 1") with the Equal Employment Opportunity Commission ("EEOC") on August 24, 2020, alleging Title VII violations based on gender discrimination and retaliation by Drexel and Dr. Kurtz.[2] That charge was filed simultaneously with the Pennsylvania Human Relations Commission ("PHRC").

On December 27, 2020, Dr. Piety Foley filed Charge No. 530-2021-01231 ("Charge 2") with the EEOC, again alleging Title VII violations against Drexel, also dual filed with the PHRC. The EEOC issued right to sue letters on February 8, 2022, with respect to both Charge 1 and Charge 2.

On April 17, 2022, Dr. Piety Foley dual filed Charge No. 530-2022-03846 ("Charge 3") alleging further discrimination and retaliation based on gender by Drexel and Dr. Kurtz. On April 27, 2022, the EEOC issued a right to sue letter as to Charge 3.

On September 2, 2022, Dr. Piety Foley filed yet another charge with the EEOC and PHRC, Charge No. 530-2022-06691 ("Charge 4") to address a March 7, 2022 allegedly retaliatory course cancellation that her counsel had inadvertently omitted from Charge 3. The EEOC issued a right to sue letter as to Charge 4 on May 4, 2023.

In the Amended Complaint, Dr. Piety Foley alleges a hostile work environment and retaliation in violation of Title VII, 42 U.S.C.§ 2000e-2 (Count I), the Pennsylvania Human

---

[2]      Dr. Piety Foley did not attach any EEOC charges to the Amended Complaint, but Drexel and Dr. Kurtz appended Charges 1 through 3 as exhibits to their motion to dismiss. Because the Court will permit the filing of a second amended complaint, Dr. Piety Foley is directed to attach the relevant EEOC charges to the amended pleading.

Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 (Count II), and Title IX, 20 U.S.C. § 1681 (Count III); violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count IV), and breach of contract (Count V).

Drexel and Dr. Kurtz now move to dismiss Dr. Piety Foley's claims in part. Dr. Piety Foley filed her response in opposition, and the Court held oral argument on the motion. Having been fully briefed, the motion is ripe for decision.

### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully. *Id.* Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic

documents if the complainant's claims are based upon these documents."[3] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

DISCUSSION

Drexel and Dr. Kurtz argue that several events alleged in the Amended Complaint in connection with Dr. Piety Foley's Title VII, PHRA, and Title IX claims are time-barred and must be dismissed with prejudice, while certain other Title VII and PHRA claims have not been exhausted. The Court examines each argument in turn.

**I.   Timeliness of Dr. Piety Foley's Title VII, Title IX, and PHRA Claims**

Drexel and Dr. Kurtz argue that multiple events described in Dr. Piety Foley's complaint that were alleged in EEOC Charges 1, 2, and 3 are time-barred.  Several statutes of limitations are implicated by the Amended Complaint. Under the PHRA, a complainant is required to file an administrative charge with the PHRC within 180 days of the alleged discrimination. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997); 43 Pa. Cons. Stat. § 959(h). A plaintiff must file a Title VII claim with the EEOC within 300 days of the alleged triggering act. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1)). For cases brought in Pennsylvania, the Title IX statute of limitations is two years. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989). Drexel and Dr. Kurtz contend that any events alleged in Charge No. 1 serving as a basis for her Title VII, PHRA, and Title IX claims are time-barred if they occurred prior to October 29, 2019, February 26, 2020, and August 24, 2018, respectively. Any allegations made in Charge 2 serving as a basis for Dr. Piety Foley's PHRA claims are time-

---

[3]      Notwithstanding Dr. Piety Foley's failure to attach her EEOC charges as exhibits to the Amended Complaint because those charges are a matter of public record and integral to the claims at issue, the Court will consider them in ruling on the instant motion. *See, e.g., Mudie v. Phila. Coll. of Osteopathic Med.*, 577 F. Supp. 3d 375, 380 (E.D. Pa. 2021); *Savage v. Temple Univ. – of Commonwealth Sys. of Higher Educ.*, No. 19-cv-6026, 2020 WL 3469039, at *2 (E.D. Pa. June 25, 2020); *Braddock v. SEPTA*, No. 13-cv-6171, 2014 WL 6698306, at *7 (E.D. Pa. Nov. 25, 2014).

5

barred if they occurred before June 30, 2020. And any allegations made in Charge 3 serving as a basis for her PHRA claims are time-barred if they occurred prior to October 19, 2021. Dr. Piety Foley contends that all of the prior acts alleged in the Amended Complaint that reach back beyond the statute of limitations period constitute a continuing hostile work environment violation. She notes that she makes no separate claim regarding termination, suspension, or failure to promote because no such actions occurred during her employment with Drexel. Rather, the acts she alleges are part of a pattern of action that has continued into the relevant statute of limitations period.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).[4] That is because each discrete act "constitutes a separate actionable 'unlawful employment practice'" that "starts a new clock for filing charges alleging that act." *Id.* at 113–14. Therefore, "*generally*, a court may not consider conduct falling outside the designated statute of limitations period." *Leonard v. Bristol Twp. Sch. Dist.*, No. 09-cv-4682, 2010 WL 2995540, at *4 (E.D. Pa. July 28, 2010) (emphasis added). From *Morgan*, the Third Circuit Court of Appeals has divined "the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).

---

[4]      Although *Morgan* discussed the discrete acts versus continuing violation dichotomy only in the context of Title VII, courts have considered them "a generic feature of federal employment law." *O'Connor*, 440 F.3d at 128; *Hanafy v. Hill Int'l, Inc.*, No. 22-cv-878, 2023 WL 3010176, at *4 n.2 (E.D. Pa. Apr. 19, 2023); *see also Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 325 (E.D. Pa. 2018) (applying the conceptual framework to PHRA claim); *Nelatury v. Pa. State Univ.*, No. 1:21-cv-279, 2022 WL 4837433, at *7–*8 (W.D. Pa. Oct. 3, 2022) (conducting continuing violation doctrine in case involving Title IX claim).

The continuing violation doctrine, however, provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991). In the Third Circuit, courts use a two-factor test to decide whether the continuing violation doctrine applies in hostile work environment claims,[5] considering: "(1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; [and] (2) frequency—whether the acts are recurring or more in the nature of isolated incidents." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). "With regard to the 'frequency' of the acts, . . . courts have never set a specific standard for determining how close together the acts must occur to amount to a continuing violation," but the events must be "of substantially similar nature to those which were the basis of the original claim." *Id.* at 295. Prior time-barred discrete acts may be used "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.[6]

Here, Drexel and Dr. Kurtz argue that certain of Dr. Piety Foley's allegations of discrimination are discrete, isolated acts falling outside of the limitations period and that they cannot be salvaged by the continuing violation doctrine. In Charge 1, Drexel and Dr. Kurtz argue

---

[5]     In hostile work environment claims, like those alleged by Dr. Piety Foley, a third prong in the *Cowell* test, degree of permanence, is shelved, because the entire hostile work environment constitutes one unlawful employment practice. *See Mandel*, 706 F.3d at 166 (3d Cir. 2013).

[6]     Time-barred discrete acts may be admitted for a circumscribed purpose—as "[e]vidence of other crimes, wrongs or acts to be used as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or [the] absence of mistake or accident." *Ramirez v. United Parcel Serv.*, No. 06-cv-1042, 2010 WL 1994800, at *1 (D.N.J. May 17, 2010) (internal quotation marks omitted); *see also Homel v. Centennial Sch. Dist.*, 836 F. Supp. 2d 304, 326 n.32 (E.D. Pa. 2011) (permitting use of time-barred discrete acts as "circumstantial evidence of the [employer's] discriminatory motive"); *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 195 (3d Cir. 1994) (agreeing with the holding of the Eighth Circuit Court of Appeals that background evidence should be permitted as relevant to an "assessment of whether a given employer was more likely than not to have acted from an unlawful motive").

that "many" of the events alleged to occur in 2018 and earlier are discrete. Mot. to Dismiss at 12. Although Drexel and Dr. Kurtz fail to delineate precisely which of these acts are discrete, the Court concludes several of the acts alleged in Charge 1 appear to fall within the ambit of the non-exhaustive list of discrete discriminatory acts set forth in *O'Connor*. 440 F.3d at 127. The following alleged actions are discrete and time-barred: (1) the denial or postponement of Dr. Piety Foley's sabbatical leave in the 2008–2009 academic year, *see Jolibois v. Fla. Int'l Univ. Bd. of Trs.*, 654 F. App'x 461, 462–63, 464 (11th Cir. 2016) (considering Title VII claim of discrimination based in part on denial of sabbatical leave); (2) Dr. Jacques Catudal's 2009 accusation that Dr. Piety Foley was attempting to change her teaching schedule to have a term off from teaching, his 2011 accusation that Dr. Piety Foley had forged his signature on a committee report, Dr. Amato's allegedly false accusation in 2011 that Dr. Piety Foley made a comment with the intention of offending people with mental illness, and Dr. Amato's 2013 allegedly wrongful accusation that Dr. Piety Foley had offended a student via email, *see, e.g., Hayes v. Del. State Univ.*, 726 F. Supp. 2d 441, 456 (D. Del. 2010) (finding that false accusations about plaintiff's failure to follow proper procedure or complete a job description qualified as discrete acts); (3) the 2009 denial or alleged insufficiency of Dr. Piety Foley's course release, *see Shah v. Tunxis Cmty. Coll.*, No. 14-cv-712, 2015 WL 4254909, at *7 (D. Conn. July 14, 2015) (finding discontinuation of release time to qualify as a discrete discriminatory act); (4) Drexel's refusal to appoint Dr. Piety Foley to the position of Associate Program Director of the Philosophy Program in 2012 or 2013 and Dr. Kurtz's refusal to do the same in early 2018, cf. *Nelatury*, 2022 WL 4837433, at *9–*10 (dismissing professor plaintiff's refusal to promote claim as time-barred where claim was based on specific vacancy); (5) in 2015, Drexel's failure to permit Dr. Piety Foley to move to a different department or move her office to a safer location, *see O'Connor*, 440 F.3d at 127 (listing "denial

8

of transfer" as a discrete discriminatory act); and (6) the 2017 removal of Dr. Piety Foley as chair of the review committee, *see Green v. Maricopa Cnty. Cmty. Coll. Sch. Dist.*, 265 F. Supp. 2d 1110, 1120 (D. Ariz. 2003) (finding allegations of removal from several committees to be time-barred but admissible as background evidence under *Morgan*). Because "it is apparent that [these allegations] fall into the category of discrete acts . . . under Morgan, they cannot be aggregated under a continuing violations theory." *O'Connor*, 440 F.3d at 127.

However, several of the Charge 1 allegations do *not* appear to be actionable, discrete discriminatory acts. Included in this category are: (1) Dr. Abioseh Porter's pattern of blaming Dr. Piety Foley for other professors' failures in 2009; (2) Dr. Porter's and Dr. Amato's insistence that Dr. Piety Foley help a student with technology support in 2013; (3) the alleged sabotage of two dinners Dr. Piety Foley had arranged for a visiting scholar in 2013; (4) the 2015 rejection of Dr. Piety Foley's idea to create a new Department of Philosophy and Religion; (5) the ongoing non-appointment of Dr. Piety Foley to a mid-tenure review committee in 2013; (6) Dr. Catudal's requests that Dr. Piety Foley write official reviews of professors despite not being an official member of the review committee in 2013; (7) Dr. Catudal's alleged marginalization of Dr. Piety Foley involving an email about department elections sent without Dr. Piety Foley's input that nevertheless implied her involvement; (8) Dr. Ray Brebach's alleged suggestion that Dr. Piety Foley's disagreement with the committee he chaired would harm her own bid for promotion to full professor in 2015; (9) Dr. Amato's disagreement with Dr. Piety Foley about the calculation of a student's grade and Dr. Amato's alleged special treatment of the same student in 2016; (10) Dr. Amato's rating of Dr. Piety Foley's performance at a level of 4 out of 5 in the spring of 2018; (11) Dr. Amato's denial of department funds to Dr. Piety Foley for a lunch with students and a visiting scholar in the fall of 2018; and (12) Dr. Amato's instruction to Dr. Piety Foley that she ask a male

adjunct professor for permission to teach a course that she wanted to teach. *Cf. Mudie*, 577 F. Supp. 3d at 387 (finding that calling plaintiff a liar, requiring proof for plaintiff's absence from work, coworker's comments on building a border wall, and an anonymous threat that the plaintiff would "pay" did not constitute discrete acts). These allegations, arguably, could be aggregated for purposes of the continuing violation doctrine if at least one of the other discriminatory actions alleged occurred within the applicable limitations periods. *Brenner*, 927 F.2d at 1295.

In Charge 2, Drexel and Dr. Kurtz argue that another professor's alleged veiled disparagement of Dr. Piety Foley in an email to the faculty is also time-barred because it occurred in May 2020. This claim is not itself an actionable, discrete act. *Cf. O'Connor*, 440 F.3d at 127 (setting forth non-exhaustive list of examples of discrete acts of discrimination).

Finally, in Charge 3, Drexel and Dr. Kurtz contend that Dr. Kurtz's alleged refusal to move the Religious Studies Program from Global Studies to the Department of English and Philosophy in June 2021. This type of allegation does not qualify as separately actionable, either. *Id.* It too, could perhaps be aggregated for purposes of the continuing violation doctrine if another discriminatory action occurred within the applicable limitations periods. *Brenner*, 927 F.2d at 1295. However, Dr. Kurtz's accusations of Dr. Piety Foley's uncivil behavior with curriculum committee members and his alleged threats to Dr. Piety Foley and demands that she retract the complaint Dr. Piety Foley had made to OED against him in June 2021 *do* qualify as separately actionable. *See O'Connor*, 440 F.3d at 127 (including "wrongful accusation" as a category of discrete discriminatory act); *cf. Mudie*, 577 F. Supp. 3d at 387 (finding threats, including threats of termination, constituted discrete acts). So, they may not be aggregated for purposes of the continuing violation doctrine. *Brenner*, 927 F.2d at 1295.

Drexel and Dr. Kurtz also claim, without meaningful application of the *Cowell* test, that Dr. Piety Foley has failed to show that the acts are part of a pattern of discriminatory actions that continues into the applicable limitations periods. However, Dr. Piety Foley has recounted tens of pages of acts she characterizes as bullying by other members of her department, occurring over a decade, led largely by three or four repeat perpetuators of the claimed hostile work environment. *See, e.g.*, *Mandel*, 706 F.3d at 167 (finding that plaintiff could proceed under a continuing violation theory where "many of the acts that occurred prior to the applicable limitations period involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern"). And Drexel and Dr. Kurtz fall short of arguing that *no* allegedly discriminatory unlawful actions took place in the applicable limitations periods. *Brenner*, 927 F.2d at 1295. Viewing the allegations made in the complaint in the light most favorable to Dr. Piety Foley, the Court cannot rule, at the motion to dismiss stage, that the continuing violations doctrine is inapplicable to this case.

Therefore, Drexel's and Dr. Kurtz's motion to dismiss is denied as to any non-discrete events alleged in the Amended Complaint, which are not time-barred as part of the hostile work environment claims. The motion to dismiss is granted to the extent any of the acts alleged falling outside of the statute of limitations are discrete and actionable, but they may be used for the very narrow purpose of appropriate background evidence in support of Dr. Piety Foley's hostile work environment claims. *Morgan*, 536 U.S. at 113. In the event of a jury trial in this case, such references will be described in accordance with the Court's ruling.

## II. Exhaustion of Administrative Remedies

### A. PHRA Exhaustion as to Charge 3

Drexel and Dr. Kurtz move to dismiss Dr. Piety Foley's PHRA claims alleged in Charge 3 because she failed to exhaust her administrative remedies. Dr. Piety Foley argues that some of the

events covered by the PHRA claims in Charge 3 were already more than a year old at the time of the filing of the Amended Complaint, so the Court has authority to hear these claims.

Exhaustion defenses are appropriately considered in Rule 12(b)(6) motions. *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 87–88 (3d Cir. 1999). "Before commencing a civil action under the PHRA, a party must allow the Pennsylvania Human Relations Commission (PHRC) 'an opportunity to investigate, and if possible, conciliate the matter.'" *Flowers v. Univ. of Pa. Health Sys.*, No. 08-3948, 2009 WL 1688461, at *5 (E.D. Pa. June 16, 2009) (quoting *Barr v. U.S. Reduction Co.*, No. 94-3291, 1996 WL 494142 (E.D. Pa. Aug. 22, 1996)). Generally, plaintiffs may not commence their civil lawsuit until the PHRC has had one year to investigate the administrative complaint. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (citing 43 Pa. Stat. § 962(c)(1)). Applying state law, courts in the Third Circuit have dismissed claims filed prior to the expiration of the PHRC's one-year exclusive jurisdiction period. *See, e.g., Shoul v. Select Rehab., LLC*, No. 21-cv-836, 2022 WL 2118322, at *6 (M.D. Pa. June 13, 2022); *Rodriguez v. CP Dev., Inc.*, No. 20-cv-1672, 2021 WL 3037712, at *12–*13 (W.D. Pa. July 19, 2021); *Tlush v. Mfrs. Res. Ctr.*, 315 F. Supp. 2d 650, 656 (E.D. Pa. 2002). *But see Real-Loomis v. Bryn Mawr Trust Co.*, No. 20-cv-441, 2021 WL 1907487, at *4 (E.D. Pa. May 12, 2021) (finding that an EEOC right to sue letter satisfies the administrative exhaustion requirements of the PHRA).

Dr. Piety Foley dual filed Charge 3 with the EEOC and the PHRC on April 17, 2022. She received a right to sue letter from the EEOC on April 27, 2022. By filing with the PHRC, Dr. Piety Foley subjected herself to the procedures under the PHRA. 43 Pa. Stat. § 962.1(e). To exhaust her administrative remedies, she must either wait until a year after filing the charge, or the PHRC must dismiss the charge or enter a conciliation agreement. *Rodriguez*, 2021 WL 3037712, at *12.

Accordingly, to the extent Dr. Piety Foley's PHRA claims in Count II are based on allegations made in Charge 3, those claims were not exhausted at the time the Amended Complaint was filed, and the claim is dismissed. However, it would appear that Dr. Piety Foley's failure to exhaust has been cured because the PHRA one-year exhaustion period has recently expired. *See Bines v. Williams*, No. 17-cv-4527, 2018 WL 4094957, at *5 (E.D. Pa. Aug. 27, 2018); *Violanti v. Emery Worldwide A-CF Co.*, 847 F. Supp. 1251, 1258 (1994). Therefore, Drexel's and Dr. Kurtz's motion to dismiss is granted without prejudice as it relates to the PHRA exhaustion of Charge 3. Dr. Piety Foley may cure her deficiency in exhausting Charge 3 with the PHRC by amending her complaint. *See, e.g.*, *Rodriguez*, 2021 WL 3037712, at *13; *Rizzotto v. Quad Learning, Inc.*, No. 18-cv-4630, 2019 WL 2766588, at *4 (E.D. Pa. June 28, 2019) (collecting cases).

### B. Title VII Exhaustion as to Charge 3

Drexel and Dr. Kurtz also argue that because only ten days elapsed from the time that Dr. Piety Foley filed Charge 3 with the EEOC and the time that the EEOC issued its right to sue letter for Charge 3, the EEOC could not have begun to undertake its statutory duties with respect to the charge, and therefore Dr. Piety Foley's claims brought under Title VII in Charge 3 are unexhausted and must be dismissed with prejudice.

Title VII provides that the EEOC has a maximum 180-day period to investigate a claim of discrimination. 42 U.S.C. § 2000e-5(f)(1). Once that period has elapsed, if "the Commission has not filed a civil action . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved," at which point he or she may bring suit. *Id.* That notification occurs via a right to sue letter. *Burgh*, 251 F.3d at 470; *see also Seybert v. W. Chester Univ.*, 83 F. Supp. 2d 547, 548–49 (E.D. Pa. 2000). A right to sue letter may issue before the termination of the 180-day period "[i]f the Commission

determines after [an] investigation that there is not reasonable cause to believe that the charge is true." 42 U.S.C. § 2000e-5(b). The EEOC has also promulgated a regulation setting forth that

> [w]hen a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, . . . the Commission may issue [a] notice . . . at any time prior to the expiration of 180 days from the date of filing of the charge with the Commission; provided that [a designated EEOC official] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.

29 C.F.R. § 1601.28(a)(2). The right to sue letter pertaining to Charge 3 was issued pursuant to this regulation. The defendants and Dr. Piety Foley do not generally contest the validity of § 1601.28(a)(2),[7] but instead differ on whether the EEOC gave proper consideration to the claims in Charge 3 before issuing the early right to sue letter.

Drexel and Dr. Kurtz, citing *Patroski v. Ridge*, No. 10-cv-967, 2010 WL 5069941 (W.D. Pa. Dec. 7, 2010), and *Seybert v. West Chester University*, 83 F. Supp. 2d 547 (E.D. Pa. 2000), argue that the Court should dismiss Charge 3 with prejudice because they doubt that the EEOC could have exercised its statutorily defined duties in issuing a right to sue letter to Dr. Piety Foley a mere ten days after receiving Charge 3. *See Patroski*, 2010 WL 5069941, at *8. In *Seybert*, the court found that university employees who brought a gender discrimination suit under Title VII were not barred from bringing suit after the EEOC issued a right to sue letter 55 days after their

---

[7]       This larger issue has been a thorn in the side of courts for over 40 years and has resulted in a circuit split, with the majority of circuits that have decided the question finding that the regulation regarding early right to sue letters was appropriately adopted on the basis of administrative convenience. *Compare Saulsbury v. Wismer & Becker, Inc.*, 644 F.2d 1251, 1257 (9th Cir. 1980) (holding that complainant need not wait 180 days after the EEOC assumed jurisdiction before filing in district court provided that the EEOC had issued a right to sue letter), *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1275 (10th Cir. 2001), *and Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1063 (11th Cir. 1994), *with Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1347–48 (D.C. Cir. 1999) (barring a Title VII claim because the right to sue letter was issued before 180 days and permitting the plaintiff to "file a new complaint in district court only after the Commission ha[d] attempted to resolve her charge for an additional 159 days"). The Third Circuit Court of Appeals "has not taken a definitive position" on the issue. *See Seybert*, 83 F. Supp. 2d at 550 & nn. 8 & 9 (chronicling history of disagreements on the issue among the circuit courts and district courts within the Third Circuit).

charges were filed because it would be unable to complete its investigations within the 180-day period. *Seybert*, 83 F. Supp. 2d at 548. The Court held that the policy of issuing early right to sue letters under the regulation was valid as a plausible interpretation of § 2000e-5(1)(f), and "[u]nder Chevron, that suffices," entitling the regulation to deference. *Id.* at 552. Nevertheless, the Court cautioned that "[i]f it appeared of record that a charge has received little, if any, consideration other than the issuance of an early right to sue notice, a court should be able to *remand* the case for further administrative processing." *Id.* at 553.

In *Patroski*, six days had elapsed between the plaintiff's filing of the charge and EEOC's issuance of the right to sue letter. *Patroski,* 2010 WL 5069941, at *3. Finding that this brief period suggested that "the EEOC ha[d] not undertaken its statutorily defined duties to notify the employer of the charge and to make an investigation thereof," the court in *Patroski* ordered several counts of the complaint dismissed, but *without* prejudice, and *remanded* the case for further administrative proceedings. *Id.* at *8–*9.

Dr. Piety Foley argues that all of the conduct set forth in Charge 3 is conduct that occurred while the EEOC was investigating Charge 1 and Charge 2, between August 24, 2020, and February 8, 2022. She suggests that, in fact, she was not required to file a new administrative charge at all because "(1) the subsequent acts [described in Charge 3] occur[red] while an investigation [was] still pending; and (2) the subsequent acts [were] reasonably related to the acts underlying the earlier finding." *Pourkay v. City of Phila.*, No. 06-cv-5539, 2009 WL 1795814, at *7 (E.D. Pa. June 23, 2009) (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

As the court in *Seybert* noted, the relevant legislative history indicates that aggrieved persons should have an "option to seek a prompt remedy," and the 180-day maximum waiting period was designed to circumvent lengthy delays resulting from increased administrative

workloads. *Seybert*, 83 F. Supp. 2d at 552 (quoting H.R. Rep. No. 92–238, at 2147–48 (1971)).

The Court does not find it appropriate in this circumstance to deviate from "the legal principle that

a party is not required to perform a useless act, *i.e.*, wait for the passage of 180 days when the

passage of such time will not accomplish any purpose." *Pearce v. Barry Sable Diamonds*, 912 F.

Supp. 149, 154 (E.D. Pa. 1996) (quoting 42 Fed. Reg. 47,828, 47,831 (Sept. 22, 1977)). Given the

EEOC investigations of allegedly related claims in Charges 1 and 2, it is not necessarily apparent

on the record that the EEOC gave little or no consideration to Charge 3 before it issued the early

right to sue letter. *Seybert*, 83 F. Supp. 2d at 553; *cf. Mwangi v. Passbase, Inc.*, No. 21-cv-6728,

2022 WL 2133734, at *4 (S.D.N.Y. June 14, 2022) (declining to find failure to exhaust after the

EEOC early right to sue letter "explicitly stated that [the EEOC] had broadly 'reviewed all of the

circumstances' of the case and determined that issuing the notice was 'warranted at this time'

because it would not be able to investigate any further"); *Hernandez v. Premium Merchant

Funding One, LLC*, No. 19-cv-1727, 2020 WL 3962108, at *6 (S.D.N.Y. July 13, 2020) (same).

Therefore, the Court does not find that dismissal of Dr. Piety Foley's claim is appropriate here.[8]

---

[8]    Even if the Court agreed with Drexel's and Dr. Kurtz's argument on this issue, it would not be
appropriate to dismiss Dr. Piety Foley's Title VII claim based on the allegations in Charge 3 with prejudice.
*Seybert*, 83 F. Supp. 2d at 553 (contemplating that courts should have discretion to *remand* a case for further
administrative processing). "To punish [Dr. Piety Foley] for making a request of the EEOC that its own
regulations explicitly permit it to grant would be unduly harsh." *Cronin v. Visiting Nurses Ass'n of St.
Luke's Hosp.*, No. 08-cv-5215, 2009 WL 3152172, at *6 (E.D. Pa. Sept. 30, 2009); *see also Pearce*, 912 F.
Supp. at 157 n.17 (declining to dismiss case with prejudice "despite the few hours between the filing of the
[EEOC] charges and the request for the right-to-sue letters, since it [appeared to the court] that plaintiffs
and their counsel did only what the regulation allows them to do").
       On the other hand—and notwithstanding the *Patroski* court's remand of the charge at issue there
to the EEOC—at least two courts in this district have raised a question of whether formal remand to the
EEOC is an actual option for plaintiffs who have received a premature early right to sue letter, as
distinguished from dismissal of the Title VII claim without prejudice to refile the charge with the EEOC.
*Wood v. Cent. Parking Sys. of Pa., Inc.*, No. 99-cv-3022, 2000 WL 873310, at *5 n.10 (E.D. Pa. June 23,
2000); *see also Pearce*, 912 F. Supp. at 157 (certifying for appellate review the question of whether the
district court had power to remand claims of employment discrimination to the EEOC for investigation and
attempted conciliation if it appeared that the EEOC could complete the process within 180 days). Given the
conclusion that Dr. Piety Foley has properly exhausted her Title VII claim in Charge 3, however, the Court

Therefore, the Court denies Drexel and Dr. Kurtz's motion to dismiss as it relates to Dr. Piety Foley's Title VII claims alleged in Charge 3.

## C. **Exhaustion Regarding Course Cancellation and Charge 4**

Drexel and Dr. Kurtz also argue that Dr. Piety Foley has not exhausted her Title VII and PHRA claims as they relate to an incident around March 7, 2022, when she alleges retaliation by the university when one of her courses was prematurely cancelled. Am. Compl. ¶ 310. Because there were no investigations ongoing in March 2022, and the course cancellation was a discrete event not mentioned in the three charges with the EEOC, they argue, Dr. Piety Foley cannot pursue her Title VII or PHRA claims based on this event until she exhausts her administrative remedies with respect to this claim. Apparently in response to the defendants' argument, Dr. Piety Foley dual-filed Charge 4 on September 2, 2022, for which the EEOC issued a right to sue letter on May 4, 2023. Dr. Piety Foley has now administratively exhausted Charge 4 as it relates to her Title VII claim. *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 963 (3d Cir. 1978). The Court thus grants Drexel's and Dr. Kurtz's motion to dismiss as it relates to the retaliatory course cancellation alleged in Charge 4 without prejudice. Dr. Piety Foley may amend Count I to allege that she has exhausted her administrative remedy as to this claim. *See Oliver v. Erie Cnty.*, No. 1:21-cv-162, 2022 WL 4610579, at *3 (W.D. Pa. Sept. 30, 2022).

Charge 4 is *not* administratively exhausted, however, as to Dr. Piety Foley's PHRA claim. There is no indication that the PHRC either dismissed the charge or entered a conciliation agreement, *Rodriguez*, 2021 WL 3037712, at *12, nor has a year elapsed since Dr. Piety Foley filed Charge 4. To the extent Dr. Piety Foley's PHRA claims in Count II are based on allegations made in Charge 4, then, those claims remain unexhausted and must be dismissed without prejudice.

---

need not hypothesize here on the most appropriate mechanics of sending that charge back to the EEOC drawing board.

Nevertheless, it appears that "the period of exhaustion [may] expire during the pendency of litigation." *See, e.g.*, *Rizzotto*, 2019 WL 2766588, at *4 (quoting *Eldridge v. Municipality of Norristown*, 828 F. Supp.2d 746, 758 (E.D. Pa. 2011), *aff'd*, 514 F. App'x 187 (3d Cir. 2013)). Dr. Piety Foley may seek leave to amend her complaint when Charge 4 is properly exhausted for purposes of the PHRA. *Rosetsky v. Nat'l Bd. of Med. Examiners of U.S., Inc.*, 350 F. App'x 698, 703 & n.3 (3d Cir. 2009).

CONCLUSION

For the foregoing reasons, the motion to dismiss is denied in part (1) as to the non-discrete events alleged in the Amended Complaint that pre-date the applicable statute of limitations for the Title VII, PHRA, and Title IX claims and (2) as to the issue of the administrative exhaustion of Charge 3 with regard to the Title VII claim. The motion is granted in part (1) as to the discrete, actionable events that fall outside the applicable statute of limitations for the Title VII, PHRA, and Title IX claims, (2) without prejudice as to the administrative exhaustion of Charge 3 with regard to the PHRA claim, and (3) without prejudice as to the administrative exhaustion of Charge 4 with regard to the Title VII and PHRA claims.

Dr. Piety Foley may amend her Complaint with regard to the administrative exhaustion of her Title VII and PHRA claims. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE