# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARILYN GAYE PIETY FOLEY, | : |
| Plaintiff, | : |
| v. | : No. 2:22-cv-01777-WB |
| DREXEL UNIVERSITY, | : |
| Defendant. | : |

## DEFENDANT'S AMENDED PRE-TRIAL MEMORANDUM[1]

Defendant, Drexel University ("Defendant" or "Drexel"), by and through its undersigned counsel, submits this Pre-Trial Memorandum pursuant to this Court's Orders dated April 5 and August 2, 204 (docs. 143, 177), this Court's Policies and Procedures, and Local Rule 16.1.

### I. Factual Summary of the Case and Basis for Jurisdiction

Plaintiff Marilyn Gaye Piety Foley ("Plaintiff") is a tenured faculty member at Drexel that has achieved the status of full professor in the Philosophy Program, housed in the Department of English and Philosophy. While Plaintiff initially filed claims based on Title VII, Title IX, the PHRA, breach of contract, and the Equal Pay Act ("EPA"), the only remaining claim following this Court's summary judgment Opinion and Order is the Equal Pay Act claim. (Docs. 170, 171.) Plaintiff claims that she is paid less than at least one

---

[1] This Amended Pretrial Memorandum is submitted to include (i) Section VI.B.3., which is an objection to Plaintiff's attempt to call Drexel's outside counsel, Leslie Greenspan, as a witness at trial, and (ii) Section VI.F.1, which is an objection to Plaintiff's presentation of evidence related to Drexel's wealth, evidence of Plaintiff's already-dismissed discrimination and retaliation claims, and testimony of or about Amelia Hoover Green. These arguments were also included in Drexel's Omnibus Motion *in Limine* (doc. 195) and are added to the instant Pretrial Memorandum in an abundance of caution and for the sake of completeness.

male employee in her Department despite performing the same or substantially the same work, referencing one faculty member in the Philosophy program (Jacques Catudal) and four faculty members in the English program (Abioseh Porter, Richard Astro, Mark Greenberg, and Scott Warnock).

Drexel submits that the male employees in the Department who were paid more than Plaintiff earned more money because they held administrative positions at some point during their employment at Drexel. For instance, Dr. Catudal served as the Vice Provost at Drexel in the early 2000's. His salary increased when he served in this administrative role, and he maintained a higher salary throughout the duration of his employment at Drexel when he stepped down from his administrative role and re-joined the faculty. The same is true for all of the male employees identified by Plaintiff. Dr. Porter served as Department Head; Dr. Astro and Dr. Greenberg served as Provost and Senior Vice President for Academic Affairs; and Dr. Warnock currently serves as Associate Dean of Undergraduate Education. Additional factors other than sex also impact salaries, including longevity of employment at Drexel, raises for promotion, tenure, cost of living and merit, academic areas of specialization, and competing job offers. *Plaintiff's sex played no part in the difference in salaries.*

Plaintiff has not identified the specific relief she seeks, other than to say that she is unable to calculate her damages because she takes issue with the salary information provided by Drexel.

This Court has subject matter jurisdiction over Plaintiff's action because this case arises under federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Summary of Legal Issues – Equal Pay Act Claim

Under the Equal Pay Act, a plaintiff must first demonstrate that employees of the opposite sex were paid differently for performing work of substantially equal skill, effort and responsibility, under similar working conditions. The burden of persuasion then shifts to the employer, who may avoid liability by establishing one of the four affirmative defenses enumerated under the EPA: (i) a bona fide seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any factor other than sex. EEOC v. Del. Dep't of Health and Soc. Servs., 865 F.2d 1408, 1413-14 (3d Cir. 1989).

The damages available under an EPA claim are limited to the pay a plaintiff should have received for equal work. Neither emotional distress damages nor punitive damages are available for Plaintiff's EPA claim. See, e.g., Third Circuit Model Jury Instructions, 11.3.1, EPA Damages ("There is no statutory authority for an award of damages such as for emotional distress, pain and suffering, or lost opportunity. Accordingly, no instruction is provided."); EEOC, 865 F.2d at 1418 n. 14 ("The Equal Pay Act is a part of the FLSA"). The statute of limitations on an EPA claim is generally two years (three years in the event of a "willful" violation). 29 U.S.C § 255(a); see also Sec'y United States DOL v. Mosluoglu, Inc., No. 22-2749, 2023 U.S. App. LEXIS 24385, at *9 (3d Cir. Sep. 14, 2023).

Here, Plaintiff was the highest-paid and highest-ranking member of the Philosophy program at the time she filed this lawsuit. In the two-year look-back period permitted by the EPA, the only person paid more than Plaintiff in the Philosophy program was Dr. Catudal, who previously served as Vice Provost of Drexel and had worked at Drexel for nearly 15 years before Plaintiff was hired. Looking at the Department as a whole,

3

including the English program, there are female faculty members whose salaries are higher than Plaintiff's. Clearly, those salary inequalities are not based on sex. For the four male English faculty members identified by Plaintiff as comparators with higher salaries, those individuals all held (or hold) administrative positions, and some of them have worked at Drexel much longer than Plaintiff. Dr. Greenberg, for example, was hired at Drexel in 1979 – nearly 20 years before Plaintiff was hired at Drexel. Plaintiff's sex plays no role with respect to these salary differences.

### III. List of Witnesses and Schedule of Exhibits

Defendant's Trial Exhibit List is attached as Exhibit 1.

The following is a list of the names and addresses of the witnesses Defendant intends to call at trial:

1. Plaintiff, Marilyn Gaye Piety Foley (contact through Plaintiff's counsel)

2. Roger Kurtz, PhD, Department Head, Department of English and Philosophy at Drexel (contact through undersigned counsel)

3. Peter Amato, PhD, Director, Philosophy Program at Drexel (contact through undersigned counsel)

4. Paul Jensen, PhD, Provost (contact through undersigned counsel)

5. Abioseh Porter, PhD, former Department Head, Department of English and Philosophy at Drexel (contact through undersigned counsel)

6. Donna Murasko, PhD, Professor Emerita, former Dean College of Arts and Sciences at Drexel University (contact through undersigned counsel)

7. Flavia Padovani, PhD, Associate Professor of Philosophy at Drexel (contact through undersigned counsel)

8. Andrew Smith, PhD, Professor of Philosophy and Department Head of Biodiversity, Earth and Environmental Science at Drexel (contact through undersigned counsel)

9. Nathan Hanna, PhD, Associate Professor of Philosophy at Drexel (contact through undersigned counsel)

10. Jacques Catudal, PhD, former Associate Professor of Philosophy at Drexel (contact through undersigned counsel)

11. Keyanah Jones, Human Resources Business Partner at Drexel (contact through undersigned counsel)

## IV. **Estimate of days required for trial**

Drexel estimates one and a half to two days for its case-in-chief and three to four days total for trial.

## V. **Stipulations of Counsel**

Counsel filed the parties' Stipulations on August 26, 2024 (doc. 194).

## VI. **Objections to Plaintiff's Exhibits and Evidence**

A. Objections to Plaintiff's Trial Exhibits

1. Drexel objects to Plaintiff's trial exhibits 15, 19, 41, 42, 43, 44, 57a and b, 58a and b, 59a and b, 60a and b, 61, 61a, and 64 because Plaintiff improperly seeks to introduce the parties' discovery disputes related to Drexel's objections to producing certain confidential salary information and Drexel's designation of such information as "attorneys' eyes only" (AEO). It is wholly improper for Plaintiff to raise discovery disputes in front of the jury, and such arguments are irrelevant to Plaintiff's Equal Pay Act claim and highly prejudicial to Drexel. This issue is briefed in Drexel's Omnibus Motion in Limine (doc. 195 at 5-8). See also Thompson v. Glenmede Trust Co., No. 92-5233, 1996 U.S. Dist. LEXIS 13672, at **5-6 (E.D. Pa. Sept. 16, 1996) (precluding evidence pertaining to the discovery process, finding that there was no evidence of cover-up, and concluding that allowing the parties to describe four years of discovery and the "hardball"

tactics employed by the lawyers to the jury would detract from the issues in the case, cause confusion, and mislead them on these side issues).

2.     Drexel objects to Plaintiff's trial exhibits 24, 48, 49, and 50 because the congratulatory emails from Plaintiff's colleagues, some of which are from 2024, have no bearing on her Equal Pay Act claim. See doc. 195 at 14-15.

3.     Drexel objects to Plaintiff's trial exhibit 1, a website or article from the Chronicle of Higher Education that appears to identify some salary information at Drexel. Plaintiff found a website, ran some select search on it (with unknown criteria and parameters), and produced a screen shot of it. Plaintiff has identified no expert to testify about this exhibit or explain it to the jury, and therefore, it will be confusing and misleading to jurors. See doc. 195 at 15-16. The document also appears to be incomplete, showing only one snap short of information out of context from anything else.

4.     Drexel objects to Plaintiff's trial exhibits 45, 46, 47, 51, 53, and 54 because they are Plaintiff's own blogs touting herself, or other "accomplishments" that have no bearing on Plaintiff's EPA claim. See doc. 195 at 16-17.

5.     Drexel objects to Plaintiff's trial exhibit 52 because it is simply an AI search of the internet for Plaintiff's name, which has no relevance to Plaintiff's claims and will be confusing to jurors and not helpful. See doc. 195 at 16-17.

6.     Drexel objects to Plaintiff's trial exhibits 2, 6, 8, 15, 56, all of which are depositions, based on the objections asserted during the depositions. Those objections should be resolved prior to any presentation of the deposition testimony to the jury.

B. <u>Objections to Plaintiff's Witness List</u>

1.Drexel objects to Plaintiff's identification of John Fry as a witness at trial. Mr. Fry is the former President of Drexel. Mr. Fry has no first-hand knowledge of this case, and any second-hand (or even more attenuated) information he may have would be privileged. Plaintiff's identification of Mr. Fry as a witness as trial is merely a harassment tactic. The burden to Mr. Fry, who is now the President of Temple University, would be substantial and disproportionate to his knowledge of this case, which is none. To the extent Plaintiff's interest in calling Mr. Fry as a witness relates to Plaintiff's trial exhibits 48, 49, and 50 (which are an email from Mr. Fry to Plaintiff dated April 7, 2024 about a conference Plaintiff is planning and a form letter and certificate of recognition), and to the extent the Court allows the introduction of such exhibits at all, Plaintiff herself can authenticate the materials (as having received them), and/or Drexel will stipulate that Mr. Fry sent them to Plaintiff and/or signed them. Drexel objects to Plaintiff's Proposed Voir Dire no. 38 on the same basis – that Mr. Fry should be precluded from testifying at trial for lack of any first-hand knowledge of this case or non-privileged second-hand (or more attenuated) knowledge of this case.

2.Drexel objects to Plaintiff's identification of Mark Greenberg, Richard Astro, and Scott Warnock as trial witnesses because their testimony will be merely cumulative. The only relevant information these witnesses have relates to their individual salaries, which will be verified by other Drexel witnesses, including Keyanah Jones from Human Resources. Plaintiff's identification of these three witnesses is merely a harassment tactic and will waste the Court's and the jurors' time with cumulative evidence.

3. For the reasons set forth in Drexel's Omnibus Motion in Limine (doc. 195 at 5-8), Drexel objects to Plaintiff's identification of Drexel's outside counsel, Leslie Greenspan, as a witness at trial. In a further effort to harass and burden Drexel, Plaintiff has identified its outside counsel as a witness at trial to testify about the "creation of hearsay pay documents." (Doc. 190 at 10.) It is wholly improper and highly prejudicial for Plaintiff to raise discovery disputes in front of the jury and try to turn Drexel's outside counsel into a trial witness, in violation of Pennsylvania Rule of Professional Conduct 3.7. Any information held by Attorney Greenspan is privileged, and the discovery disputes that Plaintiff raises already have been resolved. The issues that Plaintiff seeks to raise in front of the jury are also irrelevant to the EPA claim they will be charged to decide. See Thompson, 1996 U.S. Dist. LEXIS 13672, at **5-6.

C. Objections to Plaintiff's Voir Dire

1. Drexel objects to Plaintiff's Proposed Voir Dire's "introductory explanation." The parties have submitted a proposed Joint Statement of the Case (doc. 196) with agreed-upon language, and no further "introductory explanation" is necessary or appropriate, particularly the one-sided version submitted by Plaintiff. This same objection applies to Plaintiff's Proposed Jury Instructions' no. 2 (doc. 204 at 43).

2. Drexel objects to Plaintiff's Proposed Voir Dire no. 8 (doc. 199) because it improperly attempts to inject insurance into this case, when insurance has never been an issue here.

3. Drexel objects to Plaintiff's Proposed Voir Dire nos. 25 and 26 (doc. 199) because they improperly seek to inject some of the already-dismissed discrimination and retaliation claims. As part of Plaintiff's initial allegations, she accused Drexel and certain

individuals of using her married name (Foley) instead of her maiden name (Piety). All of Plaintiff's discrimination and retaliation claims have been dismissed on summary judgment (docs. 170, 171), and Plaintiff has no basis to attempt to re-inject these issues into this case.

4. Drexel objects to Plaintiff's Proposed Voir Dire nos. 27 and 28 (doc. 199) because they are irrelevant to the remaining Equal Pay Act claim or to determining whether jurors can be impartial in this case.

5. Drexel objects to Plaintiff's Proposed Voir Dire no. 29 (doc. 199) because it improperly asks the jurors to stand in Plaintiff's shoes.

D. <u>Objections to Plaintiff's Proposed Jury Instructions</u>

1. Drexel objects to Plaintiff's Proposed Jury Instructions 7 (doc. 198 at 16-17) and 7A (doc. 204 at 15-16) because it distorts the actual testimony, and Dr. Kurtz's Rule 30(b)(6) deposition testimony is not an irrebuttable judicial admission. To the extent the Court allows Plaintiff's proposed instruction, Drexel respectfully requests an additional instruction that Drexel is permitted to present testimony in addition to the corporate representative's testimony, and the Rule 30(b)(6) deposition testimony should be treated just like any other deposition testimony.

E. <u>Objections to Proposed Verdict Sheet</u>

1. Drexel objects to Plaintiff's Proposed Verdict Sheet no. 6 (doc. 200) because Plaintiff is seeking additional discovery, despite fact discovery being long closed and the salary information already having been provided by Drexel. It is wholly inappropriate to ask the jury on a verdict sheet to compel Drexel to produce additional information,

particularly after two federal judges and a Special Discovery Master have said "no more discovery."

    F. <u>General Objections to Plaintiff's Presentation of Evidence</u>

    1. As set forth in more detail in Drexel's Omnibus Motion *in Limine* (doc. 195), Drexel objects to Plaintiff presenting evidence of Drexel's wealth, evidence of Plaintiff's already-dismissed discrimination and retaliation claims, and testimony of or about Amelia Hoover Green.

## VII.   Additional Legal Issues

    A. <u>Plaintiff's Motion *in Limine*</u>

Plaintiff filed a motion *in limine* to preclude Drexel from presenting evidence beyond the testimony of Dr. Roger Kurtz, who served as Drexel's corporate representative at two separate depositions.[2] Plaintiff's motion also seeks to preclude Drexel from using the documents containing the salaries of the Philosophy and English programs' tenured faculty, although Plaintiff intends to use such documents for her own limited purposes. (Doc. 197.) Drexel intends to oppose Plaintiff's motion in accordance with the Court's briefing schedule and notes the following summary points:

    1. Plaintiff distorts the Rule 30(b)(6) deposition testimony of Dr. Kurtz to make it seem like Dr. Kurtz was not prepared and merely answered questions with "I don't

---

[2] Drexel designated Dr. Kurtz as the corporate representative pursuant to Rule 30(b)(6) for purposes of his December 19, 2023 deposition, which related to a host of topics including the salaries of the tenured faculty in the Philosophy program. At an in-chambers conference with Judge Pratter on January 11, 2024, Judge Pratter, at Plaintiff's request, allowed one final deposition related to the salaries of the tenured faculty in the English program and identified the witness for the deposition. Judge Pratter stated: "30 minutes. 30(b)(6), same witness answering questions about the English program…. 30 minutes, start to finish. That's it. No more discovery." (Jan. 11, 2024 Hearing Transcript at 8:11-16.)

know." This is not the case. The deposition topics, while initially overbroad and over-reaching, were narrowed in conjunction with the parties' discussions with the Special Discovery Master, Ralph Wellington. (The compromised list of topics is attached as Exhibit 2.) Plaintiff primarily takes issue with Dr. Kurtz's testimony with respect to Plaintiff's topic 14, which related to the salaries of the tenured faculty in the Philosophy program from 2017 to the present time. In many instances throughout both of Dr. Kurtz's Rule 30(b)(6) depositions, the questions to which Dr. Kurtz answered "I don't know" related to a time far outside of this scope or other matters outside the scope of the compromised topics. By way of example, Plaintiff's counsel asked Dr. Kurtz about certain faculty members' starting salaries at Drexel in 1979 (Dr. Greenberg), 1996 (Dr. Astro), and 2004 (Dr. Warnock).

2. Even if Dr. Kurtz's testimony was how Plaintiff described, which it is not, his testimony is not treated as an irrebuttable judicial admission. That evidence, like any other deposition testimony, is admissible against the party that designated the representative, is not a "judicial admission absolutely binding on that party," and can be "contradicted and used for impeachment purposes." See, e.g., Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC, 40 F. Supp. 3d 437, 451 (E.D. Pa. 2014); State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 212 (E.D. Pa. 2008).

3. The salary documents provided by Drexel during discovery are admissible. The salary data contained in the documents was not "made up" by Drexel's counsel. As testified to by Dr. Kurtz, the salary data came from the Human Resources Department. The Human Resources representative who provided the salary data, Keyanah Jones, will

be presented to testify at trial. The documents are not "unverifiable" and are not precluded by the rule against hearsay.

4. Drexel objects to Plaintiff's Proposed Jury Instruction 7 (doc. 198 at 16-17) and 7A (doc. 204 at 15-16) with respect to Dr. Kurtz's Rule 30(b)(6) depositions for the same reasons as set forth above – that it distorts the actual testimony and that it is not an irrebuttable judicial admission.

### B. Drexel's Video Trial Deposition of Dr. Jensen

Drexel has alerted Plaintiff's counsel that it intends to take the videotaped trial deposition of Dr. Paul Jensen, Drexel's Provost. Dr. Jensen will be attending the wedding of his son in California in the days leading up to the trial, and has other professional conflicts immediately upon his return to Pennsylvania, including Drexel Board meetings. He is not available to testify live until September 26, 2024 at the earliest. In an effort to heed this Court's Policies and Procedures about the smooth running of trial and not "running out of witnesses during a trial day," Drexel intends to take Dr. Jensen's trial testimony via video deposition ahead of time. In an effort to do this, Drexel has provided Plaintiff's counsel with two dates on which the deposition could take place (September 10 and 13), but Plaintiff's counsel does not agree to allow such videotaped trial testimony. (The parties' communications on this point are attached as Exhibit 3.)

As this Court is aware, videotaped trial testimony is common and acceptable. There is no basis for Plaintiff to disagree to "allow" such trial testimony, which will help ensure a smooth trial and not risk Drexel "running out of witnesses during a trial day," in the event Dr. Jensen's testimony were to be presented prior to September 26, 2024.

Respectfully submitted

**TUCKER LAW GROUP, LLC**

DATED: August 31, 2024

/s/ Leslie Miller Greenspan
Joe H. Tucker, Jr., Esquire
Leslie Miller Greenspan, Esquire
Hillary B. Weinstein, Esquire
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
Attorneys for Defendant,
Drexel University

## CERTIFICATE OF SERVICE

I, Leslie Miller Greenspan, Esquire certify that on this date, I caused a copy of the foregoing document to be electronically filed through the Court's ECF System and that a notice of electronic filing will be generated to the following counsel of record, thereby constituting service of the document:

Brian J. Foley, Esquire
6701 Germantown Avenue, Suite 200
Philadelphia, PA 19119

*Attorney for Plaintiff, Marilyn Gaye Piety Foley*

**TUCKER LAW GROUP, LLC**

Date: August 31, 2024

/s/ Leslie Miller Greenspan
Leslie Miller Greenspan, Esquire