**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARILYN GAYE PIETY FOLEY** | : | |
| | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO. 22-1777 |
| v. | : | |
| | : | Before the Hon. Wendy Beetlestone |
| **DREXEL UNIVERSITY** | : | United States District Judge |
| | : | |
| Defendant | : | |

## PLAINTIFF'S PRETRIAL MEMORANDUM FOR JANUARY 27, 2025 EPA Trial Per Court Order of September 23, 2024 (Doc. 220)

After granting judgment against Defendant on liability for violating the Equal Pay Act, the Court scheduled this trial for January 27, 2025 on the limited issues of willfulness and damages. *See* Order September 23, 2024, ECF #220. Previously, the Court denied Defendant's motion for summary judgment on that claim on July 25, 2024, and granted summary judgment to Defendant on Plaintiff's HWE and retaliation claims under Title VII, Title IX, and the PHRA.  *See* Order and Memorandum, ECF #170, #171. Defendant's PreTrial Memo is due a week after Plaintiff's, and Plaintiff reserves the right to file an amended PreTrial Memo to respond if necessary.

I.    <u>**Nature of the Case and the Parties' Contentions**</u>

Plaintiff alleges age pay discrimination in violation of the Equal Pay Act, 29 U.S.C. § 201, *et seq*. ("EPA").  The Court has original subject matter jurisdiction over the EPA claim pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.  **Liability has been established**. Plaintiff's claim – limited to damages and willfulness – is to be tried to a jury.

**Briefly, the Equal Pay Act** is essentially a strict liability statute and does not require proof that Defendant intended to discriminate. For liability, all a plaintiff must show is that she received lower pay for substantially equal work. *EEOC v. Delaware Dept. of Health and Social Services,* 865 F.2d 1408 (3d Cir. 1989). "A plaintiff need not prove that she was paid less than every comparable male employee. It is enough for the plaintiff to show that there is discrimination in pay with respect to one employee of the opposite sex." Third Circuit Model Civil Jury Instructions, 11.1.1, lines 27-28. *See also Ryan v. Gen.  Mach. Prod*., 277 F. Supp. 2d 585, 596 (E.D.Pa. 2003) ("In order to prove an EPA claim, a plaintiff need only establish that she was paid differentially because of her sex with respect to a single male employee.").  For liability, Equal Pay Act claims follow a two-step burden-shifting paradigm. First, the woman Plaintiff must prove that at least one male colleague was paid more than she is paid for performing "equal work" -- work of substantially equal skill, effort and responsibility, under similar working conditions.

*Stanziale v. Jargowsky*, 200 F.3d 101 (3d Cir. 2000); *E.E.O.C. v. Delaware Dept. of Health and Social Services*, 865 F.2d at 1413-14. The burden then shifts to the employer to prove its compensation decisions were based on one of four affirmative defenses: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. *Stanziale*, 200 F.3d 107, n. 6 (citing 29 U.S.C.A. § 206(d)(1)).  In fact, "an employer [must] submit evidence from which a reasonable factfinder could conclude not simply that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *Id.* at 107-108. In other words, to avoid liability, the employer must prove that its more favorable treatment of male professors was based on a factor other than sex "so clearly that no rational jury could find to the contrary." *Stanziale*, 200 F.3d at 107; *Delaware Dept. of Health*, 865 F.2d at 1414.

**The September 23, 2024 finding of liability** requires, at least, an award to Plaintiff of damages starting by going back two (2) years before the complaint was filed. *See* Third Circuit Model Civil Jury Instructions, 11.3.2 - 3 (citing 29 U.S.C. § 255(a)).  **A finding of willfulness** requires that the damages award go back three (3) years before the complaint was filed. *Id.* Here, because the complaint was filed May 9, 2022, that means the damages will go back either to May 9, 2019 (willful) to present or to May 9, 2020 (non-willful) to present. **The amount of backpay, either for willful or non-willful violation, is then doubled automatically by the Court.  29 U.S.C. § 216(b).**

Because no evidence was presented at the September 23, 2024 trial, and because Defendant at that time had not provided complete verifiable pay information in violation of relevant Court order(s), rendering Plaintiff unable to proceed, the Court entered a judgment on liability (ECF #220). This means that, for the purposes of the upcoming January 27 trial, the pay differentials shown by the evidence that Defendant provided since September 23 show are deemed to be between male Department faculty members *doing substantially the same work as Plaintiff, and to be based on sex.* Therefore, the Court must guard against Defendant putting on evidence to try to litigate liability, such as to try to show that the work is not substantially similar, and that the differences in pay are not based on sex. *That is, Defendant is barred from litigating its defense to liability, because liability has been established.*

**Drexel's violation of the EPA was willful.** To show a willful violation, Plaintiff needs simply to show that the Defendant "knew or showed reckless disregard for whether [plaintiff's] underpayment was prohibited by the law." Third Circuit Model Civil Jury Instructions, 11.3.3; id, at Comment (discussing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) and *EEOC v. State of Delaware Dept. of Health and Social Services*, 865 F.2d 1408, 1419 (3d Cir. 1989) (affirming a jury verdict on willfulness, and an award for a third year of damages, where the jury could have found that a personnel director "must have entertained a strong suspicion of an Equal Pay Act violation which, with the most cursory investigation, would have led to actual knowledge.")).

The evidence will show that Drexel knew of the pay differentials and knew that they were illegal -- and covered up these discrepancies, in several ways. First, Drexel refused to provide any pay information in discovery. Second, when Drexel finally provided (limited) information in 2023, it marked the information "confidential" and "attorney eyes only," preventing Plaintiff from being able to even know it, such that it would be impossible for her to verify it with colleagues without violating the confidentiality/AEO order (and without her attorney violating it). Drexel never provided, until *after the September 23 trial*, salary information beyond 2023, *see* Plaintiff's Ex. 10 (D_008311) (philosophy to August 2023) and Ex. 13 (D_011424) (English through 2022), despite that Plaintiff had requested pay information up to the present and is entitled to payment up through the date of any jury verdict. This was a cover up by Drexel that was motivated by its knowledge that the information beyond 2022/2023 showed pay discrepancies that violated the EPA.

In addition, Dr. Kurtz, as Drexel's 30(b)(6) spokesperson (and Department Head), admitted in December 2023 and February 2024 that he was aware of the pay discrepancies, and that he was also aware of the fact that in 2016, the Department had been found – by Drexel's own Office of Equality & Diversity – to be a hostile workplace for female faculty. He testified that he did not look into the discrepancies, despite the chasm between male and female pay and especially the pay of Dr. Piety and male professors. That is willful ignorance.

In addition, Dr. Kurtz claimed, testifying as Drexel's spokesman, that he believed, but never checked, that the higher pay for some male professors was the result of a pay increase for serving in administrative roles, and that he believed, but never checked, that professors got to keep that pay increase even when no longer working in that administrative role.  However, evidence Drexel has produced *since then* -- after the September 23, 2024 trial -- shows that professors who serve in administrative roles, *including Dr. Kurtz himself*, receive an administrative pay supplement *on top of* their base salary, and that when they leave those roles, *the supplement ends*. (That is, before the September 23 trial, the salary information Drexel produced *omitted* the administrative supplements *altogether* and did not include them in the purported total salaries; it turns out only base salaries were provided.) So, for example, Dr. Kurtz's salary as presented through discovery *before* September 23, 2024 *appeared* to cover *both* his work as Professor in the Department *and* as Head of the Department, when it was really his base salary only. So, Dr. Kurtz knew, when he testified that he believed the salary pay discrepancies were a result of additional administrative roles (even held in the past), that this was false.

The effect of Defendant's omission of the administrative supplement evidence before the September 23 trial was that it made such salaries (including Dr. Kurtz's) seem not-comparable with Plaintiff's, as they appeared to *include* pay for administrative work -- when in fact they did not. *Compare* D_11784 (Ex. 66) (produced after September 23,

2024, *including* administrative supplements) *with* D_011521 (Ex. 66) (produced before September 23, *omitting* administrative supplements), Plaintiff's Ex. 10 (D_008311) (philosophy to August 2023, *omitting* administrative supplements), and Ex. 13 (D_011424) (English through 2022, *omitting* administrative supplements). *Cf. Melanson v. Rantoul*, 536 F. Supp. 271, 289 (D.R.I. 1982) (finding that where a comparator "received a separate and identifiable stipend for his Chairman's duties, above and beyond his faculty base salary ... base salaries for those years, exclusive of the stipend, can be compared").

Therefore, Dr. Kurtz, as Defendant's designated spokesman, was intentionally misleading and obfuscating in his depositions, to make it seem that several highly paid male professors' salaries simply were not comparable to Plaintiff's. This is likely because Dr. Kurtz knew that Drexel was and is breaking the law by paying several male professors significantly more money than it pays Dr. Piety to do the same work.

In addition, *no women in the Department have ever served in the Provost's Office or as Department Head -- and the evidence produced by Defendant since September 23, 2024 shows that the administrative supplements women receive for administrative work are* lower *than those paid to male professors. See* D_11784 (Ex. 66).

II.    <u>**Stipulations of Counsel and Admissions**</u>

The parties will need to stipulate that Drexel has been found liable for violating the Equal Pay Act – for paying Dr. Piety less than Drexel pays various male professors for doing the same work, and that the pay difference iss based on sex.

**The parties are working together in an effort to stipulate to the damages / pay differential calculations,** based on different comparators and approaches. Undersigned counsel sent calculations to Drexel's Attorney Greenspan on January 9 and January 13 and expects to work with her this week as she works on Defendant's PreTrial memo. Even if the parties disagree as to who should be the comparators, Plaintiff expects that the parties will have calculations for the various possible comparators. Undersigned counsel casts no aspersions regarding waiting to hear back, as there will likely be some discussion about the approaches and about the math. Plaintiff believes that the parties will reach agreement on what the numbers are, but not necessarily on the combination of comparators / proper approach.

III.    <u>**Plaintiff's Witnesses and Nature of Expected Testimony**</u>

The witnesses Plaintiff expects to call will depend on whether the parties agree on the math regarding the pay differential calculations.  If they do, Plaintiff expects to call far fewer witnesses than if they do not, as follows.  (These predictions are based on Plaintiff's best efforts at this time to anticipate what the trial will look like if damage

calculations are agreed upon and if they are not; Plaintiff reserves right to amend based

on further information such as Defendant's PreTrial Memo, which is not due until

January 20, 2025.) [1]


**A.    Plaintiff's witnesses if the parties agree on the pay differential**

**calculations:**

1)    Roger Kurtz
Willfulness and damages -- awareness of pay differentials and illegality thereof; refusal
to correct such differentials; cover-up of such differentials

> **-Both in his own capacity**
>
> **and as 30(b)(6) spokesperson for Drexel,**
>
> both as on cross-examination

2)    Drexel University (*see* #1 *supra*, incorporated by reference), as on cross-examination

Willfulness and damages -- awareness of pay differentials and illegality thereof; refusal
to correct such differentials; cover-up of such differentials

*Possibly:*

3)    Keyanah Jones, Drexel Human Resources Business Partner
Pay information such as authenticating chart(s) she created with pay information
            as on cross-examination

4)    Rose Flavin, Executive Director of Payroll Operations at Drexel
Pay information such as authenticating chart(s) regarding information

---

[1] These predictions are based on Plaintiff's best efforts at this time to anticipate what the trial will look like if damage calculations are agreed upon; Plaintiff reserves right to amend based on further information such as Defendant's PreTrial Memo, which is not due until January 20, 2025.

Willfulness – Drexel's efforts to avoid providing Plaintiff access to W-2 information
 as on cross-examination

> **-Both in her own capacity**
>
> **and as 30(b)(6) spokesperson for Drexel,**
>
> both as on cross-examination

5)      Megan Weyler (aka Megan Van Horn) Senior Vice President and Chief HR
Officer
Pay information such as authenticating chart(s) regarding information
Willfulness – Drexel's efforts to avoid providing Plaintiff access to W-2 information

6)      Any witness on Defendant's witness list (not yet provided as Defendant's Pretrial
Memo is due January 20, 2025) - as on cross-examination


B.      **Plaintiff's witnesses if the parties *do not* agree on the pay differential**

**calculations:**


**1-6 above, and:**


7)      Jacques Catudal
            Pay information only (if necessary, such as if parties cannot agree on
            numbers)
            -former Drexel philosophy professor, as on cross-examination, subpoena
duces tecum to bring pay documents

8)      Richard Astro
Pay information only (if necessary, such as if parties cannot agree on numbers)
            -Drexel English professor, as on cross-examination, subpoena duces tecum
to bring pay documents

9)      Abioseh Porter
            Pay information only (if necessary, such as if parties cannot agree on numbers)

-Drexel English professor, as on cross-examination, subpoena duces tecum to bring pay documents

10)    Mark Greenberg
Pay information only (if necessary, such as if parties cannot agree on numbers)
-former Drexel English professor, as on cross-examination, subpoena duces tecum to bring pay documents

11)    Scott Warnock
Pay information only (if necessary, such as if parties cannot agree on numbers)
-former Drexel English professor, as on cross-examination, subpoena duces tecum to bring pay documents

12)    Andrew Smith
Pay information only (if necessary, such as if parties cannot agree on numbers)
-Drexel philosophy professor, as on cross-examination, subpoena duces tecum to bring pay documents

III.    **Designation and Objection to Deposition Testimony**

**1. December 19, 2023 30(b)(6)**

7:11 - 14:14

18:20-30:6

130

Confidential / Attorney Eyes Only pages:

136-162

And Exhibits within these pages: 1; 2; 5; 6; 7; 10 (D_8322); 11 (D_4595a); 12

(D-4595b); D-11155

**NOTE:** This 30(b)(6) deposition is offered as a statement of party opponent and is not hearsay. *See* FRE 801(d)(2).

## 2. February 28, 2024 30-minute-start-to-finish-30(b)(6)

entire deposition transcript - 30 pages and exhibits

**NOTE:** This 30(b)(6) deposition is offered as a statement of party opponent and is not hearsay. *See* FRE 801(d)(2).

## 3. Kurtz Deposition May 10 2023

pages 62-72

**NOTE:** This is not hearsay, because it is **not** offered for the truth; rather, it is offered to show Attorney Greenspan's and Dr. Kurtz's **conduct** - Greenspan's instruction to Dr. Kurtz not to answer a question regarding whether there are salary differences in the Department based on whether a professor teaches English or philosophy, and his following that instruction. *See* FRE 801(c).

## 4. October 18, 2024 30(b)(6) (Rose Flavin)

entire deposition transcript - and exhibits

**NOTE:** This 30(b)(6) deposition is offered as a statement of party opponent and is not hearsay. *See* FRE 801(d)(2).

IV.    **Plaintiff's Exhibits**

Note: The exhibit numbers from previous list for September 23, 2-24 trial have

been retained.

2    Pages 18-33 from 30(b)(6) 12/19/2023 (we may offer entire deposition and exhibits

as they are on Defendant's list, **which is D-36a and D-36b)**

6    30-min-30(b)(6) Deposition of Drexel 2/28/2024 (we may offer entire deposition

and exhibits as they are on Defendant's list, **which is D-37a and D-37b)**)

8    Confidential Pages from 12/19/23 30(b)(6) Deposition 134-164 and 1-8 index (we

may offer entire deposition as it is on Defendant's list, **which is D-36a and D-36b**)

10    PHIL salaries D_8311

11    PHIL salaries D_4595a

12    PHIL salaries D_4595b

13    ENG salaries 2018-22 D_011424

15    Pages from Kurtz Deposition May 2023 60-68, 140, 210, 78 (we may offer entire

deposition and exhibits **and errata sheet** as they are on Defendant's list, **which is D-35a,**

**D-35b, D-35c**)

19    2/23/2024 Notice for 30-min 30(b)(6)

55    Any exhibit identified on Defendant's Exhibit List

of Documents

64      Drexel (March 7 2023) Objections to Plaintiff's Amended 30(b)(6) Deposition

Notice (March 2 2023)

65      Drexel W2s for Department of English & Philosophy, 2019-2023 - D_11426-11520

Drexel W2s 2019-2014 (needs to be updated to include 2024)

66      D_011521 Dept of EP Salaries Chart 2019-2024 (needs to be updated to include

2025)

67      Excel Page D_11783_CONFIDENTIAL_EP Faculty Earnings 2019-2024 thru Sept

Protected (needs to be updated to include 2025)

68      Excel page  D_11783_CONFIDENTIAL_EP Faculty Earnings 2019-2024 thru Sept

Protected (needs to be updated to include 2025)

69      Chart: D_11784_CONFIDENTIAL_Keyanah J. EP Tenured_Tenured Track

Positions and Salaries 2019-2024 Protected (needs to be updated to include 2025)

70      30(b)(6) of Drexel (Rose Flavin) October 18, 2024 transcript


**V.      <u>Plaintiff's Itemization of Damages</u>**

*Please see* Exhibit A. **FILED UNDER SEAL.**

Plaintiff will also seek attorney fees and costs in addition to the liquidated

damages and will calculate them when trial ends. *See* 29 U.S.C.A. § 216(b).

VI.    <u>**Anticipated Legal Issues**</u>

      A.    **Defendant must not be permitted to try to litigate liability, which has already been found.**

      The Court must guard against Defendant putting on evidence to try to litigate liability, such as to try to show that the work is not substantially similar (and it is not), and that the differences in pay are not based on sex (they are not). *That is, Defendant is barred from litigating its defense to liability, because liability has been established.*

      Therefore, because liability has been found, comparing the work of Dr. Piety with the male professors who are being paid more is **irrelevant;** so is the fact that Dr. Piety, during this time period (and before) has earned annual reviews consistently four (4) or above out of five (5), and is, **beyond doubt**, a far more accomplished scholar than any of the males Drexel pays more than it pays her. **All that is relevant is the pay discrepancies, Defendant's knowledge of them, and Defendant's failure to address them.** In short, other than the determination of willfulness, this case simply presents a mathematical calculation for the jury or Court. Therefore, Dr. Piety requests that the Court prevent Defendant from efforts to confuse and mislead the issues and the jury. (For example, on September 20, 2024, before the trial scheduled to begin three days later, opposing counsel Greenspan told undersigned counsel, during discussions, "I don't want to trash your wife [Dr. Piety]." Although it is unclear whether Attorney

Greenspan was talking about "trashing" Plaintiff in the instant discussion, or during the upcoming trial, undersigned counsel interpreted the statement to be about the upcoming trial and in addition believes that Defendant will indeed attempt to "trash" Dr. Piety at trial – despite that any information about Dr. Piety other than her pay is irrelevant.) **Defendant may not rehash liability.**

### B.    Choice of comparators.

One issue the Court must address is whether Plaintiff may simply choose her comparators. For example, during the entire non-willful and willful time periods, Dr. Richard Astro served as a Department professor with no official administrative duties, just like Dr. Piety. Dr. Astro earned more than anyone else in the Department during this time period. During the willful time period, that is, adding May 9, 2019 to May 8, 2020, there was an additional professor in the Department until September 1, 2019, Dr. Mark Greenburg, who was earning more than anyone else in the Department during this time period, including Dr. Astro. Neither man had any official administrative duties and received no administrative supplements and, therefore, were, like Dr. Piety, working as "just professors."  If Dr. Piety can calculate her damages based on these two comparators alone, the trial will be streamlined, and Dr. Piety's award will be larger than if she must compare her pay to the average of additional male comparators during these time periods (see below). *See* Exhibit A at page 17 (Version 2 of Damages

Calculations). In addition, Drexel's stipulating to using just Drs. Astro and Greenberg as the comparators will help Drexel, because, that way, the rest of the faculty salaries should remain confidential. Throughout this case, Drexel has argued that confidentiality of faculty salaries is of paramount importance to Drexel, even to the point that Drexel did not allow Plaintiff to know any of this information (using "attorney eyes only").[2]

Given that liability has been established but there has been no presentation of evidence of comparators, it is appropriate and fair for Plaintiff at this stage to choose her comparators and use the highest paid. This is especially the case where there is no apparent rhyme or reason for discrepancies among male employees. See *Grimes v. Athens Newspaper, Inc.*, 604 F. Supp. 1166, 1168-69 (M.D. Ga. 1985). (*Grimes* is cited in the Third Circuit Model Jury Instructions as an example of a case holding that the highest paid male comparator may be used for the damages calculation; the instructions note that it is a minority view, and that there is apparently no Third Circuit authority on this issue -- and Plaintiff has found none. *See* Third Circuit Model Civil Jury Instructions, 11.3.2. Comment, page 30 lines 1-8.)

---

[2] The Court may wish to ask Drexel at the pretrial conference why it is preparing to proceed with public trial after arguing so strenuously throughout this litigation that it needed to protect the salary information with not only confidential designation but attorney eyes only designation (AEO). The AEO designation significantly hampered undersigned counsel's ability to advocate for Plaintiff, as he could not even share material information with her for more than a year including throughout the summary judgment briefing.

Otherwise, it is appropriate for Plaintiff to compare the average base salary of the males who are paid higher, minus the administrative stipends / supplements. *See Edelman v. NYU Langone Health Sys.*, No. 21 CIV. 502 (LGS), 2022 WL 4537972, at *5 (S.D.N.Y. Sept. 28, 2022) (citing cases). Plaintiff has done calculations based on the average salaries of male comparators, during the particular times that the particular comparators were working in the Department. *See* Ex. A at page 3 (Version 1 of Damages Calculations).

### C.    The Court Must Prevent Drexel from Perpetrating "Trial by Ambush"

In two 30(b)(6) depositions, Drexel's designated spokesperson (then-Defendant, Kurtz) was under a duty to "testify about information known or reasonably available to the organization" under FRCP 30(b)(6), but he could not / would not / did not explain the differentials but offered only rank speculation and "I don't knows." ***Defendant Drexel is bound by this testimony.*** *Brand Design Co. v. Rite Aid Corp.*, C.A. 22-1174 (E.D. Pa. Mar. 18, 2024) ("Rule 30(b)(6) obligates the corporation 'to prepare its designee to be able to give binding answers' on its behalf.") (quoting *In re Linerboard Antitrust Litigation*, 237 F.R.D. 373, 382 (E.D. Pa. 2006)). It would be unfair for Drexel to be permitted now, after stonewalling, to try to explain the sex-based pay disparities at trial to defend against the willfulness charge. Defendant cannot now, as Dr. Piety has argued in her motion in limine, bring in additional testimony that contradicts its 30(b)(6)

testimony, including to "fill in the blanks" of its "I don't know" answers. This is **sham testimony for a trial by ambush**, which is prohibited. *See Daubert v. NRA Group, LLC*, 861 F.3d 382, 391-393 (3rd Cir. 2017) (affirming district court's disregarding sham affidavit contradicting 30(b)(6) testimony. As this court stated more than 30 years ago:

> Defendant's interpretation, however, subverts the purpose of Rule 30(b)(6). Under Rule 30(b)(6), defendant has an obligation to prepare its designee to be able to give binding answers on behalf of [the organization]. If the designee testifies that [the organization] does not know the answer to plaintiffs' questions, [the organization] will not be allowed effectively to change its answer by introducing evidence during trial. ***The very purpose of discovery is "to avoid 'trial by ambush.'"***

*Ierardi v. Lorillard, Inc.*, No. CIV. A. 90-7049, 1991 WL 158911, at *3 (E.D. Pa. Aug. 13, 1991) (emphasis added) (quoting *Federal Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 201 (E.D.Tenn.1986).). **Dr. Piety is simply arguing that Court should not permit Defendant, after flouting its duty to provide answers with all information reasonably available in the 30(b)(6) depositions, to come to trial with new witnesses purporting to give those answers for the first time.** *See generally* Doc. 197 (Piety motion in limine), Doc 208 (Drexel response), Doc 213 (Piety reply).

Therefore, Drexel should be barred from presenting any evidence additional to the 30(b)(6) testimony to support any defense it may wish to make to willfulness.

**VII.** **Proposed Points for Jury Charge on Substantive Claim, Proposed Verdict Forms or Special Interrogatories to the Jury**

Proposed Jury Instructions – *See* Ex. B

Proposed Verdict Form/Special Interrogatories - *See* Ex. C

**VIII.** **Plaintiff's Estimate of Trial Duration**

Plaintiff expects to complete her case-in-chief in one to two days if the parties agree on the numbers for willful and non-willful violations. Plaintiff respectfully reserves the **right to present rebuttal testimony**, if the Court permits Defendant to put on evidence beyond the 30(b)(6) testimony of Dr. Kurtz to counter willfulness. **Overall trial time may be reduced significantly if (1) the parties agree on numbers and/or (2) the Court grants the above-described omnibus motion *in limine* by Plaintiff.** *See* Doc. 197 (Piety omnibus motion in limine), Doc 208 (Drexel response), Doc 213 (Piety reply), pertaining to the the 30(b)(6) testimony issue, as described *supra.*

Plaintiff reserves the right to amend her PreTrial Memo, as needed.

Respectfully submitted,

**BRIAN J. FOLEY, ATTORNEY AT LAW**

*/s/ Brian J. Foley*
BRIAN J. FOLEY, ESQUIRE
6701 Germantown Ave - Ste 200
Philadelphia, PA 19119
(267) 930-4425 v (267) 930-4425 f
*Attorney for Plaintiff*

Dated: January 13, 2025

<u>**CERTIFICATE OF SERVICE**</u>

I, BRIAN J. FOLEY, ESQ., attorney for Plaintiff, Marilyn Gaye Piety Foley, hereby certify that on the date below that a true and correct copy of the foregoing *PLAINTIFF'S PRETRIAL MEMORANDUM FOR JANUARY 27, 2025 EPA Trial Per Court Order of September 23, 2024 (Doc. 220)*, and exhibits and certificate of service, were filed in the Court's ECF system, constituting service to all counsel including counsel of record for Defendants, and a notice of electronic filing will be generated to all counsel of record, thereby constituting service of the document.

<u>*/s/ Brian J. Foley*</u>
Brian J. Foley, Esquire

Date: January 13, 2025

**EXHIBIT A**

**Damages Calculations (FILED UNDER SEAL)**

**EXHIBIT B**

**Plaintiff's Proposed Jury Instructions**

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARILYN GAYE PIETY FOLEY,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | **NO.: 22-cv 01777** |
| **v.** | : | |
| | : | |
| **DREXEL UNIVERSITY,** *et al.* | : | |
| | : | |
| **Defendants** | : | |

**Plaintiff's Proposed *Jury Instructions* – for January 27, 2025, Trial on Equal Pay Act Willfulness and Damages**

---

## PROPOSED JURY INSTRUCTION NO. 1

### Description of Applicable Law: Description of the Case[3]

In this case, Plaintiff, Professor Marilyn Gaye Piety Foley ("Professor Piety") **has shown before this trial** that Defendant, Drexel University, has discriminated against her by paying her less than Drexel pays male professors in her Department doing substantially equal work. This his case arises under the Equal Pay Act ("EPA"),

---

[3] Model Civil Jury Instructions for the Districts of the Third Circuit, § 1.2 Description of the Case; Summary of Applicable Law (June 2024 update) **[MODIFIED]**

amended the Fair Labor Standards Act ("FLSA")[4] to secure "the principle of equal pay for equal work regardless of sex." Congress' purpose in enacting the Equal Pay Act was to remedy a serious and endemic problem of employment discrimination -- the fact that the wage structure of many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same. The solution adopted was quite simple in principle: to require that "equal work will be rewarded by equal wages."[5] "Although the Act has prohibited sex-based wage discrimination for more than fifty years, the financial exploitation of working women embodied by the gender pay gap continues to be an embarrassing reality of our economy."[6]

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision, but, in order to help you follow the evidence, I will now give you a brief summary of the elements Professor Piety must prove to make her case at this trial:

---

[4] 29 U.S.C. § 201, *et seq.*

[5] *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).

[6] *Rizo v. Yovino*, 887 F.3d 453, 456 (9th Cir. 2018).

Unlike some other anti-discrimination laws, the Equal Pay Act does not require proof of intent to discriminate -- it is essentially a "strict liability" statute.[7]  A plaintiff recovers under the Equal Pay Act by proving that she received lower pay for substantially equal work, **and that the lower pay was based on sex.  Professor Piety has already proved that before this trial**.

Further, "[a] plaintiff need not prove that she was paid less than every comparable male employee. It is enough for the plaintiff to show that there is discrimination in pay with respect to one employee of the opposite sex."[8] Conversely, it

---

[7] *EEOC v. Delaware Dept. of Health and Social Services*, 865 F.2d 1408 (3d Cir. 1989); *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1533 (11th Cir. 1992); *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986).

[8] Third Circuit Model Civil Jury Instructions, 11.1.1, lines 27-28. *See also Ryan v. Gen. Mach. Prod.*, 277 F. Supp. 2d 585, 596 (E.D.Pa. 2003) ("In order  to prove an EPA claim, a plaintiff need only establish that she was paid differentially because of her sex with respect to a single male employee."); *Gutierrez v. City of Converse*, No. 5:17-cv-01233-KJP (W.D. Tex. Jan.10, 2020) quoting *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 799 (S.D. Tex. 1998) (citing *Merrill v. Cintas Corp.*, 941 F. Supp. 1040, 1044 n.4 (D. Kan. 1996)); *U.S. Equal Emp't Opportunity Comm'n v. Md. Ins. Admin.*, 879 F.3d 114 (4th Cir. 2018) ("An EPA plaintiff is not required to demonstrate that males, as a class, are paid higher wages than females, as a class, but only that there is discrimination in pay against an employee with respect to one employee of the opposite sex.") citing *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 161 (4th Cir. 1992) ("A female plaintiff bears the burden of proof of establishing a prima facie case by showing [among other things] that [ ] her employer pays her a lower wage than a male counterpart          " (emphasis added by court)); *EEOC v. White & Son Enter.*, 881 F.2d 1006, 1009  (11th Cir. 1989) ("Plaintiff need only show discrimination in pay against an employee vis-a-vis one employee of the opposite sex.") citing *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1033 n. 10 (11th Cir.1985); *Goodrich v. Int'l Bhd. Of Elec. Workers*, 815 F.2d 1519, 1524 (D.C. Cir. 1987) ("It is now established in this circuit that the plaintiff need not compare herself to all similarly classified male employees, but may choose one or more among those allegedly doing substantially equal work.")

is not a defense for Drexel where it discriminates against some employees on the basis

of sex merely because it favorably treats other members of the employees' group.[9]

**Professor Piety has already proved that before this trial**.

**Your verdict and damages award in this case in favor of Professor Piety** will not

result in any male professor getting a reduction in his compensation.[10]

---

[9] *Connecticut v. Teal,* 457 U.S. 440, 452-456 (1982). *See also U.S. Equal Emp't Opportunity Comm'n v. Md. Ins. Admin.*, 879 F.3d 114 (4th Cir. 2018) ("An EPA plaintiff is not required to demonstrate that males, as a class, are paid higher wages than females, as a class, but only that there is discrimination in pay against an employee with respect to one employee of the opposite sex."); *Lavin-McEleney v. Marist College*, 238 F.3d 476, 480 (2d Cir. 2001) (confirming that the EPA can be violated even if comparators of one sex as a group are not paid less than comparators of the opposite sex as a group: while the plaintiff was paid less than one comparable man, another comparable woman was paid the most of the three employees).

[10] 29 U.S.C. § 206(d)(1) ("an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.")

## PROPOSED JURY INSTRUCTION NO. 2

### 30(b)(6) Deposition Testimony

In this case, you will hear testimony given by Drexel in depositions given by oe or more spokespersons whom Drexel designated to testify on its behalf during the discovery phase of this cases. The Federal Rules of Civil Procedure allowed the Plaintiff to obtain the testimony of Drexel through a witness designated by Drexel to testify as if he or she were Drexel; the Plaintiff must describe with reasonable particularity the matters for examination, and the witness designated by Drexel must testify about information known or reasonably available to the organization, Drexel University.[11] In this case, Drexel designated Department Head Dr. / Professor J. Roger Kurtz to testify for it on the topics about which he testified, in two depositions, and Rose Flavin to testify for it on topics about which she testified, in one deposition. In these depositions, Dr. Kurtz and Rose Flavin were testifying, not on their own behalf, but as though they was, in fact, Drexel. Therefore, any testimony they gave on behalf of Drexel in those depositions is

---

[11] Fed. R. Civ. P. 30(b)(6)

binding on Drexel,[12] and is admissible against Drexel if offered into evidence by Professor

Piety, because Drexel's 30(b)(6) testimony are statements of Drexel.[13]

---

[12] *Brand Design Co. v. Rite Aid Corp.*, Civil Action 22-1174 (E.D. Pa. Mar. 18, 2024) ("Rule 30(b)(6) obligates the corporation 'to prepare its designee to be able to give binding answers' on its behalf.") quoting *In re Linerboard Antitrust Litigation*, 237 F.R.D. 373, 382 (E.D. Pa. 2006); *Shin Da Enters. v. Wei Xiang Yong*, Civil Action 21-3384 (E.D. Pa. Nov. 23, 2022) (same); *Resolution Tr. Corp. v. Farmer*, No. 92-3310, 1994 WL 317458, at *1 (E.D. Pa. June 24, 1994) ("[t]he purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."); *Ierardi v. Lorillard, Inc.*, No. 90-7049, 1991 WL 158911, at *2 (E.D. Pa. Aug. 13, 1991) ("Admissions made by the [Rule 30(b)(6)] deponent will be binding on his principal."). *See also New Jersey v. Sprint Corp.*, No. 03-2071-JWL, 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010) (testimony provided by a corporate representative at a 30(b)(6) deposition binds the corporation, since this is quite unlike a deposition of an employee of the corporation, which is little more than that individual employee's view of the case and is not binding on the corporation .... plaintiff [] is entitled to tie down the definitive positions  of [the corporation] itself, rather than that of the individuals who work for [the corporation]); *Accord Fowler v. State Farm Mutual Automobile Insurance Co.*, CIVIL NO. 07-00071 SPK-KSC (D. Haw. Nov. 13, 2008); *Rainey v. Am. Forest and Paper Ass'n, Inc.*, 26  F. Supp. 2d 82, 94 (D.D.C. 1998) ("[Rule 30(b)(6)] binds the corporate party to the positions taken by its 30(b)(6) witnesses so that opponents are, by and large, insulated from trial by ambush."); *U.S. v. Taylor*, 166 F.R.D. 356, 360-363 (M.D.N.C. 1996) (the purpose of a corporate representative deposition is to give "binding answers for the corporation").

[13] F.R.E. 801(d)(2).

**PROPOSED JURY INSTRUCTION NO. 3**

**Equal Pay Introductory Instruction[14]**

**As I explained to you at the beginning of the trial,** in this case the Plaintiff already showed before this trial that Drexel violated the the Equal Pay Act, a statute that prohibits an employer from paying women less than men for jobs that require substantially equal work.

Specifically, Professor Piety showed that she was paid less than one or more male employees even though they performed substantially equal work, and that this difference in pay was based on sex.

I will now instruct you more fully on the issues you must address in this case: whether Drexel's violation of the Equal Pay Act was willful, and what monetary damages Professor Piety should be paid.

---

[14] Model Civil Jury Instructions for the Districts of the Third Circuit, § 11 Equal Pay Introductory Instruction (August 2020 Update) **MODIFIED**

**PROPOSED JURY INSTRUCTION NO. 4**

**Equal Pay Act Damages — Back Pay — Willful Violations** [15]

If Professor Piety proves to you by a preponderance of the evidence that Drexel's violation of the Equal Pay Act was willful, then this will have an effect on the damages that you must award. I will explain this effect in a minute, but first I will provide you more information on what it means to be a "willful" violation.

You must find Drexel's violation of the Equal Pay Act to be willful if Professor Piety proves by a preponderance of the evidence that Drexel knew or showed reckless disregard for whether Professor Piety's underpayment was prohibited by the law. To establish willfulness it is not enough to show that Drexel acted negligently. If you find that Drexel did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard for whether its conduct was prohibited by the law, then Drexel's conduct was not willful.

---

[15] Model Civil Jury Instructions for the Districts of the Third Circuit, § 11.3.3 Equal Pay Act Damages — Back Pay — Willful Violations (August 2020 Update)

[*Instruct as follows if the plaintiff's pay is compared to a single male employee:*

  If you find that Drexel's violation was willful, then you must award Professor Piety the amount of damages that compensates her for the difference between what she was paid (in both wages and benefits) and what [name of male employee] was paid (in both wages and benefits) during the period starting [three years before the date the lawsuit was filed, which is May 9, 2019] through the date of your verdict. However, if you find that Drexel's violation of the Equal Pay Act was not willful, then you must award Professor Piety the difference between what she was paid (in both wages and benefits) and what [name of male employee] was paid (in both wages and benefits) during the period starting [two years before the date the lawsuit was filed, which is May 9, 2020] through the date of your verdict. In other words, Professor Piety is entitled to damages for an extra year if she proves that Drexel's violation was willful.**]**

[*Instruct as follows if the plaintiff's pay is compared to more than one male employee:*

  If you find that Drexel's violation was willful, then you must award Professor Piety the amount of damages that compensates her for the difference between what she was paid (in both wages and benefits) and the average amount of what [names or job titles of male employees] were paid (in both wages and benefits) during the period starting [three years before the date the lawsuit was filed] through the date of your verdict. However, if you find that Drexel's violation of the Equal Pay Act was not

willful, then you must award Professor Piety the difference between what she was paid (in both wages and benefits) and the average amount of what [names or job titles of male employees] were paid (in both wages and benefits) during the period starting [two years before the date the lawsuit was filed] through the date of your verdict.  In other words, Professor Piety is entitled to damages for an extra year if she proves that Drexel's violation was willful.**]**

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

**NOTE TO COURT FROM PLAINTIFF: The names of the male professors are being left out at this point (January 13, 2025) because the parties are working to come to agreement on the comparators and amounts]**

**EXHIBIT C**


**Proposed Verdict Form/Special Interrogatories**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARILYN GAYE PIETY FOLEY** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | **NO.: 22-cv 01777** |
| **v.** | : | |
| | : | |
| **DREXEL UNIVERSITY** | : | |
| | : | |
| **Defendant** | : | |

---

**PLAINTIFF'S PROPOSED SPECIAL VERDICT FORM FOR JANUARY 27, 2025**
**TRIAL ON WILLFULNESS AND DAMAGES**

1.    Was Drexel's violation(s) of the Equal Pay Act in this case willful?


        Yes    _____

        No     _____


2.    What is the amount of backpay Professor Piety should receive from Drexel?

        a. If the EPA violation was willful (backpay from May 9, 2019 to present):
        $_____


        b. If the EPA violation was not willful (backpay from May 9, 2020 to present):
        $_____