**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARILYN GAYE PIETY FOLEY, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : No. 2:22-cv-01777-WB <br> DREXEL UNIVERSITY, : <br> : <br> Defendant. : | |

**DEFENDANT'S BENCH BRIEF IN SUPPORT OF
<u>THIS COURT'S REDUCTION OF LIQUIDATED DAMAGES</u>**

Following the jury's verdict on January 29, 2025, Defendant, Drexel University ("Drexel"), submits this Bench Brief in support of this Court's reduction of liquidated damages.

**I.      <u>LEGAL STANDARDS</u>**

Pursuant to the 29 U.S.C. § 216, an employer found to be in violation of the Equal Pay Act shall be liable for the underpayment and "in an additional equal amount as liquidated damages." 29 U.S.C. § 216. The governing law provides, however, that if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that it had reasonable grounds for believing that its act or omission was not a violation of the law, "the court may, in its sound discretion, award no liquidated damages" or reduce the award of liquidated damages. 29 U.S.C. § 260, cited in Third Circuit Model Civil Jury Instruction 11.3.4. <u>See also</u> <u>Su v. East Penn Mfg. Co.</u>, No. 18-1194, 2023 U.S. Dist. LEXIS 186375, at *16 (E.D. Pa. Oct. 17, 2023) ("Before the Court exercises this discretion, it "must make findings… that the employer

acted in good faith and with reasonable grounds."), citing <u>Marshall v. Brunner</u>, 668 F.2d 748 (3d Cir. 1982).

## II. <u>**ARGUMENT**</u>

In this case, Drexel has demonstrated its good faith, as follows:

- Drexel has multiple policies prohibiting discrimination based on gender. (Joint Exhibits 61 and 62.) That Drexel has created such policies shows its good faith in trying to comply with the law, including federal law.

- Drexel has a Human Resources Compensation team, which is involved in every hire and every promotion, among other pay-related instances. As testified to by Keyanah Jones, the Human Resources Compensation Team ensures fairness and equity in salaries across the University. The Human Resources Compensation team uses market tools from "CUPA" (the College and University Professional Association for Human Resources), among others, to set salaries and ensure Drexel is competitive in the external market and also fair and equitable internally. Dr. Roger Kurtz testified that he cannot hire a new employee without the input and approval of Human Resources, the Provost, and the Dean. That Drexel has a centralized system in place for reviewing and analyzing salaries reflects its good faith in trying to comply with the law.

- Drexel considers a number of factors when setting salaries, including whether a faculty member holds, or has held, an administrative position; longevity at Drexel; whether the faculty member had prior university or tenure-line experience; and whether the faculty member has an area of academic

- specialization that is in high demand at a science, engineering, and technology-heavy university like Drexel.
- Plaintiff never held an administrative role such as Provost, Vice Provost, Department Head, or Dean, nor did she have ambition to take on these administrative roles and give up her teaching. Her career choices impacted her salary. These choices were not Drexel's.
- Drexel presented testimony about how both men and women received the same percentage increases for promotions and tenure. Plaintiff received the same percentage increases as others. Plaintiff also testified that in the years that she did not receive a merit increase, that lack of increase applied across the board to both men and women.
- Some women in the Department earned more than Plaintiff. Some men in the Department earned less than Plaintiff.
- Dr. Kurtz testified that his higher salary is also compensation for his Department Head role, beyond just his administrative stipend. Dr. Smith also received a higher salary and administrative supplement for his role as Department Head in a different department, but because the Court required the jury to select at least one comparator (as a result of the Court's liability ruling), Drexel was limited in its presentation of evidence as to the many differences between Plaintiff and Dr. Smith and the bases for Dr. Smith's salary.
- Dr. Kurtz further testified that when he began his role as Department Head in 2017, he became aware of the varying salaries in the Department and sought

to understand the differences. He came to learn that his Department had two former Provosts and one former Vice Provost, among others, and he understood from his prior university experience that it is common practice for them to have higher salaries because of their administrative roles. This is because of the step-down agreements, which are individually negotiated. Such step-down agreements are necessary to compensate faculty members to take on administrative roles and give up their teaching and scholarship for a period of years. Dr. Kurtz ultimately concluded that there were sound and reasonable reasons for the salary differences in the Department.[1]

In addition to the testimony and evidence cited above, the procedural history of this case, as reflected on the docket, reflects Drexel's good faith. (See docs. 31, 36, 86, 88, 99, 104.) At trial, Plaintiff was permitted to tell the jury that she requested documents in discovery and that Drexel did not provide the information requested, or produced information piecemeal over time. In contrast, under this Court's pretrial rulings, Drexel was not permitted to tell the jury that Plaintiff filed multiple motions to compel discovery and that they were denied by the prior judge. Those rulings are the law of the case, but Plaintiff was permitted to revisit them anyway, and Drexel was not permitted to present this evidence to the jury. This Court, however, is aware that Drexel was never required to produce the pay information demanded by Plaintiff until after Judge Pratter passed away, while the jury was not permitted to be made aware.

---

[1] The trial transcript is not available as of the time of this submission to the Court. Additional bases may be identified upon receipt of the transcript, and Drexel respectfully requests the time to brief such issues at that time.

There is a split among the Circuits on whether a jury's finding of willfulness precludes the Court from reducing liquidated damages under the EPA, and the Third Circuit has not yet ruled on this issue. But see Stillman v. Staples, Inc., No. 07-849, 2009 U.S. Dist. LEXIS 42247, at **80-81 (D.N.J. May 11, 2009). Other Circuits have so ruled, but those cases are not binding on this Court. See, e.g., Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1166 (11th Cir. 2008) (citing Circuit split).

This Court has previously shown that a finding of willfulness does not preclude this Court from performing a separate analysis of Drexel's good faith. In Hugler v. Cent. Laundry Inc., No. 15-1502, 2017 U.S. Dist. LEXIS 225422, at *2 (E.D. Pa. Mar. 24, 2017) (J. Beetlestone), this Court performed a separate analysis of the defendant's good faith even after a judicial finding of willfulness. Although Hugler was decided on summary judgment, the fact that this Court performed a separate and distinct analysis of good faith, after finding willfulness, suggests that it is a separate issue worthy of a separate analysis.

Similarly, in Su v. Nursing Home Care Mgmt., No. 21-cv-02583, 2023 U.S. Dist. LEXIS 83501 (E.D. Pa. May 12, 2023) (J. Kenney), another court within this District still considered good faith after a finding of willfulness. Also upon the plaintiff's motion for summary judgment, the Su court made a finding that the defendant's conduct was willful. The Court then performed a separate analysis of the defendant's good faith with respect to reducing liquidated damages. Id., at **30-37 (willfulness), **45-50 (good faith).

This Court can and should engage in a separate and distinct analysis of Drexel's good faith for the purpose of reducing the liquidated damages award, in part or in whole. The jury's finding of willfulness must have been tied to Plaintiff's presentation of Drexel's purported "hiding" of pay documents. Plaintiff has cited to no case in which a party's conduct during discovery is permitted to establish willfulness under the EPA. Moreover, whether Drexel "hid" documents during discovery – which it most certainly did not – had no impact whatsoever on the salary Plaintiff has been receiving at Drexel since 1998. The two are not related, and yet Plaintiff was permitted to present a one-sided narrative to the jury.

### III.   CONCLUSION

For the foregoing reasons, Defendant Drexel respectfully requests that this Court reduce the liquidated damages amount, in part or in whole, based on Drexel's good faith, only part of which was permitted to be shared with the jury.

Respectfully submitted

**TUCKER LAW GROUP, LLC**

DATED: January 30, 2025

/s/ Leslie Miller Greenspan
Joe H. Tucker, Jr., Esquire
Leslie Miller Greenspan, Esquire
Hillary B. Weinstein, Esquire
1801 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 875-0609
Attorneys for Defendant,
Drexel University

**CERTIFICATE OF SERVICE**

      I, Leslie Miller Greenspan, Esquire certify that on this date, I caused a copy of the foregoing document to be electronically filed through the Court's ECF System and that a notice of electronic filing will be generated to the following counsel of record, thereby constituting service of the document:

Brian J. Foley, Esquire
6701 Germantown Avenue, Suite 200
Philadelphia, PA 19119

*Attorney for Plaintiff, Marilyn Gaye Piety Foley*

**TUCKER LAW GROUP, LLC**

Date: January 30, 2025

/s/ Leslie Miller Greenspan
Leslie Miller Greenspan, Esquire