**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARILYN GAYE PIETY FOLEY, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 2:22-cv-01777-WB |
| | : | |
| v. | : | |
| | : | |
| DREXEL UNIVERSITY and ROGER KURTZ, | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT DREXEL UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR POST-TRIAL RELIEF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................................i

I.      INTRODUCTION ...............................................................................................1

II.     PROCEDURAL HISTORY .................................................................................3

III.    FACTS ................................................................................................................3

IV.     ARGUMENT ......................................................................................................4

        A.  Standard of Review...................................................................................4

            1.  Rule 50(b) – Renewed Motion for Judgment as a Matter of Law ...........4

            2.  Rule 59(a) – New Trial ...................................................................5

            3.  Rule 59(e) - Alter or Amend the Judgment ............................................5

        B.  This Court Should Vacate Its Judgment on Liability and Grant a New Trial on All
            Issues in Plaintiff's Equal Pay Act Claim Against Drexel ...............................6

            1.  Entering Judgment Is an Extreme Sanction of Last Resort ......................6

            2.  This Court Failed to Hold a Hearing or Weigh the *Poulis* Factors .........7

            3.  Plaintiff Failed to Prove Any of the *Poulis* Factors ...............................9

                a.  There Is No Evidence That Drexel Was Personally Responsible for Violating
                    the Court's Order .....................................................................9

                b.  There Is No Evidence That Plaintiff Suffered Any Prejudice...................9

                c.  There Is No Evidence That Drexel Has a History of Dilatoriness.................10

                d.  There Is No Evidence That Drexel or Its Counsel Acted Willfully or in Bad
                    Faith .......................................................................................10

                e.  Lesser Sanctions Existed..............................................................11

                f.  Drexel Had Meritorious Defenses .................................................12

            4.  The Entry of Judgment Violated Drexel's Due Process Rights .............16

5.   The Entry of Judgment Violated Drexel's Right to a Jury Trial ............................17

C.   This Court Should Vacate the Jury's Finding of Willfulness and Grant Drexel
     Judgment as a Matter of Law on That Issue ................................................................18

D.   This Court Should Grant a New Trial on All Issues Because the Court Admitted
     Irrelevant and Highly Prejudicial Evidence of Discovery Disputes ...........................20

E.   This Court Should Grant a New Trial on All Issues Because the Court Erred by
     Precluding Evidence of Salaries of Other Female Professors ....................................21

F.   The Court Should Grant a New Trial Because the Court Erred by Requiring the Jury
     to Resume That There Was at Least One Male Comparator.........................................22

V.   CONCLUSION............................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Min & Kim, Incorporated*, 919 F.3d 361 (6th Cir. 2019) ................................................. 14

*Adams v. Trs. of the N.J. Brewery Employees' Pension Tr. Fund*,
    29 F.3d 863 (3d Cir. 1994) ................................................................................................. 6

*Adams v. U.S.*, 350 F.3d 1216 (Fed. Cir. 2003) ................................................................. 18

*Agere Sys., Inc. v. Atmel Corp.*, 2005 WL 2994702 (E.D. Pa. Aug. 17, 2005) ............................... 4

*Ali v. Sims*, 788 F.2d 954, 957-58 (3d Cir. 1986 ................................................................. 6, 7

*Allied Chemical Corp. v. Daiflon*, Inc., 449 U.S. 33 (1980) ................................................. 5

*Am. Bearing Co. v. Litton Indus., Inc.*, 729 F.2d 943 (3d Cir. 1984) ............................... 5

*Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600 (E.D. Pa. 1989) ........................... 5

*Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454 (M.D. Pa. 2016) ............................... 5

*Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292 (3d Cir. 2004) ................................. 17

*Briscoe v. Klaus*, 538 F.3d 252 (3d Cir. 2008) ................................................................. 7, 10

*Butler Bros. v. McColgan*, 315 U.S. 501 (1942) ............................................................. 17

*Davila v. Menendez*, 717 F.3d 1179 (11th Cir. 2013) ................................................. 18

*Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73 (3d Cir. 2009) ............................... 5

*E.E.O.C. v. State of Del. Dept. of Health and Soc. Services*,
    865 F.2d 1408 (3d Cir. 1989) ............................................................................................. 20

*Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016) ......................................... 18

*Gagliardo v. Connaught-Laboratories, Inc.*, 311 F.3d 565 (3d Cir. 2002) ....................... 4

*Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 134 (3d Cir. 2019) ........................... 10, 11, 12

*In re MacMeekin*, 722 F.2d 32 (3d Cir. 1983) ................................................................. 11

*Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350 (3d Cir. 1990) ................................... 16

*Keeley v. Loomis Fargo & Co.,* 183 F.3d 257 (3rd Cir.1999) .................................................. 14, 15

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ............................................................ 17

*Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477 (E.D. Pa. 1992) ....................................... 5

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ............................................................ 18

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) ...................... 6

*Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) ................................. *passim*

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ............................................ 4

*Rudy v. City of Lowell*, 777 F. Supp. 2d 255 (D. Mass. 2011) ..................................................... 15

*Saunders v. Shaw*, 244 U.S. 317 (1917) .................................................................................. 17

*Souryavong v. Lackawanna Cty.*, No.: 15-3895 (3d Cir. Sept. 20, 2017) ................................... 18

*Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122 (3d Cir. 1985) ...................................... 16

*White v. New Hampshire Dept. of Employment Security*, 455 U. S. 445 (1982) ........................... 6

**Statutes**

28 U.S.C. § 1927 ....................................................................................................................... 15

29 U.S.C. § 216 .................................................................................................................... 26, 27

29 U.S.C. § 255(a) .................................................................................................................... 22

**Other Authorities**

Model Civ. Jury Instr. 3rd Cir. 11.3.3 (2024) ......................................................................... 20

U.S. Const. amend. VII ............................................................................................................ 17

**Rules**

Fed.R.Civ.P. 16 ......................................................................................................................... 15

Fed.R.Civ.P. 37 ......................................................................................................................... 15

Fed.R.Civ.P. 38 ......................................................................................................................... 18

FED.R.CIV.P. 39.............................................................................................................. 17

FED.R.EVID. 401 ............................................................................................................ 22

FED.R.CIV.P. 50.......................................................................................................... 1,3,5

FED.R.CIV.P. 59.......................................................................................................... 1, 5

FED. R.CIV.P. 61 ............................................................................................................. 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARILYN GAYE PIETY FOLEY, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 2:22-cv-01777-WB |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DREXEL UNIVERSITY and ROGER KURTZ, | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT DREXEL UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR POST-TRIAL RELIEF**

## I.   INTRODUCTION

In accordance with Federal Rules of Civil Procedure 50(b), 50(c), 59(a), and 59(e), Defendant, Drexel University ("Drexel"), submits this Memorandum of Law in support of its motion for judgment as a matter of law on Plaintiff's claim of willfulness or, in the alternative, a new trial on all issues as to Plaintiff's Equal Pay Act claim against Drexel, a new trial on damages, or a vacation or reduction of the liquidated damages award on account of Drexel's supposed lack of good faith.[1] Specifically, Drexel moves as follows:

A.    That the Court vacate the judgment on liability entered in Plaintiff's favor and grant a new trial on all issues, where the Court's imposition of liability against Drexel on the Equal Pay Act is unsupported by evidence and erroneous. Among other things, the Court failed to hold an evidentiary hearing, failed to properly weigh the *Poulis* factors, and failed to articulate on the record the bases for the drastic sanction against Drexel. Additionally, the Court failed to give Drexel any notice or meaningful opportunity to be heard in violation of Drexel's Due Process rights and deprived Drexel of its guaranteed right to a jury trial.  The Court also prevented Drexel

---

[1] The judgment was entered only against Drexel. Prior to trial, summary judgment was granted in favor of Roger Kurtz. The instant motion is therefore filed on behalf of Drexel only.

from presenting affirmative defenses such as that its conduct was in good faith and that Drexel had reasonable grounds for believing that its conduct was not a violation of the Equal Pay Act such that no or a lesser amount of liquidated damages should have been imposed.

B.      That the Court vacate the jury's finding of willfulness and enter judgment in Drexel's favor as a matter of law as to willfulness, or, in the alternative, grant a new trial as to willfulness, because the jury's finding was not supported by requisite evidence and the jury's decision was tainted by the false narrative that Drexel had been found to have violated the Equal Pay Act on the merits, rather than as a sanction, as well as by Plaintiff's arguments regarding Drexel's irrelevant discovery conduct.

C.      That the Court grant Drexel a new trial, where this Court erred in admitting irrelevant evidence related to the discovery dispute between the parties and in allowing Plaintiff to present a false, one-sided narrative suggesting that Drexel "hid" documents during discovery and prior to trial, while simultaneously precluding Drexel from presenting evidence refuting such claims.

D.      That the Court grant Drexel a new trial, where this Court erred in precluding Drexel from presenting evidence of the salaries of other female professors, many of whom were paid more than Plaintiff, and where such evidence was directly relevant to the jury's determination of willfulness and damages.

E.      That the Court grant Drexel a new trial, where this Court erred in requiring the jury to find at least one comparator in circumstances where there was no true comparator and the Court's ruling deprived Drexel of its ability to fully and fairly contest Plaintiff's damages and willfulness claims.

2

## II.    PROCEDURAL HISTORY

Plaintiff initially filed claims based on Title VII, Title IX, the PHRA, breach of contract, and the Equal Pay Act ("EPA"). After the Court granted Drexel partial summary judgment, the only claim remaining at the time of trial was Plaintiff's EPA claim. (ECF 170, 171.)

Before trial, Drexel filed a Motion *in Limine* to preclude Plaintiff from referencing documents concerning the pretrial discovery process (ECF 195). The Court granted Drexel's Motion with respect to the pretrial/discovery documents listed on Plaintiff's Pretrial Memorandum ("previously-filed briefs, responses, memoranda of law, and/or judicial Orders"). (ECF 217 ¶ 4.)

On September 23, 2024, this Court entered judgment on liability against Drexel (ECF 220). The only remaining issues to be tried were: (i) whether Drexel's violation of the EPA was willful; and (ii) the appropriate amount of damages, if any.

The matter proceeded to a jury trial from January 27 to 29, 2025. (*See* ECF 248, 249, 251.) On January 29, 2025, the jury returned its verdict. (ECF 252.) The Court ordered entry of judgment in favor of Plaintiff and against Drexel in the amount of $354,993.42 on January 31, 2025. (ECF 261.)

## III.    FACTS

Plaintiff Marilyn Gaye Piety Foley ("Plaintiff") is a tenured faculty member at Drexel who achieved the status of full Professor in the Philosophy Program, housed in the Department of English and Philosophy. Plaintiff claimed that she is paid less than certain male employees in her Department despite performing the same or substantially the same work.

While Drexel denied the claims, this Court entered judgment on liability prior to trial and did not allow Drexel to present evidence to rebut Plaintiff's EPA claims on the merits by

establishing that the higher salaries of certain male employees in the Department were based on, but not limited to, longevity at Drexel, areas of academic specialization, and leadership/administrative roles held.

In addition, at trial, the Court permitted Plaintiff's counsel to introduce evidence of Drexel's conduct during discovery, under the guise of establishing Drexel's willfulness and lack of good faith. Drexel opposed Plaintiff's ability to present this evidence but the Court overruled Drexel's objections. As a result, Plaintiff was permitted to present a one-sided narrative about events that occurred during discovery, painting Drexel as a party that hid certain documents, while Drexel was prevented from rebutting this narrative with evidence and testimony of its own.

## IV.    ARGUMENT

### A.    Standard of Review.

#### 1.    *Rule 50(b) - Renewed Motion for Judgment as a Matter of Law.*

Upon a renewed motion for judgment as a matter of law, the Federal Rules of Civil Procedure permit the court to: "(A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law." FED.R.CIV.P. 50(b)(1). The Court should grant judgment as a matter of law if, after viewing the evidence in the light most favorable to the non-movant, there is insufficient evidence from which a jury could reasonably find liability. *Gagliardo v. Connaught-Laboratories, Inc.*, 311 F.3d 565, 568 (3d Cir. 2002). The standard of review for judgment as a matter of law is the same standard used to decide motions for summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). "In conducting its review of the evidence, a court may not make credibility determinations, weigh the evidence, or develop its own version of the facts, as these functions are within the province of the jury and not the judge." *Agere*

*Sys., Inc. v. Atmel Corp.*, No. 02-CV-864, 2005 WL 2994702 at *14 (E.D. Pa. Aug. 17, 2005) (citing *Reeves*, 530 U.S. at 150).

>    2.    *Rule 59(a) - New Trial.*

In the alternative, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED.R. CIV.P. 59(a)(1)(A). A district court "may grant a new trial if required to prevent injustice or to correct a verdict that was against the weight of the evidence." *Am. Bearing Co. v. Litton Indus., Inc*., 729 F.2d 943, 948 (3d Cir. 1984). *See also Maylie v. Nat'l R.R. Passenger Corp*., 791 F. Supp. 477, 480 (E.D. Pa. 1992), *aff'd* 983 F.2d 1051 (3d Cir. 1992) (citations omitted) (listing reasons, including significant error of law, to the prejudice of the moving party and verdict itself or size of verdict is against weight of evidence).

The decision to grant a new trial is left to the sound discretion of the trial judge. *Allied Chemical Corp. v. Daiflon*, Inc., 449 U.S. 33, 36 (1980). When the basis for the motion is an alleged error on the part of the court, such as an error in jury instructions or evidentiary rulings, a district court must first determine whether an error was made, *i.e*., "whether, taken as a whole, the instruction properly apprised the jury of the issues and the applicable law." *Donlin v. Philips Lighting N. Am. Corp*., 581 F.3d 73, 78 (3d Cir. 2009). If there was an error, the court must then determine "whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa. 1989) (quoting FED.R.CIV.P. 61).

>    3.    *Rule 59(e) - Alter or Amend the Judgment.*

"Under Rule 59(e), a party may seek alteration or amendment of the verdict." *Borrell v. Bloomsburg Univ*., 207 F. Supp. 3d 454, 471 (M.D. Pa. 2016).  This Rule is the vehicle to obtain

correction of a district court's errant rulings through the court's "reconsideration of matters properly encompassed in a decision on the merits." *White v. New Hampshire Dept. of Employment Security*, 455 U. S. 445, 450 (1982).

As set forth more fully below, Drexel is entitled to judgment as a matter of law as to willfulness, a new trial as to all issues in Plaintiff's EPA claim against Drexel, or a new trial on damages, and/or a reduction of the liquidated damages award.

### B.     This Court Should Vacate Its Judgment on Liability and Grant a New Trial on All Issues in Plaintiff's Equal Pay Act Claim Against Drexel.

This Court should vacate its September 23, 2024 judgment on liability against Drexel and grant a new trial on all issues in Plaintiff's EPA claim against Drexel for the following compelling reasons: (1) this Court failed to hold an evidentiary hearing, properly weigh the *Poulis* factors, or articulate on the record the drastic sanction against Drexel; (2) Plaintiff did not prove, nor could she, any of the factors necessary to enter judgment against Drexel; (3) Drexel was not given any notice or an adequate opportunity to be heard before judgment was entered, in violation of Drexel's Due Process rights; and (4) the entry of judgment deprived Drexel of its day in court and, thus, violated its right to a jury trial.

#### 1.     Entering Judgment Is an Extreme Sanction of Last Resort.

The Third Circuit has repeatedly held that "dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court, and are to be reserved for comparable cases." *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Thus, there is a "strong presumption against sanctions that decide the issues of a case," *Ali v. Sims*, 788 F.2d 954, 958 (3d Cir. 1986), and the entry of judgment "must be a sanction of last, not first, resort." *Adams v. Trs. of the N.J. Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 867 (3d Cir. 1994). If the

6

decision to enter judgment is close, "doubts should be resolved in favor of reaching a decision on the merits." *Id.* at 870 (quotation omitted).

To "assure that the extreme sanction of dismissal or default is reserved for the instances in which it is justly merited," district courts must weigh the following factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868, 870.

Here, this Court failed to hold an evidentiary hearing necessary to properly weigh the *Poulis* factors and state its reasoning, on the record, why the drastic sanction of a judgment was warranted.

> 2. *This Court Failed to Hold a Hearing or Weigh the* Poulis *Factors.*

To properly weigh the *Poulis* factors, "it is imperative that the District Court have a full understanding of the surrounding facts and circumstances . . . before it undertakes its analysis." *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008) (citing cases). District Courts are thus required to engage in "a *Poulis* balance and an on-the-record articulation of the basis for the sanctions." *Ali v. Sims*, 788 F.2d 954, 957-58 (3d Cir. 1986). Indeed, in reviewing for abuse of discretion, the Third Circuit is "guided by the manner in which the trial court balanced the" *Poulis* factors "and whether the record supports its findings." *Poulis*, 747 F.2d at 868.

Here, this Court did not hold an evidentiary hearing or articulate a basis on-the-record for entering judgment against Drexel. Rather, on the morning of September 23, 2024—originally scheduled as the first day of trial—Plaintiff's counsel emailed this Court about being "denied" access to W-2s that had already been produced. Neither Drexel nor its counsel were aware of the

email. Nevertheless, in the span of 14 minutes, this Court addressed the discovery issue, made credibility determinations, and entered judgment against Drexel on liability.

Without conducting an evidentiary hearing, this Court could not, and did not, balance any of the *Poulis* factors or articulate the reasons supporting the drastic sanction on the record.

This Court thus did not determine whether the first *Poulis* factor was met: the extent of Drexel's responsibility. Upon being informed that Drexel's corporate representative (who appeared for trial) could not testify about the discovery issue, this Court stated, "Well, I don't care. I don't care because you [Drexel's counsel] have disobeyed an order and you have not provided me a reason." (N.T. 9/23/24, 9:2-4.)

This Court also did not determine whether Plaintiff was prejudiced, or whether Drexel has a history of dilatoriness, the second and third *Poulis* factors.

And although this Court made credibility determinations about Drexel's counsel, this Court still did not determine whether Drexel's counsel (or Drexel) acted willfully or in bad faith, the fourth *Poulis* factor.

Lastly, this Court did not determine whether any other sanction would be effective, or whether Drexel's defenses had any merit, the fifth and sixth *Poulis* factors. *See Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 136 (3d Cir. 2019) ("district court must consider alternative sanctions before dismissing a case with prejudice"); *see also id.* at 137 (district court "required to examine whether . . . claim had merit"). Instead, this Court asked Plaintiff's counsel to propose a sanction, which this Court promptly granted. (N.T. 9/23/24, 9:9-19.)

Thus, for these reasons alone, this Court should vacate its judgment against Drexel and grant a new trial on all issues.

3.    *Plaintiff Failed to Prove Any of the* Poulis *Factors.*

Even if this Court held an evidentiary hearing to properly weigh the *Poulis* factors and articulate the reasoning for its sanction on the record, Plaintiff could not, and indeed did not, *prove* any of the *Poulis* factors.

a.    There Is No Evidence That Drexel Was Personally Responsible for Violating the Court's Order.

Plaintiff failed to adduce any evidence that Drexel itself was responsible for supposedly violating this Court's order. Plaintiff did not establish who, on behalf of Drexel, did what, when, how, or why. Plaintiff failed to adduce evidence that someone at Drexel even viewed the order or knew of this Court's instructions.

Rather, the record evidence is that on Friday, September 20, 2024 at 3:08 p.m., this Court docketed its order requiring Drexel to provide Plaintiff and her counsel "access" to W-2s, and Drexel produced 95 pages of W-2s the following Saturday morning. (N.T. 9/23/24, 3:19-23; 6:1-2.) To protect its employees' personal information, the W-2s contained redacted Social Security numbers and addresses, which had no relevance to the EPA claim scheduled for trial. Indeed, Plaintiff never raised any issue concerning the accuracy of the produced W-2s.

Because there is "no suggestion by any party or by the district court that" Drexel is "personally responsible," Plaintiff failed to establish the first *Poulis* factor. *Poulis*, 747 F.2d at 868.

b.    There Is No Evidence That Plaintiff Suffered Any Prejudice.

Plaintiff also failed to establish how she was prejudiced in any fashion.

Simply put, *Plaintiff received, prior to trial, the documents she sought.* There was no "irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party," nor was Plaintiff's "ability to prepare effectively" for trial impaired. *Briscoe v. Klaus*, 538 F.3d 252, 259-60 (3d Cir.

2008). And had Plaintiff or her counsel been given direct "access" to Drexel's payroll information, the only different information they would have seen would have been employee Social Security numbers and addresses, which are not probative of anything.

Thus, the absence of this "substantial" factor militates against the Court's extreme sanction. *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 134 (3d Cir. 2019).

c.     <u>There Is No Evidence That Drexel Has a History of Dilatoriness.</u>

Similarly, Plaintiff failed to adduce any evidence that Drexel has a history of being dilatory.

On the contrary, the Court's entry of judgment against Drexel was the first, and only, sanction it received. Previously, Drexel was never compelled to produce comparator employees' W-2s and, in fact, defeated several motions filed by Plaintiff to compel additional payroll documents during discovery (ECF 86, 92, 99), except to allow one additional deposition focused solely on English faculty salaries. (ECF 88, 96, 104.)

Thus, this case is far from being "characterized by a consistent delay by [defendant's] counsel," *Poulis*, 747 F.2d at 868, and not even "conduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness." *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008) (citing cases) (quotations omitted). As such, Plaintiff failed to establish this factor.

d.     <u>There Is No Evidence That Drexel or Its Counsel Acted Willfully or in Bad Faith.</u>

Additionally, Plaintiff failed to adduce evidence that Drexel or its counsel acted in "flagrant bad faith" or with "intentional or self-serving behavior," like "failing to answer interrogatories for nearly a year and a half" or "making false promises to correct delays." *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 135 (3d Cir. 2019) (citing cases) (quotations omitted).

Again, the only record evidence is that Drexel and its counsel acted in *good* faith, producing, in less than 24 hours, 95 pages of W-2s to Plaintiff prior to trial. The fact that

10

employees' personal information was protected by redacting their Social Security numbers and addresses from the W-2s is not evidence of "flagrant bad faith" and, at the very most, is only "negligent behavior." *Id.* at 135 (citation omitted). *See also In re MacMeekin,* 722 F.2d 32, 35 (3d Cir. 1983) (counsel's "inexcusable neglect" and "conscious failure to comply" with discovery insufficient to justify dismissal of action).

Not only that, but Plaintiff's counsel previously refused, unjustifiably, the very direct access to payroll information that this Court sanctioned Drexel for not providing. (N.T. 9/23/24, pp. 9-10.)

"Because the harsh sanction of dismissal should serve to deter bad faith or self-serving behavior, and because of our policy of favoring decisions on the merits, the fact that the delay was not effectuated willfully or in bad faith should weigh against dismissal." *Hildebrand*, 923 F.3d at 136.

e.    Lesser Sanctions Existed.

Instead of deliberating lesser sanctions, this Court leapfrogged to the most drastic sanction of all. But "a district court must consider alternative sanctions before" entering judgment, *id.*, and "[a]lternatives are particularly appropriate when the [defendant] has not personally contributed to the delinquency," like here. *Poulis*, 747 F.2d at 866 (citation omitted).

Here, this Court could have given Plaintiff another opportunity to directly access the W-2s (even though she already had copies of them). Indeed, in the same order entering judgment against Drexel, this Court gave Plaintiff another 30 days to complete "additional discovery," during which access could have been given (and was given, on two separate occasions).

Further, even where a pattern of dilatory conduct exists, "[t]he most direct and therefore preferable sanction . . . would be to impose the excess costs caused by such conduct directly upon

11

the attorney, with an order that such costs are not to be passed on to the client, directly or indirectly." *Id.* Indeed, "the district court is specifically authorized to impose on an attorney those expenses, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders." *Id.* at 869 (citing FED.R.CIV.P. 16(f), 37(a)(4), 37(b), 37(d), 37(g) and 28 U.S.C. § 1927).

Thus, at the most, this Court also could have awarded reasonable attorneys' fees and costs to Plaintiff for any perceived delay.

As a result, for these reasons, Plaintiff failed to fulfill this factor, too.

### f.    Drexel Had Meritorious Defenses.

Lastly, this Court did not consider Drexel's defenses whatsoever. *See Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 870 (3d Cir. 1984) ("existence of a prima facie defense is a factor to be weighed along with the" other factors).

Drexel only had to make a "moderate" showing that its defenses would be meritorious, or, "if established at trial, would . . . constitute a complete defense." *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 137 (3d Cir. 2019). Drexel was prepared to do so at trial, based on: (1) Plaintiff's inability to establish her *prima facie* case that she performed equal, or substantially equal, work compared to male employees with whom she sought to compare herself; and (2) that any differences in salaries were based on factors other than Plaintiff's sex, including whether the comparator employees held administrative leadership positions at Drexel, their longevity at Drexel, whether they had areas of academic specialization in high demand at Drexel, whether they had competing job offers, and whether they had prior tenure-line experience, among other reasons.

Pursuant to 29 U.S.C. § 216, an employer found in violation of the EPA shall be liable for the underpayment and "in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

However, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that it had reasonable grounds for believing that its act or omission was not a violation of the law, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216(b)]." 29 U.S.C. § 260. Because, in this case, there is ample evidence in the record establishing Drexel's good faith, this Court should either grant Drexel a new trial or, in the alternative, alter or amend the judgment to eliminate or at least reduce the liquidated damages award.

At all times, Drexel operated in good faith with its belief that it was not violating any federal statute, including the EPA. Evidence that weighs in favor of good faith includes the fact that:

• Drexel has multiple policies prohibiting discrimination based on gender. (Joint Exhibits 61 and 62.)

• Drexel has a Human Resources Compensation team, which is involved in every hire and every promotion, among other pay-related instances. As Keyanah Jones testified, the Human Resources Compensation Team ensures fairness and equity in salaries across the University by, among other things, using market tools from "CUPA" (the College and University Professional Association for Human Resources) to set salaries and ensure Drexel is competitive in the external market and also fair and equitable internally. (N.T. 1/27/25, at pp. 117-18.) That Drexel has a centralized system in place for reviewing and analyzing salaries reflects its good faith in trying to comply with the law.

• Drexel uses a number of factors when setting salaries, including whether a faculty member holds, or has held, an administrative leadership position; longevity at Drexel; whether

the faculty member had prior university or tenure-line experience; and whether the faculty member has academic specialization in high demand at a science, engineering, and technology-heavy university like Drexel. (N.T. 1/27/25, at pp. 204-05.)

• Both men and women received the same percentage increases for promotions and tenure. Plaintiff received the same percentage increases as others. Plaintiff also testified that in the years she did not receive a merit increase, that lack of increase applied across the board to both men and women. (N.T. 1/27/25, p. 178.)

• Some women in the Department earned more than Plaintiff. Some men in the Department earned less than Plaintiff. (N.T. 1/27/25, pp. 207-08.)

• Dr. Kurtz testified that his higher salary is also compensation for his Department Head role, beyond just his administrative stipend. (N.T. 1/27/25, pp. 164-65.)

• When Dr. Kurtz began his role as Department Head in 2017, he became aware of the varying salaries in the Department and sought to understand the differences. Dr. Kurtz ultimately concluded that there were sound and reasonable reasons for the salary differences in the Department. (N.T. 1/27/25, pp. 189-90.)

As the above evidence established, Drexel hired experienced professionals to ensure it complied with all relevant laws. As the Sixth Circuit noted, "[b]y affirmatively seeking to understand the Act's requirements and consulting with and relying on an accountant about the guaranteed wage, as well as the minimum wage and overtime laws, [the employer] acted in good faith and had reasonable grounds for believing they were in compliance with the Act." *Acosta v. Min & Kim, Incorporated*, 919 F.3d 361, 367 (6th Cir. 2019). Consistent with this approach, the Third Circuit has explained that good faith is lacking where the defendant has failed to investigate potential liability or "inquire about the law's requirements." *Keeley v. Loomis Fargo & Co.,* 183

F.3d 257, 270 (3rd Cir.1999). *Keeley* begs the question of what should prompt an employer acting in good faith to investigate potential liability. That question is particularly apt here because there was no record evidence that Plaintiff complained or raised any issue or request for information prior to filing this action that would have given Drexel reasonable cause to investigate any alleged pay disparity.

The lack of any such pre-suit complaint or request for information mitigates against a finding that the employer did not act in good faith. In *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 262 (D. Mass. 2011), for example, the court found that an employer acted in good faith even though "the [employer] made no inquiry into whether its payment practices were in compliance with the FLSA before the complaint was filed," where the complaint "constituted the first written assertion that the [employer's] regular rate calculation violated the FLSA" and "the [employer] had collectively bargained in good faith with the union for a regular rate of pay."[2] *Id.*

Given this state of the record, it is clear that the evidence supported the conclusion that Drexel acted with good faith in setting Plaintiff's salary. Yet even if this Court disagrees, by imposing liability on Drexel, Drexel was deprived of the ability to fully challenge the claim for liquidated damages and put on evidence of good faith.

Drexel was precluded from putting on these defenses. This final factor thus militates against entering judgment. Consequently, the Court should grant a new trial or, at the very least, vacate or dramatically reduce any liquidated damages award.

---

[2] Drexel is not arguing that an employer never has to make inquiry into whether its practices are in compliance with the EPA. In *Rudy*, the absence of inquiry in the form of consulting with counsel was excused because the law in the First Circuit at that time was so unsettled that it was doubtful that even experienced counsel would have been able to correctly predict how the First Circuit would interpret the FLSA. But Drexel took substantial steps to conform its practices to the EPA, and had not received any complaint or inquiry from Plaintiff prior to her filing this action that would have prompted a reasonable employer to investigate further.

Drexel was precluded from putting on these defenses. This final factor thus militates against entering judgment.

4.    *The Entry of Judgment Violated Drexel's Due Process Rights.*

This Court also entered judgment against Drexel in violation of its essential procedural Due Process Rights: notice and an opportunity to be heard. *Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 127 (3d Cir. 1985).

It is undisputed that neither Drexel nor its counsel received *any* notice that this Court would be even entertaining a sanction, let alone the extreme sanction of a judgment. But a "particularized notice of the grounds for the sanction under consideration" is required. *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990). Plaintiff did not file a motion seeking sanctions, and even the email sent by Plaintiff's counsel to this Court the morning of September 23, 2024 did not contain such a request. Nor did Plaintiff's counsel even hint at it in any of the correspondence with Drexel's counsel leading up to September 23. Rather, it was during the 14-minute discussion with the Court that Plaintiff's counsel, for the first time, sought that judgment be entered in Plaintiff's favor.

Nowhere along this continuum could Drexel have known or anticipated that each and every decision it was making, as a litigant, at trial, would be fair game in the context of the EPA action. Indeed, Plaintiff was never required to amend her complaint to specify the particular conduct she believed constituted a violation of the EPA and, thus, Drexel was unaware, until it received the trial court's decision, what "evidence" about its trial conduct the Court believed justified the sanction. Given the fact that the case was in the midst of trial, Drexel also was deprived of an opportunity to properly defend itself and/or provide expert testimony that its decision-making was

reasonable. These practical concerns further illustrate why conduct undertaken during the course of litigation simply cannot be considered as evidence of liability of an underlying claim.

Because Drexel was not provided sufficient notice, it was also not given an adequate opportunity to be heard. The U.S. Supreme Court has consistently afforded litigants full opportunities to present evidence before a court. *See, e.g.*, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982); *Butler Bros. v. McColgan*, 315 U.S. 501, 510 (1942) ("Appellant had a full opportunity to be heard on the issues . . .."); *Saunders v. Shaw*, 244 U.S. 317, 319 (1917). Here, this Court did not even hold an evidentiary hearing, and Drexel was not placed in the position to ready witnesses or marshal the evidence needed to thwart the drastic sanction of a judgment.

As a result, this Court should vacate its judgment and grant a new trial on all issues for this compelling reason, too.

>    5.    *The Entry of Judgment Violated Drexel's Right to a Jury Trial.*

Lastly, by failing to properly weigh the *Poulis* factors and entering judgment against Drexel, this Court also violated Drexel's fundamental right to a jury trial. *See* U.S. CONST. AMEND. VII; *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004) ("right to a jury trial is a fundamental right that is expressly protected by the Seventh Amendment to the United States Constitution").

Here, Drexel demanded a jury trial in its Answer to Plaintiff's Complaint. (ECF 85.) Thus, Drexel properly demanded its near inviolate right to a jury trial under Federal Rules of Civil Procedure 38 and 39. But by failing to properly weigh the *Poulis* factors as discussed above, this Court deprived Drexel of its fundamental right.

For this final reason, this Court should vacate its judgment on liability against Drexel and award a new trial on all issues.

C.    **This Court Should Vacate the Jury's Finding of Willfulness and Grant Drexel Judgment as a Matter of Law on That Issue.**

This Court should vacate the jury's finding on the issue of willfulness because Plaintiff failed to adduce sufficient evidence to support a finding in Plaintiff's favor.[3]

The burden to establish willfulness is on Plaintiff. *Adams v. U.S.*, 350 F.3d 1216, 1229 (Fed. Cir. 2003) ("Unlike good faith, the employee bears the burden of proving the willfulness of the employer's FLSA violations" (citation omitted)). The U.S. Supreme Court made clear that "Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

In *McLaughlin*, the Supreme Court held that a plaintiff must adduce evidence that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute, that acting only "unreasonably" is insufficient, and that some degree of actual awareness is necessary. *Id.* at 135. *See Flores v. City of San Gabriel*, 824 F.3d 890, 896, 905-07 (9th Cir. 2016) (willful FLSA violations require a more specific awareness of the legal issue); *Souryavong v. Lackawanna Cty.*, No.: 15-3895 (3d Cir. Sept. 20, 2017) (must be evidence that employer, at time of violation, either knew its conduct was prohibited or acted with reckless disregard towards violation; this is true even if employer produces insufficient evidence of good faith).

In this case, Plaintiff failed to adduce sufficient evidence of Drexel's pre-violation awareness of any EPA issues. Simply stated, there is no evidence that Drexel was aware of any EPA issues prior to the lawsuit and turned a blind eye to its legal obligations. *See, e.g.*, *Davila v. Menendez*, 717 F.3d 1179, 1182-83, 1185 (11th Cir. 2013) (finding willfulness where family failed

---

[3] Drexel made a Rule 50(a) motion for judgment as a matter of law on the willfulness issue when Plaintiff rested her case.  (N.T. 1/28/25, 44:8-50:22)

to pay nanny minimum wage, and family knew minimum wage was required and instructed nanny to lie about her employment).

Plaintiff's argument—that *Drexel's evidence* was not supported by documents or based on "guesswork"—does not change this conclusion. (N.T. 1/28/25, p. 45). This argument ignores that it is *Plaintiff's* burden *to prove* willfulness, not Drexel's obligation to *disprove* it. Plaintiff's reliance on Exhibit 90, which Plaintiff claimed showed "massive pay discrepancies," and which Plaintiff claimed "the jury will actually take . . . and say this is willfulness," (*id.*), is similarly misplaced; willfulness requires more than proof of pay discrepancies. Nothing on the chart Plaintiff referenced established that Drexel *knew* about EPA requirements and consciously chose to violate them.

Plaintiff's reliance on Drexel's conduct during discovery as a means to demonstrate Drexel's willfulness in failing to comply with the EPA (N.T. 1/28/25, at 26), is equally unavailing. While Plaintiff argued that Drexel prevented Plaintiff from obtaining pay data information, a point that Drexel continues to vigorously dispute, any dispute over discovery is irrelevant to whether, in deciding Plaintiff's salary years earlier, Drexel consciously and knowingly violated the EPA.

Finally, the jury's verdict on willfulness must be vacated because it was hopelessly tainted by Plaintiff's false narrative (presented both in argument and through questioning, N.T. 1/28/25, at pp. 8-9), that Drexel had been *found*, on the merits of Plaintiff's claim, of violating the EPA when, of course, liability was imposed as a sanction. The creation of this fiction undoubtedly led the jury to believe that Drexel had not only violated the Act but done so willfully. Yet, as Drexel previously explained, evidence about Drexel's discovery conduct is wholly irrelevant to whether Drexel—in setting Plaintiff's salary twenty years ago—willfully violated the EPA. Because

Plaintiff's statements and questioning misled the jury as to the gravity of Drexel's conduct, the verdict on willfulness must be vacated.

> **D.    This Court Should Grant a New Trial on All Issues Because the Court Admitted Irrelevant and Highly Prejudicial Evidence of Discovery Disputes.**

This Court should also vacate the verdict and grant a new trial on all issues due to the Court's admission, over Drexel's vehement objections, of evidence concerning discovery disputes. The discovery disputes admitted by the Court involved (i) Drexel's production (or purported "delayed" production) of pay information during discovery, and (ii) the Court's Order regarding employee W-2s.

At trial, Plaintiff was permitted to introduce evidence of discovery disputes in an attempt to establish that Drexel willfully violated the EPA. *See* 29 U.S.C. § 255(a) (extending recovery of damages from two to three years if defendant's violation willful). This is a clear abuse of discretion. A defendant acts willfully under the Act only if the defendant "knew or showed reckless disregard for whether its conduct violated the act." *E.E.O.C. v. State of Del. Dept. of Health and Soc. Services*, 865 F.2d 1408, 1418 (3d Cir. 1989) (citation omitted). Indeed, the Third Circuit's Model Civil Jury Instructions state that a plaintiff must prove that a defendant "knew or showed reckless disregard for whether plaintiff's underpayment was prohibited by the law." MODEL CIV. JURY INSTR. 3RD CIR. 11.3.3 (2024).

Thus, Drexel's conduct during discovery – including whether Drexel produced certain documents and when and how documents were produced – has no bearing on whether Drexel knew or showed reckless disregard for *underpaying* Plaintiff. FED.R.EVID. 401 (evidence relevant if "has any tendency to make a fact more or less probable than it would be without the evidence" and "fact is of consequence in determining the action"). Similarly, whether Drexel violated a discovery order on the eve of trial – years after suit was filed and years after Plaintiff's salary was set – has no

20

relevance to the alleged underpayment of Plaintiff. A discovery violation, even if true, does not violate the EPA or evidence an EPA violation.

Because this Court allowed evidence of discovery disputes, Plaintiff's counsel was able to run wild at trial, examining his very first witnesses—two Drexel employees—at length about how they responded to the Court's Order regarding employee W-2s. (N.T. 1/27/25, pp. 122-159.) Throughout the trial, Plaintiff's counsel referenced Drexel's purported "delay" and "concealment" of documents during discovery. (*See, e.g.*, N.T. 1/27/25, 108:12-109:12, 110:2-13, 140:5-18, and N.T. 1/28/25 13:10-38:21, 39:7-21, and 185:17-189:13.) Then, at closing, Plaintiff argued that Drexel engaged in "concealment" and "hiding" that "is clear evidence of willfulness, clear evidence of knowledge of illegality that Drexel tried to hide." (N.T. 1/28/25, p. 189.) Plaintiff thus took discovery disputes and claimed spoliation before the jury.

Therefore, for these reasons as well, this Court should vacate its judgment and grant a new trial on all issues.

### E.    This Court Should Grant a New Trial on All Issues Because the Court Erred by Precluding Evidence of Salaries of Other Female Professors.

This Court should also vacate the verdict and grant a new trial on all issues to remedy the Court's error in precluding Drexel from submitting evidence about salaries of other female professors in connection with Plaintiff's claims of damages and willfulness.

The Court's preclusion of this evidence deprived Drexel of its ability to have the jury fully and fairly determine both Plaintiff's entitlement to damages as well as Plaintiff's willfulness claim. Drexel argued that it should have been permitted, notwithstanding the earlier liability determination, to introduce evidence establishing those other female professors earned more than Plaintiff to allow the jury to properly assess willfulness and damages. This evidence, accompanied by the reasons underlying the differences in roles and responsibilities, would have allowed Drexel

to explain the discrepancies in salaries. However, the Court's decision precluded Drexel from defending itself on this basis. Because there was no judgment as to damages imposed as a sanction, Drexel should have been free to defend itself on damages as it saw fit. The same is true of willfulness. The fact that it was prevented from doing so requires the grant of a new trial.

**F.       This Court Should Grant a New Trial Because the Court Erred by Requiring the Jury to Resume That There Was at Least One Male Comparator.**

This Court should also vacate the verdict and grant a new trial to remedy the Court's error in essentially directing the jury to presume by virtue of the Court's imposition of the liability judgment as a sanction that there was at least one valid male comparator. (*See* N.T. 1/27/25, 8:1-7) The verdict sheet and jury instructions included this language, and Drexel was required to tell the jury that they must pick at least one male comparator. This requirement prevented the jury from fully and fairly determining the issues of damages and willfulness. Drexel objected to the Court's requirement and submission of the verdict slip, but this request was denied (as was Drexel's request for reconsideration of the Court's sanction order (ECF 225 and 236)). (N.T. 1/27/25, pp. 4-5.)

There are two reasons why the Court's requirement is erroneous. First, it further misled the jury into believing what Plaintiff's counsel repeatedly suggested but which Drexel was powerless to rebut; namely, that there had been a merits-based trial, rather than judgment imposed as a sanction, in which Drexel's liability under the EPA had been established.

Second, the Court's decision to require Drexel to select a male comparator—when, as Drexel submits, *there was no male comparator*—deprived Drexel of its ability to have the jury fully and fairly determine both Plaintiff's entitlement to damages and her claim of willfulness. Drexel argued that the jury should have been permitted to decide, in the first instance, whether there were *any* comparators and to award damages or no damages as it saw fit, notwithstanding the earlier liability determination.

22

Had Drexel tried the damages portion of the case as it wished, it would have presented evidence explaining why Dr. Smith (whom Drexel was forced to identify as a comparator) received a higher salary and administrative supplement given his role as Department Head in a different department. However, because Drexel was required to select at least one comparator, it was precluded from highlighting the differences between Plaintiff and Dr. Smith to explain the discrepancy between his salary and Plaintiff's. The Court's decision also guaranteed that the jury would return a damages verdict in *some* amount.

Because there was no damages judgment imposed as a sanction, the Court's interference into the manner in which Drexel defended itself in this regard was unwarranted, erroneous, and highly prejudicial. This error, too, requires the grant of a new trial.

## V.    **CONCLUSION**

For the foregoing reasons, Defendant, Drexel University, respectfully requests that the Court grant the relief requested on each of the above grounds.

Respectfully submitted:

LAMB MCERLANE PC                                  TUCKER LAW GROUP

By: */s/ Maureen M. McBride*                     By: */s/ Leslie Miller Greenspan*
    Maureen M. McBride                            Joe H. Tucker, Jr.
    Andrew P. Stafford                            Leslie Miller Greenspan
    Attorney I.D. Nos. 57668/324459               Hillary B. Weinstein
    24 East Market Street, Box 565                Attorney I.D. Nos. 56617/91639/209533
    West Chester, PA 19381                        1800 Market Street, Suite 2500
    (610) 430-8000                                Philadelphia, PA 19103
    mmcbride@lambmcerlane.com                     jtucker@tlgattorneys.com
    astafford@lambmcerlane.com                    lgreenspan@tlgattorneys.com
                                                  hwesinstein@tlgattorneys.com

Dated: February 27, 2025

*Attorneys for Defendant, Drexel University*

23