**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARILYN GAYE PIETY FOLEY | :   CIVIL ACTION NO.: |
| | :   2:22-cv-01777-WB |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| DREXEL UNIVERSITY and | : |
| ROGER KURTZ, | : |
| | : |
| Defendants. | : |

**<u>DEFENDANT DREXEL UNIVERSITY'S OPPOSITION TO
PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS</u>**

**LAMB McERLANE PC**
Maureen M. McBride
Attorney I.D. No. 57668
24 East Market Street, Box 565
West Chester, PA 19381-0565
(610) 430-8000
mmcbride@lambmcerlane.com

**TUCKER LAW GROUP**
Joe H. Tucker, Jr.
Leslie Miller Greenspan
Hillary B. Weinstein
Attorney I.D. Nos. 56617/91639/209533
Ten Penn Center
1800 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
jtucker@tlgattorneys.com
lgreenspan@tlgattorneys.com
hwesinstein@tlgattorneys.com

Date: <u>February 28, 2025</u>

*Attorneys for Defendant, Drexel University*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

I.     Plaintiff's Petition is Untimely ......................................................................... 1

II.    Plaintiff's Petition Should be Held in Abeyance Until Post-Trial Motions Have Been
       Disposed of ..................................................................................................... 3

III.   Plaintiff's Petition Seeks Excessive and Improper Attorney's Fees................... 4

       A.   Plaintiff Seeks Attorney's Fees at an Unreasonable Hourly Rate................ 4

       B.   Plaintiff Seeks Fees for Excessive Hours .................................................. 9

            1.   Total Hours Are Excessive and Should be Reduced Drastically Due to Plaintiff's
                 Limited Success ................................................................................ 9

            2.   Hours That Do Not Relate to the EPA Claim Should be Omitted ............ 13

            3.   Hours Expended on Motion to Disqualify Should be Omitted in Full ......... 16

            4.   Hours Expended for Administrative Tasks Should be Omitted in Full......... 20

       C.   Plaintiff Cannot Seek Fees for Her Husband without an Arm's Length
            Agreement ...................................................................................... 23

       D.   Plaintiff's Petition Improperly Seeks Fees for An Attorney Hired to Defend Plaintiff's
            Counsel .......................................................................................... 26

IV.    CONCLUSION................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashley v. Atl. Richfield Co.*, 794 F.2d 128 (3d Cir. 1986) ............................................................. 24

*Bartels v. Inc. Vill. of Lloyd Harbor*,
    No. 10 CV 5076 PKC, 2015 WL 4459403 (E.D.N.Y. July 21, 2015) ........................................ 3

*Bender v. Freed*, 436 F.3d 747 (7th Cir. 2006)................................................................................ 2

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................... 5

*Bolick v. Brevard County Sheriff's Dep't*, 937 F. Supp. 1560 (M.D. Fla. 1996)......................... 17

*Cohen v. Am. Credit Bureau, Inc.*,
    No. Civ.A. 10-5112 WJM, 2012 WL 847429 (D.N.J. Mar. 13, 2012) ..................................... 25

*Dinizo v. Township of Scotch Plains*,
    Civil Action No. 07-05327(PGS), 2010 WL 2880171 (D.N.J. July 19, 2010)......................... 11

*Doe v. Schorn*, No. CV 23-3252-KSM, 2024 WL 1258654 (E.D. Pa. Mar. 25, 2024) ................. 5

*Drippe v. Tobelinski*, 604 F.3d 778 (3d Cir. 2010)......................................................................... 2

*Ford v. Long Beach Unified School Dist.,* 461 F.3d 1087 (9th Cir.2006).................................... 25

*Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939 (3d Cir. 1995).................................. 20

*Hayward v. Del. Valley High Sch.*,
    Civil Action No. 10-5383, 2011 WL 1838784 (E.D. Pa. May 13, 2011) ................................ 21

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .......................................................................... *passim*

*Holt v. Pennsylvania*,
    Civil Action No. 10-5510, 2020 WL 2098103 (E.D. Pa. May 1, 2020) .................................... 5

*Holzhauer v. Hayt, Hayt & Landau*,
    Civil Action No. 11-2336, 2012 WL 3286059 (D.N.J. Aug. 10, 2012)................................... 20

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).............................. 2

*Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992) ................................................. 4, 21

*Kooi v. Sec. of the Dep't of Health and Human Servs.,*
    2007 WL 5161800 (Ct.Fed.Cl. Nov. 21, 2007)...................................................................... 25

*Lovejoy v. Gure–Perez,* No. 10 CV 5748, 2014 WL 2459656 (E.D.N.Y. May 21, 2014) ............ 2

*Maldonado v. Houstoun*, 256 F.3d 181 (3d Cir. 2001) .......................................................... *passim*

*McGuffey v. Brink's*, 598 F. Supp. 2d 659 (E.D. Pa. 2009) ........................................................ 10

*McGuire v. Neidig,*
   Civil Action No. 14-1531, 2017 WL 1319930 (W.D. Pa. Apr. 7, 2017) ................................ 20

*McKenna v. City of Philadelphia*, 582 F.3d 447 (3d Cir. 2009) ................................................. 9

*Middlebrooks v. Teva Pharms. USA, Inc.,*
   No. 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019) ............................... 6, 11, 12

*Migliori v. Lehigh Cnty. Bd. of Elections*,
   668 F. Supp. 3d 337 (E.D. Pa. 2023) ................................................................................. 24

*Moffitt v. Tunkhannock Area Sch. Dist.*,
   Civil Action No. 3:13-1519, 2017 WL 319154 (M.D. Pa. Jan. 20, 2017) .............................. 20

*Nitkin v. Main Line Health*,
   No. CV 20-4825-KSM, 2022 WL 2651968 (E.D. Pa. July 8, 2022) ...................... 6, 10, 13, 21

*Palmyra Park Hospital, Inc. v. Phoebe Putney Memorial Hospital, Inc.*,
   688 F. Supp. 1356 (M.D. Ga. 2010) ................................................................................... 2

*Pawlak v. Greenawalt*, 713 F.2d 972 (3d Cir. 1983) ................................................................ 21

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993) ........................................ 2

*Ray v. AT&T Mobility Servs., LLC*,
   Civil Action No. 18-3303, 2022 WL 1203730 (E.D. Pa. Apr. 22, 2022) ................................ 5

*Roccisano v. Twp. of Franklin*,
   No. CIV.A. 11-6558 FLW, 2015 WL 3649149 (D.N.J. June 11, 2015) ........................... 11, 20

*Rode v. Dellarciprete,* 892 F.2d 1177 (3d Cir.1990) ............................................................... 4, 21

*Schorn*, 2024 WL 1258654 (E.D. Pa. Mar. 25, 2024) ................................................... 6, 7, 8, 24

*Slader v. Pearle Vision Inc.,* 199 F.R.D. 125 (S.D.N.Y.2001) .................................................... 3

*Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159 (3d Cir. 2002) ........................................ 23

*W. Va. Univ. Hosps., Inc. v. Casey*, 898 F.2d 357 (3d Cir. 1990) ............................................. 23

*Ward v. Phila. Parking Auth.*, 634 F. App'x 901 (3d Cir. 2015) .................................................. 23

*Webb v. County Bd. of Educ.*, 471 U.S. 234 (1985)........................................................... 4, 25, 26

*Witkoski v. Int'l Bros. of Boilermakers, Iron Shipbuilders, Local Union 154*,
   Civil Action No. 06-874, 2010 WL 1433104 (W.D. Pa. Apr. 7, 2010) .................................... 10

**Other Authorities**

Third Circuit Model Jury Instructions, 11.3.1, EPA Damages .................................................... 16

**Rules**

FED.R.CIV.P. 54 ........................................................................................................... 1, 2, 3

FED.R.CIV.P. 6 ............................................................................................................. 1, 2, 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARILYN GAYE PIETY FOLEY | : | CIVIL ACTION NO.: |
| | : | 2:22-cv-01777-WB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DREXEL UNIVERSITY and | : | |
| ROGER KURTZ, | : | |
| | : | |
| Defendants. | : | |

### DEFENDANT DREXEL UNIVERSITY'S OPPPOSITION TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

Defendant, Drexel University, by and through its undersigned counsel, hereby responds in opposition to Plaintiff's Petition for Attorneys' Fees and Costs. Defendant respectfully requests that this Honorable Court deny Plaintiff's Petition for the reasons set forth below.

### I.    Plaintiff's Petition is Untimely.

Plaintiff's Petition should be denied because it is untimely. This Honorable Court entered judgment against Defendant on January 31, 2025. (ECF 261). Plaintiff had fourteen days from January 31, 2025 to file a motion for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i). Fourteen days from the date of entry of judgment by the Court fell on February 14, 2025. However, Plaintiff filed her Petition for Attorney's Fees and Costs on February 15, 2025. (ECF 266).

Federal courts have consistently denied untimely motions for attorney's fees even when late by only a few days and where unaccompanied by a formal post-filing justification or excuse under Federal Rule of Civil Procedure 6. For example, the Court of Appeals for the Federal Circuit reversed the District Court's grant of a motion for attorney's fees and costs where the motion was

1

filed seventeen days after the entry of judgment. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). There, the Federal Circuit specifically emphasized that the party seeking fees failed to remedy its untimely filing by claiming excuse under Federal Rule of Civil Procedure 6(b). *Id.* at 1385. *See also, Palmyra Park Hospital, Inc. v. Phoebe Putney Memorial Hospital, Inc.*, 688 F. Supp. 1356 (M.D. Ga. 2010) (where Defendants moved for attorney's fees and costs fifteen days after the entry of judgment, District Court denied motion as untimely); *Lovejoy v. Gure–Perez,* No. 10 CV 5748, 2014 WL 2459656, at *7 (E.D.N.Y. May 21, 2014) (denying motion for attorney's fees where motion was filed 24 days after judgment).

A party may be able to revive its untimely filed motion for attorney's fees ***only upon filing a formal motion*** showing excusable neglect under F.R.C.P. 6(b)(1)(B). *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993). Federal Courts have consistently held that F.R.C.P. 6(b)(1)(B) establishes a "strict requirement that litigants file formal motions" for extension of time when the deadline for a filing has already passed. *Drippe v. Tobelinski*, 604 F.3d 778, 784 (3d Cir. 2010). Even appeals to fairness fail when a party files an untimely motion and does not show excusable neglect and/or acknowledge its lateness.

For example, in *Bender v. Freed*, 436 F.3d 747, 749 (7th Cir. 2006), the Seventh Circuit affirmed the District Court's denial of a motion for attorney's fees filed thirty-four days after the entry of the judgment. On appeal, the moving party argued the District Court should have granted its motion because the court and the other parties were aware that it intended to seek attorney's fees. *Id.* at 750. The Seventh Circuit rejected this argument, holding that it was "not a legal argument" but "an appeal to fairness… without a corresponding claim that compliance with the deadline imposed by Rule 54(d)(2) was impossible or impracticable" or excusable for some other reason. *Id. See also, Bartels v. Inc. Vill. of Lloyd Harbor*, No. 10 CV 5076 PKC, 2015 WL

2

4459403, at *1 (E.D.N.Y. July 21, 2015) (motion for attorney's fees filed thirty-four days after entry of judgment denied as untimely where moving party failed to show "excusable neglect" or even acknowledge the lateness of its filing); *Slader v. Pearle Vision Inc.,* 199 F.R.D. 125, 126 (S.D.N.Y.2001) (denying motion for attorney's fees as untimely and because moving party "offered no good reason why [the deadline] should not be enforced").Without formally justifying its tardiness to the court, a party cannot file an untimely motion for attorney's fees and expect it to be granted.

Here, Plaintiff failed to timely file her Petition for Attorney's Fees and Costs within fourteen days as required by F.R.C.P. 54. Judgment was entered on January 31, 2025. (ECF 261). Thus, Plaintiff's Petition of February 15, 2025 was untimely filed fifteen days after the entry of judgment. (ECF 266). Moreover, Plaintiff has failed to show either by formal motion (as required by Rule 6(b)(1)(B)), or by any other method, that her untimeliness was excusable neglect. By both failing to meet the timing requirement set forth in F.R.C.P. and failing to justify her lateness under F.R.C.P. 6, Plaintiff's Petition for Attorney's Fees and Costs must be denied.

## II.    **Plaintiff's Petition Should be Held in Abeyance Until Post-Trial Motions Have Been Disposed of.**

Should the Court decline to deny Plaintiff's Petition for Attorneys' Fees and Costs as untimely, Defendant requests that the Court hold the Petition in abeyance pending the resolution of Drexel University's post-trial motions. If the Court declines to reverse Plaintiff's verdict and Plaintiff is entitled to obtain attorneys' fees and costs, Defendant would respectfully request that this Court grant it the opportunity to revisit issues regarding the reasonableness of Plaintiff's request as set forth in her Petition for Attorneys' Fees and Costs, at that time. Accordingly, Drexel University respectfully requests that the Court hold its decision on the Petition until the conclusion of all post-trial motions.

III.    **Plaintiff's Petition Seeks Excessive and Improper Attorney's Fees.**

Plaintiff seeks wholly unreasonable fees for the work performed by her attorneys in this case. Indeed, Plaintiff's attorneys seek more than twice what they recovered for Plaintiff at trial. According to the United States Supreme Court, "the party seeking an award of fees has the burden of submitting 'evidence supporting the hours worked and rates claimed.'" *Webb v. County Bd. of Educ.*, 471 U.S. 234, 242 (1985), *citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking attorney's fees also must prove the request is reasonable. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). To satisfy that burden, "[t]he party seeking an award of fees should submit *evidence* supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

This Court should exercise its discretion to reduce the award of attorney's fees, if not precluding them entirely, because Plaintiff seeks unreasonably high fees at an inflated rate; Plaintiff improperly billed for time entries that were unrelated to the only surviving claim, vague, or administrative in nature; and most importantly failed to engage in a legitimate arm's length fee agreement with her husband.

**A. Plaintiff Seeks Attorney's Fees at an Unreasonable Hourly Rate.**

First and foremost, the rate at which Plaintiff seeks to recover fees for Brian Foley, Esquire's work is unreasonably high. "The burden is on the party filing a fee petition to establish that the rate claimed is reasonable." *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1992) *quoting Hensley,* 461 U.S. at 433.  In determining whether a fee request is reasonable, courts use the "'lodestar' formula, which requires multiplying the number of hours reasonably expended

4

*by a reasonable hourly rate*." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see also Hensley*, 461 U.S. at 433 (emphasis added).

"[A] reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado*, 256 F.3d at 184; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984). While the attorney's own usual billing rate is a "starting point," along with its consistency with the CLS fee schedule, it is not dispositive. *Maldonado*, 256 F.3d at 184. The court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 187. Plaintiff thus bears the burden of producing "satisfactory evidence," in addition to his own affidavits, that the requested hourly rates are reasonable among the community and for the work performed. *Id.*

Indeed, when a plaintiff attempted to recover attorney's fees at a rate of $792.50 per hour for the work of his attorney with twenty-eight years of litigation experience in federal court, Judge Marston of the Eastern District of Pennsylvania reduced the rate to $450 per hour. *Doe v. Schorn*, No. CV 23-3252-KSM, 2024 WL 1258654 at *6-7(E.D. Pa. Mar. 25, 2024). Although the requested rate of $792.50 per hour fell within the CLS guidelines, the court rejected the rate on the grounds that the plaintiff could not show that he, or anyone else, was actually willing to pay his attorney at that rate. *Id.*, *citing Ray v. AT&T Mobility Servs., LLC*, Civil Action No. 18-3303, 2022 WL 1203730, at *6 (E.D. Pa. Apr. 22, 2022) (plaintiff "fail[ed] to present any evidence showing that any client has willingly agreed to pay" the hourly rates sought); *Holt v. Pennsylvania*, Civil Action No. 10-5510, 2020 WL 2098103, at *14 (E.D. Pa. May 1, 2020) ("Plaintiff has not averred that [his attorney] has actually billed any paying client at an hourly rate of $750 or that anyone, including any court authorizing an award in a fee-shifting case, has ever paid him that

rate."); *Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412, 2019 WL 936645, at *12 (E.D. Pa. Feb. 26, 2019) ("Returning to Microeconomics 101 in setting a reasonable market price, we may look to what a willing client would pay a willing lawyer.").

Similarly, where attorneys offered comparator affidavits of other attorneys with more experience and lower billing rates, the court rejected the inflated rate proposed by counsel. *Nitkin v. Main Line Health*, No. CV 20-4825-KSM, 2022 WL 2651968 (E.D. Pa. July 8, 2022). There, the plaintiff sought fees for her attorney with nineteen years of experience at a rate of $600 per hour. *Id.* at 3. The court rejected this rate because the comparators had more experience, yet lower hourly rates, at $450 per hour for twenty-one years of experience and at $540 per hour for twenty-six years of experience. *Id.* at 5. Given the difference in years of experience, balanced with the court's observation of counsel's excellent work, the court determined that a reduced rate of $530 per hour was reasonable for a seasoned employment litigation attorney of 19 years' experience. *Id.* at 7.

The rate at which Plaintiff attempts to recover attorney's fees for Brian Foley, Esq.'s work is unreasonable and should be reduced. <u>See</u> Affidavit of John Gonzales, Esq. (Ex. 9). First, while Plaintiff hangs her hat on the CLS fee schedule, Plaintiff fails to appreciate its discretionary-not compulsory-nature. The CLS fee schedule is merely informative; no court has held otherwise. In fact, where plaintiffs could not show that any client had actually paid the requested rate, albeit within the CLS fee schedule, courts have declined to follow the CLS fee schedule and have replaced the requested rate with the court's determination of reasonableness. *See Schorn*, 2024 WL 1258654 at *6-7(E.D. Pa. Mar. 25, 2024)(Reducing requested rate of $792.50 to $450: "Although this [requested] rate falls within the CLS fee schedule for attorneys with similar experience, Mr.

Martin has not shown that Plaintiff, or indeed, any other client, has agreed to pay him that hourly rate.").

Second, as the relevant case law repeatedly emphasizes, the attorney's experience and skill are illuminating factors. Here, Mr. Foley spent the majority of his legal career as a professor at various law schools from approximately 1997 through 2014. (*See* ECF 266-3, *Curriculum Vitae of Brian J. Foley, attached to Plaintiff's Petition for Attorney's Fees*); (B. Foley, Dep., at 35:14-16; 39:5-17 (attached as Exhibit 1)). It was not until about nine years ago, in October 2015, that Mr. Foley opened his solo employment law practice. (B. Foley, Dep., at 35:14-16; 39:5-17). Thus, his *employment litigation* experience begun in late 2015.

Third, Plaintiff fails to produce "satisfactory evidence" in addition to the affidavits of her own attorneys. In fact, the affidavit of Jordan Santo, Esquire attached to Plaintiff's Petition supports Defendant's proposition that Mr. Foley's rate must be reduced. Mr. Santo states in Paragraph 16 of his Declaration that he charges $400 per hour with nine to ten years of employment law litigation experience. (ECF 266-6). Mr. Foley shares the same level of litigation experience.

Plaintiff now astonishingly requests that Mr. Foley's time be billed at a rate of $770 per hour based on a minimum of 25 years' experience. (ECF 266, at 13). While Mr. Foley may have been a member of the bar for over twenty-five years, no lawyer actively litigating for only ten years would expect to bill at a rate of $770 per hour for his first federal jury trial. (ECF 266-2 at ¶ 39). Similarly, Plaintiff presents no evidence that she, herself, would have paid Mr. Foley at this rate, or that any of Mr. Foley's previous clients had indeed compensated him for his services at this rate.

It only follows that just as the court in *Doe v. Schorn* reduced the attorney's rate from $750 to $450, this Court should likewise reduce the rate for Mr. Foley's services. In *Schorn*, the attorney

had twenty-eight years of litigation experience. The court even cited various cases the attorney had litigated between 2009 and 2024 regarding similar First Amendment claims. Despite his undeniable experience, the court *still* was not persuaded that any client would *actually pay* for the attorney's services at a rate of $750 per hour. If the court in *Schorn* rejected the suggestion that any client would compensate their attorney with nearly thirty years of experience at a rate of $750 per hour, Plaintiff certainly cannot justify her request for fees at a rate of $770 when Mr. Foley only has ten years of litigation experience, with this case being his first ever federal jury trial.

In addition to reducing the rate at which Brian Foley, Esquire seeks fees, this Court should also reduce the rate at which John Foley, Esquire (brother of Brian Foley) billed, as well. John Foley requests a rate of $560. (ECF 266 at 13); (ECF 266-7 at 1). Mr. Foley has 18 years of experience as an attorney, but none of the cases cited in his declaration are employment cases. (ECF 266-7 at ¶ 9). Surely, no attorney would expect a client to pay a rate of $560 per hour for supplemental assistance on a case in which the attorney does not have prior experience.

Lastly, the Court should also reduce the exorbitant rate of $850 per hour that Lorrie McKinley, Esquire requests. (ECF 266-2 at 7). Once again, the ultimate guidepost is reasonableness. Courts have established that if one would not charge a client for time, the opposing party likewise should not be burdened with such expense. *Maldonado*, 256 F.3d at 184. It is doubtful that Ms. McKinley would charge Mr. Foley at a rate of $850 per hour, and her declaration supports this assumption. First, Ms. McKinley describes what anyone would consider a friendship with Mr. Foley, stating that she knows him "very well, but personally and professionally" followed by many paragraphs describing his work and collaboration in a praising light. (ECF 266-2 at 8-10). Second, she indicates that she did not record her consultation services provided to Mr. Foley because she did not plan on seeking fees for it. (ECF 266-2 at 12, n.3). The fact that Ms. McKinley

declined to record time spent on this case shows that Mr. Foley never would have been charged, let alone charged at full price, for Ms. McKinley's legal services. To require Defendant to pay for fees that would not have been charged to a client is an unjust application of fee shifting.

For these reasons, Plaintiff has failed to establish a reasonable rate and thus seeks aggressively unreasonable fees as a result of this litigation. Thus, if this Court awards any fees to Plaintiff, Defendant respectfully urges the Court to reduce the rates to $400 for Brian Foley, Esq., $400 for John Foley, Esq., and $400 for Lorrie McKinley, Esq.

**B.  Plaintiff Seeks Fees for Excessive Hours.**

Plaintiff seeks attorney's fees that are both excessive in the aggregate and for particular tasks. Plaintiff's total calculation of 858.19 hours spent on this matter is patently unreasonable. (ECF 266 at 10). Furthermore, various tasks billed by counsel are not related to the Equal Pay Act claim, which is the only claim upon which Plaintiff prevailed. Thus, the Court should strike specific billing entries for their excessiveness and reduce the total hours by a significant percentage because of Plaintiff's limited success.

**1.  Total Hours Are Excessive and Should be Reduced Drastically Due to Plaintiff's Limited Success.**

"A district court can adjust a fee award upward or downward based upon the results obtained in a case." *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009); *see also Hensley*, 461 U.S. at 433 (explaining that the "results obtained" factor is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief"). Where a plaintiff has succeeded only on one or some, but not all, of her claims, the Supreme Court has directed courts to consider two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff

achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 433.

"Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." *Id.* However, if a plaintiff has "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. Ultimately, "the most critical factor is the degree of success obtained." *Id.* A court "may attempt to identify specific hours that should be eliminated, or it *may simply reduce the award* to account for the limited success." *Id.* at 436–37 (emphasis added).

Federal courts have consistently reduced attorney's fees where plaintiffs have failed to prevail on all claims. For example, where the court dismissed two of plaintiff's three claims on summary judgment and the jury awarded nominal damages for her surviving claim, with $20,000 in backpay and $120,000 in punitive damages, the court reduced various individual time entries in the amount of 9.2 hours and deducted 10% of the remaining fees based on the plaintiff's limited success. *Nitkin v. Main Line Health*, No. CV 20-4825-KSM, 2022 WL 2651968 (E.D. Pa. July 8, 2022). Considering the plaintiff's last settlement demand of $850,000, balanced with her "considerable success at trial" winning $140,001 in damages, the court determined a 10% reduction of fees was "appropriate." *Id.* at *16-17. *See also McGuffey v. Brink's*, 598 F. Supp. 2d 659, 674–75 (E.D. Pa. 2009) (Reduction of 10% of fees where plaintiff's success was incomplete; defendant not liable for age discrimination, but liable for $170,000 on other claim); *Witkoski v. Int'l Bros. of Boilermakers, Iron Shipbuilders, Local Union 154*, Civil Action No. 06-874, 2010 WL 1433104, at *14–15 (W.D. Pa. Apr. 7, 2010) (reducing lodestar by 10 percent where the plaintiff prevailed on his retaliation claims but did not succeed on his underlying age

discrimination claims); *Middlebrooks v. Teva Pharm. USA, Inc.*, No. CV 17-412, 2019 WL 936645, at \*15 (E.D.Pa. Feb. 26, 2019)(reducing fee award by 4 percent where plaintiffs victory was limited; "if *Hensley* is to have meaning, we must deduct some percentage of the requested hourly fees because [the plaintiff] did not win every claim").

Similarly, where plaintiffs recover minimal damages compared to the relief sought, courts have reduced awards of attorney's fees by over 50%. For example, in *Roccisano v. Twp. of Franklin*, No. CIV.A. 11-6558 FLW, 2015 WL 3649149, at \*19 (D.N.J. June 11, 2015), the plaintiff prevailed on only one claim against one defendant, after beginning her case with thirteen claims against four defendants, was ultimately awarded $1,000. There, the court reduced fees by 50%. *Id. See also Dinizo v. Township of Scotch Plains*, Civil Action No. 07-05327(PGS), 2010 WL 2880171, at \*2 (D.N.J. July 19, 2010) (reducing fee award by 55% where the plaintiff "proved little damages" and was only awarded $1,500.00).

Here, Plaintiff began with eight claims (hostile work environment and retaliation under Title VII, hostile work environment and retaliation under Title IX, hostile work environment and retaliation under the PHRA, breach of contract, and the EPA) but succeeded only on one. Plaintiff's Equal Pay Act claim was truly an afterthought. It is clear from Plaintiff's Second Amended Complaint and through the course of this litigation that the heart of her claims alleged a hostile work environment of bullying, harassment, and retaliation. (ECF 83). However, Plaintiff was unable to prove any of her claims for hostile work environment or retaliation. (ECF 171). Until she lost every other claim on summary judgment, little attention had been given to the EPA claim.

Ultimately, this Court is well within its discretion to reduce the amount of fees to which Plaintiff is entitled, given her limited success.[1] As the court emphasized in *Middlebrook*s, "if *Hensley* is to have meaning, we must deduct some percentage of the requested hourly fees because [the plaintiff] did not win every claim." *Middlebrooks,* 2019 WL 936645 at *15, *citing Hensley,* 461 U.S. 424. Defendant proposes that the nature of Plaintiff's success in this case falls between those cases in which the plaintiff won only one of two claims and the courts reduced by 10%, and those cases in which the plaintiffs were only awarded a sum of approximately $1,000, in which the court reduced the fees by at least 50%. In this case, Plaintiff only prevailed on *one of eight* claims.

In addition, despite Plaintiff's characterization of the "excellent result" she obtained, her recovery was but a fraction of what she demanded in this case leading up to trial, and the jury ultimately awarded only $177,496.71, which was then automatically doubled under the EPA. (ECF 252, 261). The damages recoverable under Plaintiff's EPA claim are much more limited than those recoverable under the other statutes Plaintiff initially sued under, contrary to Plaintiff's effort to downplay the potential damages from those claims for purposes of bolstering her fee petition. (ECF 266 at 9). And, based on the Court's entry of judgment on liability and the rulings that flowed therefrom, including the requirement that the jury pick at least one male comparator, Plaintiff literally could not lose at trial; an award of zero damages was not an option permitted to the jury. Thus, Defendant proposes this Court reduce Plaintiff's fees by at least 33%.

---

[1] Plaintiff repeatedly misrepresents the nature of her initial settlement demand. (ECF 266-1). She claims it was a modest demand of $50,000, but even a cursory review of the demand reflects multiple non-monetary demands that were unreasonable in nature and far exceeded the $50,000 Plaintiff has chosen to focus on.

## 2.   Hours That Do Not Relate to the EPA Claim Should be Omitted.

Regardless of whether the Court reduces Plaintiff's attorneys' fees by a flat rate, the Court may strike specific time entries. *See Nitkin*, 2022 WL 2651968, *supra*, (Court reduced fees by flat rate of 10% for plaintiff's partial success and struck various entries totaling 9.2 hours). The Court should exercise its discretion and strike various time entries, here, that do not relate to Plaintiff's EPA claim.

For example, before the summary judgment phase, much of this case revolved around Defendant's internal investigation of Plaintiff's complaints – the large majority of which regarded her work environment, which she considered hostile. Defendant's investigation thus revolved around issues like bullying, Plaintiff's teaching schedule, her courses being canceled, her computer not being upgraded fast enough, not being chosen to teach the Kierkegaard course she wanted to teach, and her pay. Defendant marked the investigation documents as confidential and "attorney's eyes only" ("AEO") resulting in discovery disputes with Plaintiff's counsel.

Importantly, Defendant did not produce pay documents until April 2023. When produced, those documents were labeled confidential and attorney's eyes only. To the extent Plaintiff attempts to collect all fees related to the Protective Order, confidentiality, or AEO issues, much of that work was not related to the EPA claim. Thus, Plaintiff's request for certain fees related to AEO, and other discovery issues dated before April 2023 should be reduced in accordance with the chart below.

| Date | Description of Work | Time Spent |
|------|---------------------|------------|
| 12/13/2022 | Emails with Leslie re AEO and Confidentiality Agreement | .25 |
| 12/27/2022 | Email Greenspan suggesting we use Court's standard agreement with no changes and get on with discovery. (Judge Pratter's standard agreement does *not* include AEO power.) | .4 |
| 1/5/2023 | Email to Leslie re Confidentiality agreement as she continues to propose AEO | .25 |
| 1/5/2023 | Phone call with Leslie re above | .4 |

13

| 1/5/2023 | Prep for phone call | .5 |
|---|---|---|
| 2/17/2023 | Review Drexel motion for protective order (MFPO) (to include AEO in Judge Pratter's standard agreement) | .25 |
| 2/21/2023 | Review Court's protective order (which now includes AEO per Drexel request / motion and over my objections) ECF # 51 | .2 |
| 3/16/2023 | Letter to Court re Yusin's lawyer at Greenspan's intimation marking all Yusin docs AEO and the deposition AEO, dep prep | .5 |
| 3/17/2023 | Dep prep cancel and write letter to Court and telecon with court and letter to court - related to whole case and Drexel overuse of AEO | 3.0 |
| 3/21/2023 | Review docs for AEO issues to contest | 2.6 |
| 3/22/2023 | Work on getting AEO designations removed (leading to email sent March 23) | 1.25 |
| 3/23/2023 | Finish and send detailed "Remove AEO" email to Leslie and Joe Tucker | 2.2 |
| 3/27/2023 | Work on Motion for Remove AEO power from confidentiality agreement (ECF #60) | 2.2 |
| 3/27/2023 | Email to Leslie to address Leslie's response to AEO de-designation (all intertwined) | .4 |
| 3/28/2023 | Work on MTC re removing AEO (ECF #59), *MOTION to Compel Defendants to Remove Attorney Eyes Only Designation from (1) OED Report Regarding Plaintiffs Discrimination Complaints, (2) Faculty Responses to Plaintiffs Allegations of Discrimination, and (3) Salary Information Necessary for Pay Discrimination Claims,* and finish and file | 2 |
| 3/31/2023 | Review Court orders (ECF #65, 66) re motions re AEO and discuss with client (sans disclosing AEO material) | .6 |

Additionally, Plaintiff includes activities such as deposition prep in her fee calculation despite the fact that the depositions barely discussed issues related to her EPA claims. For example, for Pete Amato's deposition, only one page out of 218 pages discusses pay. (*See* Amato, Dep., at 26:6-27:10 (attached as Exhibit 2)). Likewise, Abioseh Porter's deposition transcript contains only six out of 137 pages regarding salary or pay. (*See* Porter, Dep., at 91:8-93:6 and 117:10-121:6 (attached as Exhibit 3)). Similarly, Roger Kurtz's deposition transcript from his 12/19/2023 deposition contains only 52 out of 160 pages about pay. (*See* Kurtz, Dep. 12/19/23, at 18:18-45:9 (dealing with difference between Eng/Phil programs) and 136:4-161:19 (dealing with salaries) (attached as Exhibit 4)). Lastly, Roger Kurtz's second deposition transcript from his deposition on

5/10/2023 contains only 10 out of 292 pages about pay. (*See* Kurtz, Dep. 5/10/2023, at 63:11-73:11 (attached as Exhibit 5)). Despite Plaintiff's counsel describing the time billed for deposition prep as including EPA issues, the deposition transcripts paint a different story. Because Plaintiff's counsel billed time preparing for these various depositions during which pay was discussed at an aggregate rate of 8% (69 of 807 total pages), this Court should strike the fees or at least reduce the fees by the same percentage.

| Date | Description of Work | Time Spent |
|------|---------------------|------------|
| 4/3/2023 | Dep prep (Kurtz and Amato) EPA intertwined because asked about salary and Department policies to show English and Philosophy are one | 4.5 |
| 4/4/2023 | Dep prep (Kurtz and Amato) (EPA included because asking re pay and Department policies as Drexel trying to keep PHL and ENG separate) | .75 |
| 10/26-27/2023 | Amato Deposition (6.25) – EPA portion of dep (salary practices), and pre ,asking about Department policies, etc. and prep therefor 10 hours – **2 hours** (cost: $1,165 / 5 = **$233**)[2] | 2.0 |
| 5/27/2023 | Dep Prep re Roger Kurtz – 6.5 hours all intertwined because needed to ask about Department and show ENG and PHL the same and regarding pay | 6.5 |
| 5/9/2023 | Dep Prep – Kurtz | 1.0 |
| 5/9/2023 | Review email from Greenspan and essentially refusing my request to reschedule Kurtz deposition that is scheduled for next day (request I made because of recent document dumps by Defendants making it hard for me to prepare, as well as having to get emergency motion done) and strategize | .25 |
| 5/9/2023 | Work on emergency motion and file (ECF #71) | 5 |
| 5/10/2023 | Roger Kurtz dep and prep therefor | 9.2 + $1,630 cost |
| 5/11/2023 | Email exchange with Greenspan regarding Amato deposition scheduled for May 12 | .25 |
| 11/5-7/2023 | Abioseh Porter Dep Prep (3 hours) and Dep (5 hours, Nov 7) – EPA/pay practices, Department practices - 2 hours (cost: $840 / 4 = $210) | 2.0 + cost ($210) |
| 12/19/2023 | 30(b)(6) deposition of Kurtz | 4.5 + cost $1,101.25) |
| 12/19/2023 | Prep therefore 3 hours in AM | 3.0 |
| 12/19/2023 | Do exhibits for court reporter | .8 |

[2] Plaintiff's counsel utilized a color-coding system in the Petition. For clarity, Plaintiff's counsel appears to seek to recover for 2 hours for the deposition and $133 in fees.

Lastly, Plaintiff propounded 77 Requests for Production of Documents, 73 of which were before the judgment on liability (leaving only EPA claim remaining), and four were after. About 8 of Plaintiff's Requests were specifically regarding the EPA claim. Plaintiff propounded 45 interrogatories total. Plaintiff provided 23 before the judgment on liability, and 22 after. About 27 of the interrogatories were specifically regarding the EPA claim. In contrast, Defendant propounded only 31 Requests for Production of Documents and ten Interrogatories.

In total, only 35 of 153 discovery requests were related to the EPA claim (and the majority of those were propounded after the judgment of liability). Thus, given the limited time spent in discovery on EPA issues, the Court should reduce the fees requested for discovery by 23%. The total hours Brian Foley, Esquire reports having worked on discovery is approximately 35.6. Defendants request this time be reduced to 8.2 hours given the proportion of time spent in discovery on the EPA claim.

### 3. Hours Expended on Motion to Disqualify Should be Omitted in Full.

Plaintiff should also be precluded from recovering attorney's fees for time spent on the Motion to Disqualify Brian Foley, Esq. as a witness to Plaintiff's emotional distress. As this Court knows, Plaintiff claimed emotional distress in connection with her gender discrimination, hostile work environment, and retaliation claims. However, only her Equal Pay Act claim survived (and did not include a retaliation claim).

Emotional distress damages are not available under the EPA. The statutes governing the EPA do not provide for recovery for emotional distress, pain and suffering, or lost opportunity. *See* Third Circuit Model Jury Instructions, 11.3.1, EPA Damages ("There is no statutory authority for an award of damages such as for emotional distress, pain and suffering, or lost opportunity. Accordingly, no instruction is provided."). The Fair Labor Standards Act ("FLSA"), in which the

EPA is embedded, also does not allow for the recovery of emotional damages. *See, e.g., Bolick v. Brevard County Sheriff's Dep't*, 937 F. Supp. 1560, 1566-67 (M.D. Fla. 1996). Finally, there is no Third Circuit case law entitling an Equal Pay Act plaintiff to emotional distress damages.

Defendant filed its Motion to Disqualify Brian Foley, Esquire from testifying as to Plaintiff's emotional damages. Because emotional damages cannot be considered as part of Plaintiff's EPA claim, the work performed by Plaintiff's counsel regarding the Motion to Disqualify is wholly irrelevant to her only surviving claim under the EPA. Thus, Plaintiff cannot recover attorney's fees for this work. This reduction should apply to both Brian Foley and Lorrie McKinley's work on Plaintiff's response to the Motion to Disqualify.

Additionally, Defendant's Motion to Disqualify was not frivolous, as acknowledged by Judge Pratter and by Plaintiff's Counsel. (*See* ECF 266-4, p. 8 ("[Judge Pratter] did not regard this motion by Defendants as frivolous.")). In fact, during oral argument on the issue, Judge Pratter asked counsel who better than Mr. Foley to testify to his wife's emotional damages?[3] Plaintiff's counsel requested fees and costs for responding to the Motion to Disqualify (ECF 53), but no such relief was granted by the Court (ECF 78, 79). Thus, Defendant requests the Court preclude Plaintiff from recovering attorney's fees for time spent responding to the Motion to Disqualify included in the chart below and Lorrie McKinley, Esquire's fees in full as all fees charged are related to her work on the Motion to Disqualify[4].

---

[3] The transcript for this hearing is not available to Defendant as of the date of this filing but citations will be provided as soon as it is obtained.

[4] Especially given the limited participation of Ms. McKinley during Mr. Foley's deposition, as he asserted most of his own objections, the Court should decline to allow Ms. McKinley to recover fees for time spent on this issue, especially at the rate at which she seeks her fees.

17

| Date | Description of Work | Time Spent |
|------|---------------------|------------|
| 11/17/22 | Review *Defendant's Motion to Disqualify Brian J. Foley, Esq. from Representing his Spouse, plaintiff, Marilyn Gaye Piety Foley* (ECF #29) (MTDQ) and discuss with client | .5 |
| 11/24/22 | work on Response to MTDQ (review motion, review cases, research) | 1.5 |
| 11/25/22 | Work on response to Motion to DQ (review motion, review cases, research) | .5 |
| 11/27/22 | Work on response to MTDQ including research | 1 |
| 11/28/22 | Work on response to MTDQ | .5 |
| 11/30/22 | Work on response to MTDQ | 1.5 |
| 12/1/22 | Work on response to MTDQ and finish and file | 5.5 |
| 12/5/22 | Review email from Lorrie McKinley re MTDQ | .2 |
| 12/8/22 | Review Drexel Response ISO MTDQ | .3 |
| 12/9/22 | Review email from Lorrie McKinley re MTDQ | .1 |
| 12/11/22 | Review Defendants' MTDQ and research and draft sur reply re same | 1.5 |
| 12/13/22 | Draft and research sur reply re MTDQ | .5 |
| 12/14/22 | Work on sur-reply to Defts Reply MTDQ, finish and file (ECF # 38). | 5.2 |
| 12/19/22 | Hearing Prep for MTD and MTDQ | 1.5 |
| 12/20/22 | Hearing prep and hearing and travel to and from | 5 |
| 12/30/22 | Research re privileges re my upcoming deposition | .75 |
| 1/12/23 | Respond to Greenspan's subpoena of me to take my deposition January 23 that date is not good because I will be caring for my mother after her heart surgery | .1 |
| 1/12/23 | Talk with Lorrie McKinley, Esq. re deposition - legal advice | .3 |
| 1/13/23 | Email to Yusin's lawyer re scheduling as Defendants' MTDQ and motion to stay discovery affects deposition dates and attach docs | .4 |
| 1/17/23 | Emails with Greenspan about my dep date for MTDQ | .1 |
| 1/20/23 | Talk with Lorrie McKinley, Esq re subpoena and representation over phone and emails | 1.1 |
| 1/20/23 | Email to Leslie and Joe regarding dep dates and fact I am represented | .2 |
| 1/20/23 | Email to Leslie and Joe re cancelation of January 23 dep and that production obligation under subpoena is deferred | .2 |
| 1/23/23 | Review Greenspan email about met and confer re document requests in subpoena | .2 |
| 1/26/23 | Phone call with Lorrie McKinely re dep prep, and prep before call, and review docs before and after | 1.2 |
| 1/27/23 | Meet and discuss with Lorrie and Leslie re Foley deposition re MTDQ | .7 |
| 1/27/23 | Review Greenspan draft letter to Court re updating her re discovery and motion to DQ and respond | .25 |
| 2/1/23 | Call with Lorrie McKinley, Esquire re MTDQ | 1.3 |
| 2/1/23 | Review email from McKinley | .2 |
| 2/5-6/23 | Meet with Lorrie McKinley re my upcoming MTDQ deposition and prep therefore and after | 2.5 |
| 2/7/23 | Call with Lorrie McKinley re MTDQ dep prep and review docs | .75 |

| 2/9/23 | Review docs to respond to Defendants' subpoena of me re MTDQ | 2.1 |
|---|---|---|
| 2/10/23 | Finalize doc review to respond to Defendants' subpoena of me re MTDQ and send to Greenspan (MP 657-684) | .5 |
| 2/13/23 | Research re privileges for my upcoming deposition on MTDQ | .6 |
| 2/13/23 | Phone call with Lorrie McKinley re dep prep and privileges and review email from Lorrie re same | 1.2 |
| 2/16/23 | Review email from Lorrie McKinley re baselessness of MTDQ | .2 |
| 2/16/23 | Call with Lorrie McKinley re upcoming MTDQ dep | .9 |
| 2/17/23 | Call with Lorrie re deposition and brainstorm after | .9 |
| 2/21/23 | Review emails from Lorrie re privileges | .2 |
| 2/21/23 | Meet with Lorrie for MTDQ dep prep and prep therefor | 2.5 |
| 2/23/23 | My deposition – prep, travel to and from, and dep, and discuss with Lorrie McKinley, discuss with client | 7.2 |
| 2/27/23 | Strategize email to Lorrie McKinley | .6 |
| 2/27/23 | Sorting through EEOC emails Greenspan requested at my dep | .5 |
| 2/28/23 | Call with Lorrie re MTDQ and Greenspan's subpoena of me (docs) and gather and review docs | 1 |
| 2/28/23 | Finish reviewing EEOC communications and send to Greenspan re my dep (MP 685-760) | .3 |
| 3/1/23 | Work on our supplemental response to MTDQ and send to Lorrie McKinley | 1.7 |
| 3/1/23 | Discovery Deficiency Letter to Drexel | .5 |
| 3/6/23 | Review letter from Greenspan to Court asking to supplement their MTDQ | .1 |
| 3/7/23 | Review emails from Lorrie re MTDQ brief | .2 |
| 3/8/23 | Work on supplemental sur reply to MTDQ and send to Lorrie | 2.2 |
| 3/9/23 | Work on supplemental sur reply MTDQ and email Lorrie McKinley | 2.1 |
| 3/10/23 | More work on supplemental MTDQ briefing | .75 |
| 3/11/23 | Phone call with Lorrie McKinley re MTDQ- | .3 |
| 3/12/23 | Edit supplemental MTDQ briefing | .6 |
| 3/12/23 | Review Greenspan email re dep dates | .1 |
| 3/12/23 | Review my MTDQ dep and sign errata sheet | 1.5 |
| 3/13/23 | Work on supplemental filing MTDQ briefing and have Lorrie McKinley file it (ECF #53) | .75 |
| 3/20/23 | Review Memorandum in Support re [29] MOTION to Disqualify Counsel Brian J. Foley, Esquire The Drexel Defendants' Supplemental Submission in Support of MTDQ (ECF # 57) | .75 |
| 3/22/23 | Call with Lorrie re Drexel's supplemental MTDQ brief and prep therefor | 1.3 |
| 3/23/23 | Phone call with Lorrie re Drexel's supplemental MTDQ | .4 |
| 3/29/23 | Email to Court re whether the status conference that Judge Prater just scheduled for tomorrow will address MTDQ so I am not caught off guard without counsel (McKinley) | .25 |

**4.  Hours Expended for Administrative Tasks Should be Omitted in Full.**

Plaintiff should also be precluded from recovering attorney's fees for administrative work that could be completed by a paralegal or an assistant. Federal courts have routinely reduced fees for work that includes scheduling or mundane emailing, reviewing, or other work that does not require "legal skill." *See Moffitt v. Tunkhannock Area Sch. Dist.*, Civil Action No. 3:13-1519, 2017 WL 319154, at *7 (M.D. Pa. Jan. 20, 2017) ("Filing documents, whether in person or electronically, requires no legal skill and is a purely clerical or administrative task."); *Roccisano*, 2015 WL 3649149, at *9 ("I find that tasks such as mailing letters, forwarding documents by email, checking a calendar, and receiving documents are purely clerical tasks which should not be billed to clients.").

Simply put, "[h]ours that would not generally be billed to one's own client are not properly billed to an adversary." *Maldonado*, 256 F.3d at 184 (internal citations omitted). Further, "[t]he fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees." *Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995).

More specifically, federal courts routinely find that communications relating to scheduling are administrative in nature and reduce fees accordingly. *See, e.g., McGuire v. Neidig*, Civil Action No. 14-1531, 2017 WL 1319930, at *5 (W.D. Pa. Apr. 7, 2017) (reducing the attorney's fees for time spent on "clerical or administrative tasks," including phone calls related to scheduling); *Holzhauer v. Hayt, Hayt & Landau*, Civil Action No. 11-2336, 2012 WL 3286059, at *8–9 (D.N.J. Aug. 10, 2012) (reduced fees for administrative tasks such as "faxed continuance letter to court & defendant's counsel" and an email "following up on discovery responses and

rescheduling deposition in this matter"); *Hayward v. Del. Valley High Sch.*, Civil Action No. 10-5383, 2011 WL 1838784, at *3–4 (E.D. Pa. May 13, 2011) (reducing fees for "0.1 hours scheduling a conference call with defendant's counsel" as "administrative work"); *Nitkin*, 2022 WL 2651968, (reduced 3.6 hours for various emails related to scheduling, including with opposing counsel regarding depositions).

Additionally "[a]ny hours to be used in calculating attorneys' fees must be detailed with sufficient specificity" within the fee petition. *Keenan*, 983 F.2d at 472. "A fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990), *citing Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983). "A fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." *Keenan*, 983 F.2d at 473 (internal quotations omitted).

First, it should be noted that Plaintiff's time entries appear to be in a Word document format rather than through any official billing system. The accuracy of these entries and the time at which they were created is entirely unclear to Defendant. Moreover, many of Plaintiff's time entries are vague and do not provide context to determine whether the amount of time billed for each task is reasonable. Plaintiff includes many vaguely described time entries which do not satisfy the requirement that the bills for which she attempts to recover fees be "fairly definite." By way of example only, John Foley includes time entries such as "Phone call with Brian Foley," "Phone call with Brian," and "Review case documents" without any description whatsoever of the tasks discussed. (ECF 266-4 at 48 of 50).

Second, in many of these same time entries, Plaintiff's counsel spent hours scheduling and doing other administrative tasks which are included in the bills upon which Plaintiff relies in her Petition. These charges should be stricken from the Petition and should not be included in accordance with the below chart or any other charges this Court sees fit to exclude.

| Date | Description of Work | Time Spent |
|------|---------------------|------------|
| 3/29/23 | Email to Court re whether the status conference that Judge Prater just scheduled for tomorrow will address MTDQ so I am not caught off guard without counsel (McKinley) | .25 |
| 11/27/22 | deadlines check (case management) | .2 |
| 11/27/22 | Letter - review Judge Pratter's policy and discovery correspondence and draft letter - JUDGE GENE E.K. PRATTER'S GENERAL PRETRIAL AND TRIAL PROCEDURES REVISED MARCH 2022 (PraPol2), CIVIL CASES, IV, at 18 "The Court will, however, give a rough schedule that the parties will be held to if they cannot work cooperatively." | .7 |
| 11/28/22 | Leslie emails re letter to Judge Pratter requesting Court's imposition of a "rough discovery schedule" per Judge Pratter's policy because parties cannot agree | .2 |
| 11/29/22 | emails with Leslie regarding my letter to Judge Pratter re discovery schedule and Confidentiality agreement | .3 |
| 11/29/22 | Work on letter to court | .5 |
| 2/16/23 | Review Greenspan letter to Court trying to cancel status conference Court scheduled for Feb 17 as per my request | .1 |
| 3/8/23 | Emails to Greenspan about dep schedules | .25 |
| 3/28/23 | Email to Leslie and Joe re dep scheduling | .25 |
| 10/13/22 | Review amended scheduling Order | .1 |
| 10/21/22 | Email to Greenspan that I have not heard back re dep dates and confidentially and will seek Court's assistance Monday | .2 |
| 2/1/23 | Review new scheduling Order (ECF #46) | .2 |
| 4/27/23 | Email to Leslie inter alia that we still need to schedule 30(b)(6) and meet and confer | .25 |
| 5/16/23 | Email to Greenspan trying to schedule 30(b)(6) | .1 |
| 5/16/23 | Review Greenspan response re scheduling 30(b)(6) | .1 |
| 5/18/23 | More emailing with Greenspan re dep scheduling including 30(b)(6) | .1 |
| 5/19/23 | Email to Court to clarify whether parties must pay for the mediator | .25 |
| 5/25/23 | Work on the Chronology regarding Defendants' discovery conduct, which was requested by Court (Chronology required going through emails, time logs, and docket) | 4.2 |

| 5/26/23 | Work on the Chronology | 6 |
|---|---|---|
| 2/22/24 | Deal with Leslie scheduling, etc. re 30(b)(6) | .6 |
| 2/23/24 | Deal with Leslie re scheduling and schedule the dep including discuss with Lorrie McKinley | .5 |
| 10/10/23 | Email to Leslie re dep scheduling | .25 |
| 10/11/23 | Numerous emails regarding scheduling next meeting | .25 |
| 10/17/23 | Work on letter to Leslie | .6 |
| 12/12/23 | File Praecipe to put two pages onto the Motion because I corrected the title of the Partner at Dilworth – including do the correction | .4 |
| 1/8-9/24 | Letter to Court (filed on ECF #98) requesting Court Reporter for hearing as no court reporters have been present for previous hearings | .4 |
| 2/16/24 | Dep schedule emails with Leslie | .25 |
| 4/5/24 | Review Orders by Judge Pratter scheduling summary judgment hearing for June 11 2024 and rescheduling trial to September | .2 |
| 5/22/24 | Review new scheduling order from Judge Beetlestone (ECF #155) and policies | .6 |
| 7/26/24 | Letter to court re scheduling | .4 |
| 7/26/24 | Talk with Jack Foley re scheduling | .25 |

## C. Plaintiff Cannot Seek Fees for Her Husband without an Arm's Length Agreement.

Plaintiff should be precluded from recovering attorney's fees on behalf of her husband, Brian Foley, Esquire, and her brother-in-law, John Foley, Esquire. "Hours that would not generally be billed to one's own client are not properly billed to an adversary." *Maldonado*, 256 F.3d at 184. Indeed, "members of the bar are officers of the court and…should demonstrate the same level of billing judgment and sensitivity in fee shifting situations as they do with their own private clients." *W. Va. Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 365 (3d Cir. 1990).

While it is "well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances," *Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002), the Supreme Court has provided little guidance on what circumstances would render a fee award "unjust." *See Ward v. Phila. Parking Auth.*, 634 F. App'x 901, 906 (3d Cir. 2015) ("[T]he Supreme Court has offered little guidance as to what situations qualify.") Because

23

the Third Circuit has emphasized that the "special circumstances" exception is "an extremely limited one that is applied only in unusual circumstances and then only upon a strong showing by the party asserting it," it is not commonly used. *Ashley v. Atl. Richfield Co.*, 794 F.2d 128, 135 n.9 (3d Cir. 1986).

"As a result, this exception is typically only applied by courts to eliminate fees in extraordinary cases where the plaintiff's non-meritorious claims or ill conduct over the course of the litigation have somehow rendered the fee award unjust." *Migliori v. Lehigh Cnty. Bd. of Elections*, 668 F. Supp. 3d 337, 344 (E.D. Pa. 2023); *Schorn,* 2024 WL 1258654, at *4.

If there is a circumstance to eliminate fees due to exceptional circumstances, it certainly exists where a Plaintiff and her counsel are married and related by marriage. The principle that an opposing party should not be required to pay for legal services for which the *client never would have paid* is paramount. Plaintiff has made it incredibly obvious that she never intended to pay her husband for legal fees. Indeed, on many occasions in emails and even in her deposition, she admitted that was being given "unlimited free legal advice." (*See* M.G. Piety Foley, Dep., 5/3/23 at 79:5-9 (attached as Exhibit 6)); (D_002291, *Email to Porter*, "I have unlimited free legal representation" (attached as Exhibit 7)); (MP000799, *Email to Yusin*, "I have unlimited free legal representation" (attached as Exhibit 8)). To simply pass off the bill to Defendant when Plaintiff's counsel never would have recovered those fees from his wife is not only unethical but contrary to case law.

Even if the Court does not eliminate fees entirely, it should reduce fees based on the marital relationship between Plaintiff and her counsel. Among other reasons, including the plaintiff's lack of meritorious claims, the U.S. District Court for the District of New Jersey reduced fees where a plaintiff was represented by her husband because, "it is doubtful that Plaintiff and her

husband/counsel were engaged in a legitimate, paying, arms-length attorney-client relationship."

*Cohen v. Am. Credit Bureau, Inc.*, No. Civ.A. 10-5112 WJM, 2012 WL 847429, at *6 (D.N.J. Mar.

13, 2012). More specifically the court laid out the following facts as grounds to reduce the fee:

> Mr. Cohen's fee petition did nothing to establish an arms-length fee arrangement. Mr. Cohen prosecuted this case for his wife. It is unlikely that Plaintiff was provided with monthly billing statements, or that if she was, she would object to any of the numerous improper billing entries. This is because this is a fee shifting case, because Plaintiff and her husband are not engaged in paying attorney-client relationship, and because Plaintiff was likely never going to pay her husband for any of the time spent on the file. In other words, there was no detached client to act as a check on the amount of attorney billing. *Id.*

Additionally, the Court emphasized "[i]n the context of fee shifting statutes, importance

has been placed on the ability of counsel to provide detached, 'independent, dispassionate legal

advice..'" *Id. quoting, Ford v. Long Beach Unified School Dist.,* 461 F.3d 1087, 1091 (9th

Cir.2006).  Such statutes typically "assume a paying attorney-client relationship, [and] are intended

to assist litigants who could not otherwise afford to retain independent counsel," *Id. quoting, Kooi*

*v. Sec. of the Dep't of Health and Human Servs.,* 2007 WL 5161800 (Ct.Fed.Cl. Nov. 21, 2007).

"Thus, in a situation like this, where a husband is assisting his wife (and himself), the incentive for

awarding an attorney's fee is diminished." *Id.* at *12.

Just as the plaintiff in *Cohen* was represented by her husband, Plaintiff is represented by

her husband, here. As the party seeking fees, Plaintiff has the "*burden* of submitting evidence

supporting the hours worked and rates claimed." *Webb,* 471 U.S. at 242, *citing Hensley,* 461 U.S.

at 433 (internal quotations omitted). Still, Plaintiff has not provided a fee agreement between

herself and her husband and has provided no documents showing that she received monthly bills.

It is just as likely here, as it was in *Cohen*, that Plaintiff was never going to pay her husband for

his legal services. In fact, Plaintiff proclaimed this herself on many occasions.

For instance, during Plaintiff's deposition she was asked, "As your attorney, he is providing you with unlimited free legal advice, is that right?" (M.G. Piety Foley, Dep., 5/3/23 at 79:5-6). She responded, "Yes." *Id.* at 79:7. Even in qualifying her answer, Plaintiff stated that she was paying for "some aspects of this case." *Id.* at 79:8. When asked to clarify, Plaintiff indicated she was paying for "[t]he depositions, his attorney that he had to hire for his deposition." *Id.* at 79:11-12. At no time did she state that part of the litigation expenses included paying her husband for his work on her case. While she did state that there was a "written agreement," she could not recall when it was entered and provided no details about its terms. *Id.* at 79:15-25. Defendant has never been provided with a copy, nor has Plaintiff provided to this Court any fee agreements between her and her three attorneys.

Thus, it is patently obvious that Plaintiff never intended to pay her husband for his legal services. Because "[h]ours that would not generally be billed to one's own client are not properly billed to an adversary," Plaintiff's Fee Petition should be denied, or at minimum reduced drastically to avoid providing Plaintiff and her husband a windfall. *Maldonado*, 256 F.3d at 184.

### D. Plaintiff's Petition Improperly Seeks Fees for An Attorney Hired to Defend Plaintiff's Counsel.

Plaintiff should similarly be precluded from seeking fees for work done by Lorrie McKinley, Esq. It is Plaintiff's burden as the party seeking fees to establish reasonable and sufficiently descriptive fees in order to recover attorney's fees and costs for this litigation. *Webb*, 471 U.S. at 242, *citing Hensley*, 461 U.S. However, Plaintiff has only provided evidence that Lorrie McKinley was hired as an attorney for her husband/counsel, Brian Foley, Esq. Because Lorrie McKinley represented Brian Foley in his role as Plaintiff's attorney, Plaintiff should be precluded from recovering Lorrie McKinley's fees.

First, Plaintiff herself referred to Lorrie McKinley as Brian Foley's attorney during her deposition. (M.G. Piety Foley, Dep., 5/3/23 at 79:11-12). When asked what part of the litigation she was paying for, Plaintiff responded: "his attorney that he had to hire for his deposition." *Id.* The person to whom Plaintiff is referring is her attorney and husband, Brian Foley, Esq. Clearly it was Plaintiff's understanding that Lorrie McKinley represented her husband.

Second, Lorrie McKinley's bills provided by Plaintiff in her fee petition are addressed to "Brian Foley." (ECF 266-4, at p.45). "Marylin Piety" is merely listed as the "Reference." In the same vein, Plaintiff provided no evidence of a fee agreement between herself and Lorrie McKinley. Instead, the bills are addressed to her husband, and she referred to Ms. McKinley as her husband's lawyer.

Further, Lorrie McKinley entered her appearance "for the limited purpose of defending [Plaintiff] and her attorney, Brian J. Foley, Esquire, against Defendant's Motion to Disqualify Mr. Foley as her counsel." (ECF 52). As discussed above, Defendants moved to disqualify Mr. Foley from representing his wife while also testifying to her emotional distress. When he was deposed for the purpose of resolving that issue, Lorrie McKinley represented him. This is precisely what Plaintiff referred to in her deposition testimony.

Lastly, Lorrie McKinley describes her relationship with Brian Foley as "his own lawyer" in her Declaration. (ECF 266-2 at 9, ¶ 31). In fact, she specifies "after Drexel filed a motion to disqualify him… he asked me to work with him in defending against the motion. When Drexel issued a subpoena for his deposition, he retained me on a modified contingent fee basis to represent him." *Id.* She then describes her relationship with Brian as "hybrid" because she was saying as "co-counsel" and "his lawyer." *Id.*

It is clear that Lorrie McKinley was hired to represent Mr. Foley, and that Plaintiff cannot now recover attorney's fees on behalf of her husband. Based on the foregoing facts regarding Lorrie McKinley's representation of Mr. Foley, Defendant respectfully requests that this Court reduce the fees Plaintiff seeks for Ms. McKinley's services.

**IV.    Conclusion**

For the reasons set forth herein, Defendant respectfully requests that this Honorable Court deny Plaintiff's Petitions for Attorney's Fees and Costs in full or otherwise reduce the fees in the manner requested throughout the foregoing, in addition to providing a hearing on the matter.

Respectfully submitted,

**LAMB McERLANE PC**

By: */s/ Maureen M. McBride*
    Maureen M. McBride
    Attorney I.D. No. 57668
    24 East Market Street, Box 565
    West Chester, PA 19381-0565
    (610) 430-8000
    mmcbride@lambmcerlane.com


Date: February 28, 2025

**TUCKER LAW GROUP**

By: */s/ Leslie Miller Greenspan*
    Joe H. Tucker, Jr.
    Leslie Miller Greenspan
    Hillary B. Weinstein
    Attorney I.D. Nos. 56617/91639/209533
    Ten Penn Center
    1800 Market Street, Suite 2500
    Philadelphia, PA 19103
    (215) 875-0609
    jtucker@tlgattorneys.com
    lgreenspan@tlgattorneys.com
    hwesinstein@tlgattorneys.com

*Attorneys for Defendant, Drexel University*