## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARILYN GAYE PIETY FOLEY,**<br>    **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **DREXEL UNIVERSITY,**<br>    **Defendant.** | **NO.  22-1777** |

### MEMORANDUM OPINION

Plaintiff Marilyn Gaye Piety Foley sued her employer, Defendant Drexel University, for violating the Equal Pay Act, 29 U.S.C. § 206(d), and prevailed at trial.  She now moves to recover "a reasonable attorney's fee" pursuant to that statute's fee-shifting provision, 29 U.S.C. § 216(b), seeking $727,699.80 in fees and $5,960.88 in costs.  For the reasons set forth below, the Motion for Attorney's Fees will be granted as modified.

### I.    FACTUAL BACKGROUND

On May 9, 2022, Piety Foley, a professor of Philosophy at Drexel University in Philadelphia, Pennsylvania, filed suit against her employer and the head of her academic department, Roger Kurtz, for hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq.*, as amended; the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951; and, Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq*; as well as violations of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d)(I), and breach of contract.

After contentious litigation, this Court granted summary judgment for the Defendants on the Title IX, Title VII, and, Pennsylvania Human Relations Act claims.[1]  However, there was a

---

[1] Piety Foley abandoned her breach of contract claim prior to the summary judgment stage.

dispute of material fact as to whether the wage disparity between Piety Foley and her male colleagues was due to gender, and so the Equal Pay Act claim (brought against Drexel alone) remained and was scheduled for a jury trial on September 23, 2024.

In advance of trial, Piety Foley requested verifiable pay documents from Drexel, since the difference in pay between employees is used to calculate damages under the Equal Pay Act. The Court, on September 19, 2024, ordered Drexel to provide access to a *payroll* database to allow Piety Foley to gain that information by the next day.  Drexel granted access to a *human resources* database—a less reliable source for the information in question.  So, on the following day—a Friday—the Court required Drexel to provide unredacted W-2 forms to verify the information in the human resources database.

Drexel again failed to comply with the Court's requirements over the weekend—the final weekend before the trial on Monday, September 23—neither granting full access to the payroll database, nor providing unredacted copies of the necessary W-2 forms.  Accordingly, the Court sanctioned Drexel by finding liability on the Equal Pay Act claim, with a trial for damages and willfulness scheduled for January 2025.  At trial, the jury determined that Drexel's violation was willful and on the Special Verdict Form developed by the parties selected four appropriate comparators of seven possible options.  Given the jury's verdict, the parties stipulated to damages in the amount of $354,993.42.

## II.    DISCUSSION

Although in most cases the "American Rule" requires that both parties bear the cost of their own attorney's fees, the Equal Pay Act "allow[s] a reasonable attorney's fee to be paid by the defendant" to a successful plaintiff.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); 29 U.S.C. § 216(b).  Typically, the initial estimate of a reasonable attorney's

fee is calculated according to the lodestar method, which involves "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  To be "reasonable," the hourly rate must be based on "prevailing market rates in the community." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). The initial burden of "producing sufficient evidence" of such rates falls to the plaintiff, but the defendant may contest plaintiff's claims "with appropriate record evidence." *Id.*  Without such evidence "plaintiff must be awarded attorney's fees at her requested rate." *Id*.

## A. Threshold Issues

Drexel argues that Piety Foley is precluded from recovering any attorney's fees, or, in the alternative, that if attorney's fees are awarded, her claimed fee amount should be sharply reduced.  With regard to the former argument, Drexel presents two threshold issues that it argues preclude Piety Foley from recovering any attorney's fees: (1) that the motion for attorney's fees is untimely, and therefore should be denied; and, (2) that the spousal relationship between Piety Foley and her primary attorney, Brian Foley (and the personal relationships of Brian Foley to the other attorneys representing Piety Foley) disqualifies her from recovering attorney's fees.  For the reasons outlined below, neither factor prevents the Court from awarding attorney's fees to Piety Foley in this matter.

### i. *Timeliness*

A motion for attorney's fees must be filed within fourteen days of the judgment upon which it is premised.  Fed. R. Civ. P. 54(d)(2)(B).  Here, Drexel argues that Piety Foley's Motion for Attorney's Fees should be denied as untimely because her counsel was not able to officially file the Motion until one day after the fourteen-day deadline.

According to Piety Foley, her counsel attempted to file the Motion late on the evening of

February 14, 2025, the Motion's due date.  However, counsel experienced a technical error with the Court's Electronic Case Filing ("ECF") system that prevented him from filing the Motion. Conscious that time was running out, counsel sent an email at 11:59 PM to the Clerk of Court, Drexel's counsel, and the Chambers of the undersigned to make known the technical issues and to provide an electronic copy of the Motion before the deadline passed.  Counsel filed the Motion through ECF on the next day (February 15, 2025) and sent additional emails to apprise Drexel and the Court.

Counsel's email did not have the effect of "filing" the Motion before the deadline, since Local Rule of Civil Procedure 5.1.2 requires that all motions be filed through the ECF system. E.D. Pa. R. Civ. P. 5.1.2.  However, the Court construes counsel's email as a "request" to extend the deadline under Federal Rule of Civil Procedure 6, which allows a court to extend a deadline "with or without motion . . . if a request is made, before the original time or its extension expires . . . ."  Fed. R. Civ. P. 6(b)(1)(A); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 n.5 (emphasizing the difference between a motion—even an implied one—which requires "a high degree of formality and precision" and a request, which does not).

Since a request for an extension was made before the original deadline passed, the Court may grant the extension *nunc pro tunc* for "good cause" shown.  Fed. R. Civ. P. 6(b)(1); *see Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) ("'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts."). Motions for an extension of time under Federal Rule of Civil Procedure 6(b)(1)(A) are typically "granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party."  *Id*. (quoting 4B Wright & Miller's Federal Practice & Procedure § 1165 (4th. ed. 2025)).

4

Here, there is no prejudice to the opposing party, as Drexel received an emailed copy of the Motion on the day it was due. Piety Foley's counsel, when he became aware of the developing issue, also acted in good faith. He included opposing counsel on his email to the Clerk's Office and the Court on February 14, and throughout the night forwarded messages to Drexel's other lawyers to keep them abreast of the situation. These factors show that "good cause" exists to grant Piety Foley's request for an extension to be considered.

Additionally, given the importance of electronic filing, the Local Civil Rules provide instructions for users experiencing a technical error that results in an untimely filing:

> An ECF Filing User whose filing is determined to be untimely as the result of a technical failure may seek appropriate relief from the judge assigned to the case, provided that the User immediately notifies the Clerk of the technical failure by telephone, confirmed immediately thereafter in writing delivered by email or by hand to the Clerk's attention. The Clerk will then notify the assigned judge's chambers as soon as possible.

E.D. Pa. Civ. R. 5.1.2(14).

Here, Piety Foley counsel avers that when he was foiled by a technical error in filing the instant Motion during the late evening hours of February 14, 2025 he attempted to follow Local Civil Rule 5.1.2(14) by notifying the Clerk's Office immediately via email. Despite the facts that the Local Rule requires notification "by telephone"—and that, as Piety Foley admits, she did not call the Clerk's Office upon experiencing the technical error—she did substantially comply with the remainder of the Rule by notifying the Clerk's Office, Drexel's counsel, and Chambers via email at the time the error occurred. Accordingly, her substantial compliance with Local Civil Rule 5.1.2(15) and the Court's authority under that rule to grant "appropriate relief" provides another reason to consider her Motion.

### ii. Spousal Relationship

A court may reduce or eliminate attorney's fees when the party is not represented by

sufficiently independent and disinterested counsel. *See, e.g., Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 131 (3d Cir. 2001) (holding "an attorney-parent cannot receive attorney fees for work representing his minor child in proceedings under the IDEA"). Courts also prevent *pro se* attorney litigants or attorney parents litigating on behalf of their minor children from recovering fees since "[t]he statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Kay v. Ehrler*, 499 U.S. 432, 438 (1991).

Along these lines, Drexel argues that Piety Foley cannot recover fees because she was represented by her husband, Brian Foley. Drexel cites *Cohen v. American Credit Bureau*, 2012 WL 847429 (D.N.J. Mar. 13, 2012) for the proposition that a plaintiff may not recover attorney's fees when represented by their spouse, noting that the plaintiff was only awarded $1,046.75 of her requested $29,210.25 when represented by her attorney spouse. *Id.* at *6-7. However, in that case, the District Court awarded attorney's fees for the *entirety* of work that had legal merit. *Id.* at *7. Though it did note the lack of an arms-length relationship as one of seven reasons to reduce the claim, its primary concern was with the pursuit of "meritless" legal theories—not the existence of the spousal relationship itself. *Id.* at *9. Though the lack of a "detached client to act as a check on the amount of attorney billing" in that case may have enabled the time-intensive pursuit of meritless arguments after receiving a settlement offer in the amount of the statutory maximum, Drexel has not demonstrated that the situation here is comparable. *Id.* at *12. Besides, in other cases where the same argument has been made, plaintiffs have recovered attorney's fees when represented by their spouse. *See, e.g., Wu v. Arouh*, 2016 WL 3165599, at *3 (E.D. Pa. June 7, 2016) (awarding fees to plaintiff represented by an attorney spouse, noting that the court in *Cohen* reduced the fee largely due to factors other than the spousal relationship).

6

### B.  Hourly Rate

A reasonable hourly rate is the first component of the lodestar calculation; it is intended to reflect the prevailing market rates in the community.  *Maldonado*, 256 F.3d at 184.  Piety Foley requests an hourly rate of $770 for work done by Brian Foley, $560 for John Foley, and $850 for Lorrie McKinley.  The crux of her argument for the appropriateness of those fees is that they accord with the Fee Schedule published by Community Legal Services of Philadelphia ("CLS").  This schedule is developed via survey data of the Philadelphia legal market, and the Third Circuit heavily relies upon it in comparable fee-shifting cases.  *Id.* at 187-88 ("The fee schedule established by [CLS] has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia . . . .  We approve of those rates as reasonable in fixing the hourly rates in this case." (citation modified)).  In some cases—especially where a plaintiff's attorneys are associated with CLS—courts have adopted the CLS rate without the need for additional affidavits demonstrating their appropriateness.  *See, e.g., Swaayze v. Philadelphia Hous. Auth.*, 1992 WL 81598, at *2 (E.D. Pa. Apr. 16, 1992); *Rainey v. Philadelphia Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993).  More commonly, though, courts use the CLS rates as a check on higher claimed hourly rates.  *See, e.g., Watson v. Philadelphia Parking Auth.*, 2024 WL 1355497, at *4 (E.D. Pa. Mar. 29, 2024) ("The Court finds that Plaintiff's proposed hourly rates are excessive in light of the prevailing market rate and based on the moderate level of experience of counsel.  Instead, the Court looks to rates provided by Community Legal Services . . . .") (internal quotations omitted).

Only rarely has a court held that claimed rates that fall within the CLS band are unreasonable.  Drexel cites one such case in support of its argument that a plaintiff must show

that their attorney does in fact charge the claimed amount and that clients willingly pay it. *Doe v. Schorn*, 2024 WL 1258654, at *6-7 (E.D. Pa. Mar. 25, 2024). While the attorney's own hourly rate is typically the starting point, the objective is to charge fees in accordance with "prevailing market rates in the relevant community." *Maldonado*, 256 F.3d at 184. In *Schorn*, the plaintiff did fail to show that anyone has paid his lawyer the requested $792.50 an hour, but "this fact, on its own, [was] not fatal to the requested rate." 2024 WL 1258654, at *7. Instead, the defendant had provided adequate evidence, in the form of an affidavit from the plaintiff's attorney claiming a significantly lower hourly rate of $450, to rebut the plaintiff's position that the rate within the CLS range was reasonable and appropriate. *Id.* at *7. Here, Drexel provides no such evidence to rebut Piety Foley's attorneys' claimed rates.

Instead, Drexel argues that Piety Foley's attorneys' claimed rates are unreasonable, not because they do not correspond to the CLS schedule—which they do—but due to an alleged lack of pertinent "experience and skill" on the part of Piety Foley's attorneys. It argues that Brian Foley should be considered as a lawyer with ten years of experience, based on the time he has been litigating in private practice—as opposed to the thirty-one years he claims—and that the Court should not count the portion of his career spent in legal academia. However, Drexel cites no cases where a court has parsed what type of experience 'counts' when choosing which range of years in the CLS schedule is appropriate. Where experience and skill are mentioned in the context of fee-setting, it is usually in the context of a plaintiff attempting to claim a rate *above* the CLS fee range. *See Watson*, 2024 WL 1355497, at *4 ("Plaintiff failed to provide additional evidence beyond counsels' own affidavits to establish that their specialized skill, education, and experience warrant such a deviation."); *Nitkin v. Main Line Health*, 2022 WL 26519685, at *6 (E.D. Pa. July 8, 2022) (denying a rate in excess of the CLS range despite affidavits suggesting

plaintiff's lawyer "set himself apart in the field of employment law in the Philadelphia region"). And while at least one court has reduced an attorney's claimed years of experience, it did so much less sharply than Drexel requests in this case, and only because the affidavit supporting the claimed amount of experience was unclear as to whether she was even "practicing law" during certain years. *See Gwendolyn L. v. Sch. Dist. of Philadelphia*, 2014 WL 2611041, at *3 (E.D. Pa. June 10, 2014) (reducing attorney's claimed ten-and-a-half years of experience to the high end of the six-to-ten year CLS range based on an unclear affidavit). And while neither Brian Foley nor John Foley have practiced employment law for their entire careers, Drexel provides no caselaw that would support discounting their years of experience in the manner it requests.

Regardless, Drexel's argument that Piety Foley's claimed rates seem too high is unsupported by citations to the record, and "[a] district court may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather *must* rely upon the record." *Smith*, 107 F.3d at 225 (emphasis in original) (citation omitted). Drexel does not meaningfully contest the claimed rates with record evidence. Though it accurately briefs that the CLS rates are not *entirely* dispositive, it fails to provide meaningful record evidence that explains why the CLS fee schedule is not "prevailing market rates in the relevant community" and why its own suggestion is more reasonable. *Maldonado*, 256 F.3d at 184. Drexel only provides an affidavit from John Gonzales, a civil rights and employment lawyer in Philadelphia, proposing that the appropriate rate for all of Piety Foley's attorneys should be $400, despite significant differences in years of experience and degree of specialization between the three attorneys.

In short, Piety Foley's claimed rates are reasonable because they are in accordance with the CLS schedule and Drexel has provided nothing in the record to suggest that there should be a deviation from the CLS schedule here. She claims rates near the bottom of the range on behalf

of two of her attorneys (Brian and John Foley), reflecting their varied work experience less narrowly focused on the issues at stake in the present case. Lorrie McKinley claims a rate of $850, the highest amount possible in the CLS guidelines, but the Court finds this an appropriate level given her decades of experience litigating like cases.

### C. Number of Hours

The hours billed form the second primary component of the lodestar rate. *Maldonado*, 256 F.3d at 184. Drexel makes several arguments against the number of hours Piety Foley's attorneys billed. First, it argues that specific line entries in the fee petition are not eligible for recovery—namely, work done in contesting an Attorney's Eyes Only ("AEO") discovery designation and a Motion to Disqualify, as well as administrative work done by Brian Foley. It also objects that other entries include work done on the unsuccessful claims, which Piety Foley avers she has already removed and is not seeking compensation for. Finally, Drexel requests a reduction based on what it maintains to be a lack of success in the case.

### i.    *Attorney's Eyes Only and Motion to Disqualify*

A party may not recover for time spent pursuing unsuccessful claims; but even where a litigant brings a series of unrelated and thus easily separable claims, "[m]uch of counsel's time will be devoted generally to the litigation as a whole . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Drexel argues that Piety Foley's request for attorney fees improperly includes work not related to the successful EPA claim because she seeks recovery for time spent contesting the AEO designation placed on certain discovery materials, as well as time spent opposing Drexel's Motion to Disqualify Brian Foley.

The AEO designation was imposed by Judge Pratter, who previously oversaw this case, at Drexel's request, in order to provide additional confidentiality to sensitive pay information.

10

Piety Foley objected to this designation, as it prevented her from fully participating in the management of her own case.  The AEO designation was later removed.  Piety Foley can recover for time spent on the AEO dispute because the dispute specifically involved pay documents necessary for Piety Foley's EPA claim, on which she prevailed.

Piety Foley can also properly recover both Brian Foley's and Lorrie McKinley's time spent on the Motion to Disqualify.  Drexel argues that "Plaintiff should be excluded from recovering attorney's fees for time spent on the Motion to Disqualify Brian Foley, Esq., as a witness to Plaintiff's emotional distress."  If the Motion to Disqualify were aimed at Brian Foley's participation as a witness, Drexel would be correct, because that work would have related to discrimination claims on which Piety Foley did not prevail.  *See Hensley*, 461 U.S. at 435 ("[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.") (internal quotation omitted).  However, the Motion to Disqualify was an attempt to "disqualify Attorney Foley from representing his client/spouse in this case," not merely an attempt to prevent him from acting as a witness to her emotional distress.  Combating the Motion to Disqualify was therefore reasonably necessary to successfully litigate the case "as a whole," including the successful EPA claim.  *Id.* at 435.

### ii.    *Administrative Hours*

A lawyer may only recover attorney's fees for legal services.  *Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995).  However, they may still recover for tasks that would be more properly delegated to a paralegal, though at a reduced rate.  *McKenna v. City of Philadelphia*, 582 F.3d 447, 457 (3d Cir. 2009).  Some courts have further separated out purely clerical tasks and held that time spent on those tasks may not be recovered, even at a paralegal rate.  *See, e.g., Moffit v. Tunkhannock Area Sch. Dist.*, 2017 WL 319154, at

11

*6 (M.D. Pa. Jan. 20, 2017) (holding that "[p]urely clerical work, such as copying and filing, is non-billable"); *but see McKenna*, 582 F.3d at 457 (awarding a reduced rate for "clerical tasks such as faxing, emailing, filing, scanning, assembling, and conforming").

Here, Drexel argues that Piety Foley has improperly sought recovery for time spent on purely clerical tasks. Many of the contested entries involve scheduling, which other courts in this Circuit have found non-billable. *See, e.g. Nitkin*, 2022 WL 26519685, at *9 (explaining that "[c]ourts routinely find that communications relating to scheduling are administrative in nature and reduce fees accordingly" and collecting cases to that effect). However, preparing exhibits for the Court Reporter—which Drexel has objected to as improperly-billed—is a compensable, though delegable, task. *See Moffit*, 2017 WL 319154, at *7 ("Document preparation, however, does not clearly fall within the realm of clerical work—even for a simple document such as a certificate of service."). So, the 0.8 hours that Piety Foley's attorneys spent preparing exhibits will be awarded at an appropriate paralegal rate.

In this instance, the Court finds that Plaintiff's requested fees are appropriate for most of the contested administrative entries, but that 5.55 hours, largely related to scheduling, are not properly billable and that, as explained above, 0.8 hours for exhibit preparation are only billable at a paralegal rate. Specific entries are broken down in the tables as follows.

| Nonbillable Hours | | |
|---|---|---|
| Date | Description | Time Spent |
| 3/29/23 | Email to Court re whether the status conference that Judge Prater just scheduled for tomorrow will address MTDQ so I am not caught off guard without counsel (McKinley) | .25 |
| 11/27/22 | deadlines check (case management) | .2 |
| 11/28/22 | Leslie emails re letter to Judge Pratter requesting Court's imposition of a "rough discovery schedule" per Judge Pratter's policy because parties cannot agree | .2 |
| 2/16/23 | Review Greenspan letter to Court trying to cancel status conference Court scheduled for Feb 17 as per my request | .1 |

| 3/8/23 | Emails to Greenspan about dep schedules | .25 |
|---|---|---|
| 3/28/23 | Email to Leslie and Joe re dep scheduling | .25 |
| 10/21/22 | Email to Greenspan that I have not heard back re dep dates and confidentially and will seek Court's assistance Monday | .2 |
| 4/27/23 | Email to Leslie inter alia that we still need to schedule 30(b)(6) and meet and confer | .25 |
| 5/16/23 | Email to Greenspan trying to schedule 30(b)(6) | .1 |
| 5/16/23 | Review Greenspan response re scheduling 30(b)(6) | .1 |
| 5/18/23 | More emailing with Greenspan re dep scheduling including 30(b)(6) | .1 |
| 5/19/23 | Email to Court to clarify whether parties must pay for the mediator | .25 |
| 2/22/24 | Deal with Leslie scheduling, etc. re 30(b)(6) | .6 |
| 2/23/24 | Deal with Leslie re scheduling and schedule the dep including discuss with Lorrie McKinley | .5 |
| 10/10/23 | Email to Leslie re dep scheduling | .25 |
| 10/11/23 | Numerous emails regarding scheduling next meeting | .25 |
| 12/12/23 | File Praecipe to put two pages onto the Motion because I corrected the title of the Partner at Dilworth – including do the correction | .4 |
| 1/8-9/24 | Letter to Court (filed on ECF #98) requesting Court Reporter for hearing as no court reporters have been present for previous hearings | .4 |
| 2/16/24 | Dep schedule emails with Leslie | .25 |
| 7/26/24 | Letter to court re scheduling | .4 |
| 7/26/24 | Talk with Jack Foley re scheduling | .25 |
| | **Total** | **5.55** |

| Hours Billable at Paralegal Rates | | |
|---|---|---|
| 12/19/2023 | Do exhibits for court reporter | 0.8 |
| | **Total** | **0.8** |

| Billable Hours | | |
|---|---|---|
| Date | Description | Time Spent |
| 11/27/22 | Letter - review Judge Pratter's policy and discovery correspondence and draft letter - JUDGE GENE E.K. PRATTER'S GENERAL PRETRIAL AND TRIAL PROCEDURES REVISED MARCH 2022 (PraPol2), CIVILCASES, IV, at 18 "The Court will, however, give a rough schedule that the parties will be held to if they cannot work cooperatively." | .7 |
| 11/29/22 | emails with Leslie regarding my letter to Judge Pratter re discovery schedule and Confidentiality agreement | .3 |

| 11/29/22 | Work on letter to court | .5 |
|---|---|---|
| 10/13/22 | Review amended scheduling Order | .1 |
| 2/1/23 | Review new scheduling Order (ECF #46) | .2 |
| 5/25/23 | Work on the Chronology regarding Defendants' discovery conduct, which was requested by Court (Chronology required going through emails, time logs, and docket) | 4.2 |
| 5/26/23 | Work on Chronology | 6 |
| 10/17/23 | Work on letter to Leslie | .6 |
| 4/5/24 | Review Orders by Judge Pratter scheduling summary judgment hearing for June 11 2024 and rescheduling trial to September | .2 |
| 5/22/24 | Review new scheduling order from Judge Beetlestone (ECF #155) and policies | .6 |
| | **Total** | **13.4** |

### *iii.    Overinclusion of Non-EPA Claims and Limited Success*

Drexel claims that Piety Foley's fee award must be reduced due to her limited success in the case, arguing that all claims other than the EPA claim were dismissed at summary judgment and that Piety Foley had limited recovery on that lone surviving claim.  As explained above, Piety Foley may not recover for time spent pursuing unrelated and unsuccessful claims.  *Hensley*, 461 U.S. at 435.  Where a plaintiff only succeeds on some claims, courts may reduce the amount by a percentage or by eliminating specific time entries.  *Id.* at 436-37.  However, where claims are based on "a common core of facts" or "related legal theories," such a reduction is less appropriate if the attorney's work is properly considered to have advanced the litigation generally.  *Id*. at 435.  Additionally, "[a] district court can adjust a fee award upward or downward based upon the results obtained in a case."  *McKenna*, 582 F.3d at 455.  If a court is to make an adjustment, it must ask if "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award . . . ."  *Hensley*, 461 U.S. at 434.

Drexel argues that Piety Foley improperly includes in her list of billable hours work that

was largely unrelated to the successful EPA claim.  Because that claim relies on a different set of facts and legal theories than her Title VII, Title IX, and PHRA claims for discrimination and hostile work environment, both parties agree that she may not recover fees for work expended on those latter claims.  *Id*. at 435.  According to her Motion, Piety Foley has already made a "good faith effort" to exclude time spent on those unrelated claims, and to reduce hours where her pay was only one of several factual matters at issue.  *Id*. at 434.  She argues that her own audit is accurate and sufficient to bring the work in line with the requirement that only successful claims be compensated.  However, Drexel argues that the reduction is incomplete and, especially in the deposition and discovery time-entries, includes work that only served the claims dismissed at summary judgment.

The Court appreciates the work done by Piety Foley to separate work done on the EPA claim from work done on the claims dismissed at summary judgment.  However, much of the work billed prior to summary judgment, even after her parsing, still includes hours related to the non-EPA claims.  For example, Piety Foley claims two hours of the deposition and preparation for Peter Amato related to the EPA claim, while the transcript of such deposition includes only one page related to pay concerns out of a total of two hundred and eighteen pages.  Elsewhere, she labels depositions and preparation therefor as "intertwined," without explicitly separating out which claims they belong to.  Though Drexel cites these deposition details as its primary concern, the petition suggests that even more billed work was primarily related to the claims dismissed at summary judgment.  For example, 9.5 hours on May 3, 2023 for "Dep prep of Plaintiff; defend Plaintiff's Dep and travel to and from" (along with additional time spent in preparation on previous days) is unlikely to include *only* preparation for the EPA claim.  Nor are the other 11.6 hours related to Piety Foley's deposition in May.

15

So, while Piety Foley has already removed most of the unbillable work performed before summary judgment, she has not removed it all. After review of his billing records, a reduction of 30% to Brian Foley's hours during that time period is warranted to make the number of hours billed prior to summary judgment a reasonably accurate reflection of the work performed on the EPA claim.[2] This reduction is appropriate because, even where claims do not share a common basis of fact or legal theory, it is difficult to accurately and exhaustively separate the hours based on the record. *See McKenna*, 582 F.3d at 458 (holding that a 25% reduction was appropriate "[i]n the absence of proper records separating time spent on plaintiffs' claims individually"); *Nitkin*, 2022 WL 2651968, at *15 ("Because of the generalized nature of many of the billing entries attached as Exhibit A to Ms. Nitkin's fee petition, the Court is largely unable to discern how much time her attorneys devoted to [her] unrelated, unsuccessful claim.").

In that Piety Foley was successful on her EPA claim (the jury found that there were four comparators and that Drexel's violation was willful, resulting in Piety Foley recovering $177,496.71 in damages, automatically doubled under the EPA) there is no reason to reduce further the hours worked specifically on that claim.

### iv.    *Contentious Conduct*

Nevertheless, Piety Foley's requested hours shall be reduced due to the time wasted due to the unnecessarily contentious nature of this litigation. In *Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997), the Second Circuit determined that 30% of the time spent litigating was "the product of contentious conduct between the lead attorneys," and reduced the fee award by 15% as plaintiff's counsel had half the blame for that situation. 109 F.3d at 117.

---

[2] Lorrie McKinley's hours, more narrowly focused on the Motion to Disqualify, as well as John Foley's work, which overwhelmingly occurred after the summary judgment, do not include extraneous work on the unsuccessful claims and therefore do not need to be reduced.

Here, both Piety Foley's and Drexel's counsel similarly prolonged this litigation unnecessarily. Indeed, as Judge Pratter put it, both sides "abused this case, abused the procedures, and abused each other." In her words, both sides "really pushed the envelope in this case, and it is really not a good example of the way cases should be handled . . . ." To give specifics, Judge Pratter criticized the attorneys for "abusing" and disrespecting the Special Discovery Master who had been appointed to assist the parties. Later, in the deposition of Roger Kurtz, counsel for both parties spent nearly ten pages quibbling over a single objection. Whether counsel's behavior stemmed from the "emotionally charged" nature of the familial relationship shared by him and his client, *Woodside*, 248 F.3d at 131, or whether that relationship meant that there was simply "no detached client to act as a check on the amount of attorney billing," *Cohen*, 2012 WL 847429, at *19, it is clear that time was wasted here.

Indeed, the amount of time wasted—for the attorneys, the parties, and the court—by the unnecessarily contentious conduct of the litigants approaches that in *Luciano*; accordingly, the Court finds that 10% of the time spent by Brian Foley in this case was due to Piety Foley's unnecessarily contentious litigation posture, and her requested time will be reduced by that amount. 109 F.3d at 117. The reduction will not apply to the hours of Lorrie McKinley or John Foley in the absence of record evidence that they contributed to the combative posture that so lengthened the case.

## III.    CONCLUSION

For the reasons explained above, Piety Foley shall be awarded $540,543.60 in attorney's fees. She will recover for 303.06 hours of Brian Foley's work prior to summary judgment, which is calculated after removing the administrative hours, an estimation of time spent on non-EPA claims, and time spent due to the unnecessarily contentious nature of the proceedings. She

will also recover 312.07 hours for Brian Foley's work after the summary judgment, deducting only the time for the unnecessarily contentious conduct.  For a total of 615.13 hours, charged at a reasonable rate of $770, Piety Foley will recover $473,650.10.  She will additionally be awarded $152 for 0.8 hours of delegable work paid at a paralegal rate of $190.

John Foley's bill of $20,076 and Lorrie McKinley's bill of $46,817.50 will be awarded in their entireties.  Requested costs of $5,960.88 will be granted.

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____

**WENDY BEETLESTONE, J.**